

U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

FILED    Jan 11 2023

CAROL L. MICHEL
CLERK
AJ                                    Mail

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICHARD B. LAY                                    CIVIL ACTION

VERSUS                                            19-9803-R(2)

MARCUS MYERS

## AMENDED OBJECTIONS

**NOW INTO THE COURT** comes petitioner Lay who files this "Amended Objection" to the

Report insofar it wrongfully applies Ramos[1] to my "Equal Protection"challenges to deny relief under

Edwards[2]:

...A State Court's determination of questions of law and mixed questions of law ~~and law~~ are

reviewed under 28 USC § 2254(d)(1).The determination receives deference, unless the state courts

decisions was contrary to, or involved an unreasonable application of, clearly established [Supreme

Court precedent].[3] The United States Supreme Court has clarified the § 2254(d)(1) standard as Follows:

under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives

at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a

case differently than this Court has on a set of materially indistinguishable facts. Under the

"unreasonable application" clause, a federal habeas court may grant the writ of the state court identifies

the correct governing legal principle from this Court's decisions but unreasonably applies that principle

to the facts of the prisoner's case.[4]

---

1   Ramos, 140 S. ct. At 1407
2   Edwards, 141 S. ct. at 1556 and 1559
3   Penry v. Johnson, 215 F.3d 504,507[5th Cir. 2000].9brakets in original ][quoting Miller v. Johnson, 200 F. 3f 274, 280-81 [5th Cir. 2000], aff'd in part, rev'd in part on other grounds, 532 US 782 [2001]; Williams v. Taylor, 529 US 362, 412-13 [2000]
4   William v. Taylor, 529 US 362, 41-13 [2000]

TENDERED FOR FILING

JAN 11 2023

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk

The "critical point" in determining the Supreme Court rule to be applied is that relief is available under § 2254(D)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no "fairminded disagreement" on the question.[5] Thus, if a habeas corpus must extend a rationale before it can apply to the facts at hand, then by definition the rationale was not "clearly established at the time of the state-court decision.[6] The burden is on the petitioner to show that the state court applied the precedent to the facts of his case in an objectively unreasonable manner.[7]

## STATEMENT OF FACTS

1.      On the 20TH day of September,1995, I was found guilty of violating LSA-R.S. 40:967C by a 10-2 Jury Verdict.

2.      On the 31st day of May,2007 I was found guilty of violating LSA-R.S. 14:27/40:967C and was sentenced to 20-years hard labor under LSA-R.S. 15:529.1 in which State v. Lay #215530 was named in the Multiple Bill of Information.[8]

3.      On the 15th day of December,2011, I was found guilty of violating LSA-R.S.14:35(B) and was sentence to 22-years under LSA-R.S. 15:529.1 in which State v. Lay #215530[9] was named in the Multiple Bill of Information.

4.      On April 20,2020 the United States Supreme Court ruled in Ramos v. Louisiana, 590 US ____, 140 S. Ct. 1390[10] that a felony conviction by a non-unanimous jury verdict violates of the Sixth and Fourteenth Amendment of the United States Constitution.

In the concurring opinion by Justice(s) Soto Mayor, Kavanaugh and Thomas it was said…

---

5    White v. Woodall, 572 US 415, 427 [2014][citing Harrington v. Richter, 562 US 86, 103 [2011].
6    White, 572 US at 426 [quoting Yarborough v. Alrardo, 541 US 652 666 [2004].
7    Price v. Vincent, 538 US 634, 641 [2003].
8     State v. Lay #383759-F-22nd JDC/St. Tammany
9     State of Louisiana v. Lay #11-CR5-112033-22nd JDC/Washington
10   Article 1, Section 17, of the La. Constitutional. 1974; and 782 A, of LSA-C.r. P.

The majority vividly describes the legacy of racism that generated Louisiana's and Oregon's laws. *Ante*, at 1-2, 13-14, and n. 44. Although Ramos does not bring an equal protection challenge, the history is worthy of this Court's attention. That is not simply because that legacy existed in the first place-unfortunately, many laws and policies in this country have had some history of racial animus-but also because the States' legislatures never truly grappled with the laws' sordid history in reenacting them. See generally *United States v. Fordice*, 505 U. S. 717, 729, 112 S. Ct. 2727, 120 L. Ed. 2d 575 (1992) [policies that are ``traceable'' to a State's *de jure* racial segregation and that still ``have discriminatory effects'' offend the Equal Protection Clause]. Where a law otherwise is untethered to racial bias-and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it-the new law may well be free of discriminatory taint. That cannot be said of the laws at issue here[11]. While the dissent points to the ``legitimate'' reasons for Louisiana's reenactment, *post*, at 3-4, Louisiana's perhaps only effort to contend with the law's discriminatory purpose and effects came recently, when the law was repealed altogether.

Today, Louisiana's and Oregon's laws are fully-and rightly-relegated to the dustbin of history. And so, too, is *Apodaca*. While overruling precedent must be rare, this Court should not shy away from correcting its errors where the right to avoid imprisonment pursuant to unconstitutional procedures hangs in the balance.

5.　　Petitioner Lay based his "Equal Protection" challenges to Article 1, Section 17 of the La. Const. 1974; and Article 782A, of LSA-C Cr. P. in which State v. Lay #215530 is per se and for interruption of 10-year prescription period[12] to allow usage of State of Louisiana v. Lay #197086; #130, 364, and #131/275 which was not known to him or his counsel and did not become known to him until Ramos, supra.

Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(A) of the Louisiana Code of Criminal Procedure violates defendant Lay's right to a unanimous jury verdict under both the USCA Amendment 14; and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974 in light of the fact they were adopted for the sole purpose to deprive African Americans of the equal protection of rights guaranteed by the United States Constitution in order to protect the purity of the ballot and to

---

11　See Senate Bill of Information #221 amending La. R.S. 15:529.1 effective November 1, 2017 reducing the cleansing period from 10 to 5-years for non-violent offense is applicable upon re-sentencing.
12　See Marshal v. United States, 414 US 417, 94 S. Ct. 700, 38 L. Ed. 2d 618 (1974)

3

perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Lay is an African-American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." *State v. Petrovich*, 396 So.2d 1318, 1322 (La. 1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. *See id. See also Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles*, 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

In *Sibley*, this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. *Sibley* at 1107. Under the first level of scrutiny enumerated in *Sibley*, the law creating the classification completely falls. *See Moore v. RLCC Technologies, Inc.* p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal

4

protection and the proponent of the law carries the burden of proving that the classification substantially furthers an important government interest. *See id.* p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. *See id.* p. 11, 668 So.2d 1141. *See also Soloco*, *supra*; *Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359; *Manuel v. State*, 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution and Article 782. (A) of the Louisiana code of Criminal Procedure to be Amended to require unanimity verdicts on or after effective ~~assistance of counsel~~ date.

## LAW AND ARGUMENT 1

The opening address at the 1898 Louisiana Constitutional Convention made clear that the point of the entire Convention was to limit African-American participation in the democratic process and to "perpetuate the supremacy of the Anglo-Saxon race in Louisiana." Official Journal of the Proceedings of the Constitutional Convention of the State of Louisiana, 8-9 (1898) [hereinafter "Journal"]. Closing the Convention, Honorable Thomas J. Semmes celebrated the putatively succession "mission" of the delegates "to establish the supremacy of the white race in this state." Id. at 374.

When discussing the provisions adopted to prevent African-American suffrage, a likeminded delegate explained:

The Supreme Court of the United States in the Wilson case, referring to that, said that they had swept the filed of expedients, but they were permissible expedients, and that is what we have done in

order to keep the negro from exercising suffrage. What care I whether the test we have put be a new one or an old one? what care I whether it be more or less ridiculous or not? doesn't it meet the case? Doesn't it let the white man vote, and doesn't it stop the negro from voting, and isn't that what we came here for? [Applause] Constitutional Convention of the State of Louisiana, supra at 380.

In his closing remarks, President Kruttschnit bemoaned that the delegates had been constrained by the Fifteenth Amendment such that they could not provide what they would have wished. Universal White manhood suffrage and the exclusion from the suffrage of every man with a trace of African blood in his veins: Id. at 380. He went on to proclaim:

I say to you, that we can appeal to the conscience of the nation, both judicial and legislative and I don't believe that they will take the responsibility of striking down the system that we have reared in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon case in Louisiana. Id. at 381.

The proponents of those rules sometimes tried to justify then under the guise of cost saving devices, but commentators have directly linked the diminution of the jury trial right to the Convention's larger effort "to consolidate Democratic power in the hands of the 'right pp.,' thereby passing the poorer sorts, just as the suffrage provision did." W. Billings & E. Haas, In Search of Fundamental law: Louisiana's Constitutions, 1812-1874, The Center for Louisiana Studies (1993), pp. 93-109. See also Thomas Aiello, Jim Crow's Last stand, non-unanimous Criminal Jury Verdicts in Louisiana, LSU Press, 2015; Angela A. Allen-Bell, These Jury System are Vestiges of White Supremacy, Washington Post, 9/22/2017. The 1898 Convention substantially diminished the Sixth Amendment jury trial guarantee through non-unanimity rules, the elimination of misdemeanor juries, and the reduction of jury size for lesser felonies.

In recent debates in the Louisiana Legislature John DeRossier, district attorney in Calcasieu Parish, told the panel that the law's roots in White Supremacy are not sufficient enough to change those

historical racists provisions: I've heard a lot about the system being adopted as a vestige of slavery. I have no reason to doubt that. I'm not proud of that, that's the way it started, but it is what it is..." Associated Press, Rid to Strike Louisiana's Jim Crow-era Jury law advances in State House – NOLA. come (2018), http://www.nola.come/crime/index/ssp/2018/04/bid_to_strike_louisiana_jim_c.html [last visited May 23, 2018).

The Louisiana Supreme Court has previously confronted the uncorrected problems of the 1898 Constitutional Convention. It held:

The need to eradicate past evil effects and to prevent the continuation or repetition in the future of the discriminatory practices shown to be so deeply engrained in the laws, policies, and traditions of the State of Louisiana, completely justified the District Court in entering the decree it did and in retaining jurisdiction of the entire case to hear any evidence of discrimination in other parishes and to enter such orders as justice from time to time might require. Louisiana v. United States, 380 US 145, 156, 85 S. Ct. 817, 823 (1965). See also Robert J. Smith, Bidish J. Sarma, How and Why Race Continues to Influence the Administration of Criminal Justice, Vol. 72 No. 2 La. Law Rev. 361, 375 (2012) (The "Delegate achieved these anti-participation goals not only by restricting access to the ballot box but also by diluting the voice of members of racial minority groups by allowing non-unanimous jury verdicts in criminal cases." Id. at 376 (noting commentators at the time of constitutional Convention's concern that African Americans presence on juries would prevent convictions, and result in hijacking sentencing outcomes]; Thomas Aiello, Jim Crow's Last stand, non-unanimous Criminal Jury Verdicts in Louisiana, LSU Press, 2015; Aliza Kaplan, Amy Saack overturning Apodaca v. Oregon should be easy: non-unanimous verdicts in criminal cases undermine the credibility of our justice system, vol. 95 Oregon Law Review No. 1, 3 (February 2017); Angela A. Allen-Bell, These Jury System are Vestiges of White Supremacy, Washington Post, 9/22/2017.

Ultimately, Petitioner Lay does not take on the responsibility to prove that the non-unanimous jury verdicts proceed on an unbroken line of racism from 1898 to 2020, or even that the rule imposed a racist silencing of jurors in his own case. Instead, Petitioner Lay must simply demonstrate that Article 1, Section 17 of the Louisiana Constitution 1974 and La. C.Cr.P. Art. 782.A – non-unanimous jury verdicts were enacted for the sole purpose to retain White Supremacy insofar to deprive African Americans and other minority (non-Anglo-Saxon) of their rights to vote and fear that their presence on juries would prevent convictions and result in hijacking sentencing outcomes.

Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(A) of the Louisiana Code of Criminal Procedure violates defendant Lay's right to a unanimous jury verdict under both the USCA Amend 6 & 14[13] as held by the United States Supreme Court in Ramos v. Louisiana, 590 U.S. ___, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020); and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974[14] in light of the fact they were adopted for the sole purpose to deprive African Americans of the equal protection of rights guaranteed by the United States Constitution in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Lay is an African-American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." State v. Petrovich, 396 So.2d 1318, 1322 (La. 1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. See id. See also  Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles, 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously,

_____

13  See Marshal v. United States, 414 US 417, 94 S. ct. 700, 38 L. Ed. 2d 618 (1974)
14  State v. Brown, 648 So. 2D 872 (La. 1995)

or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

In *Sibley*, this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. *Sibley* at 1107. Under the first level of scrutiny enumerated in *Sibley*, the law creating the classification completely falls. *See Moore v. RLCC Technologies, Inc.* p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal protection and the proponent of the law carries the burden of proving that the classification substantially furthers an important government interest. *See id.* p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. *See id.* p. 11, 668 So.2d 1141. *See also Soloco*, *supra*; *Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359; *Manuel v. State*, 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the

9

provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution of 1974 and Article 782(A) of the Louisiana Code of Criminal Procedure to be amended to require unanimity verdicts but did not make this requirement retroactive. On the 20th day of April 2020, the United States Supreme Court in Ramos, supra, held the State of Louisiana non-unanimous verdict system violated Amendment 5 and 6 applicable to the states through the Fourteenth Amendment but did not decide it violated the equal protection clause[15].

## LAW AND ARGUMENT 2

On April 20, 2020 the United States Supreme Court ruled in Ramos v. Louisiana, 2020 US Lexis 2407 held: "Ramos felony conviction by a non- unanimous jury is unconstitutional because the Sixth Amendments protection against non-unanimous felony guilty verdicts applies against the States through Due Process Clause of the Fourteenth Amendment"

In the concurring opinion by Justice(s) Soto Mayor, Kavanaugh and Thomas it was said…

The majority vividly describes the legacy of racism that generated Louisiana's and Oregon's laws. *Ante*, at 1-2, 13-14, and n. 44. Although Ramos does not bring an equal protection challenge, the history is worthy of this Court's attention. That is not simply because that legacy existed in the first place-unfortunately, many laws and policies in this country have had some history of racial animus-but also because the States' legislatures never truly grappled with the laws' sordid history in reenacting them. See generally *United States v. Fordice*, 505 U. S. 717, 729, 112 S. Ct. 2727, 120 L. Ed. 2d 575 (1992) [policies that are ``traceable'' to a State's *de jure* racial segregation and that still ``have discriminatory effects'' offend the Equal Protection Clause]. Where a law otherwise is untethered to racial bias-and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it-

---

15  See generally United States v. Fordice, 505 US 717, 729, 112 S. ct. 2727, 120 La. R.S. Ed. 2d 575 [1992][policies that are "traceable" to a state's de jure racial segregation and still "have discriminatory effects" offend the Equal Protection Clause].

the new law may well be free of discriminatory taint. That cannot be said of the laws at issue here[16].

While the dissent points to the ``legitimate'' reasons for Louisiana's reenactment, *post*, at 3-4,

Louisiana's perhaps only effort to contend with the law's discriminatory purpose and effects came

recently, when the law was repealed altogether.

Today, Louisiana's and Oregon's laws are fully-and rightly-relegated to the dustbin of history.

And so, too, is *Apodaca*. While overruling precedent must be rare, this Court should not shy away from

correcting its errors where the right to avoid imprisonment pursuant to unconstitutional procedures

hangs in the balance.

Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(A) of the Louisiana Code of

Criminal Procedure violates defendant Lay's right to a unanimous jury verdict under both the USCA

Amendment 14; and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974 in light of the fact

they were adopted for the sole purpose to deprive African Americans of the equal protection of rights

guaranteed by the United States Constitution in order to protect the purity of the ballot and to

perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Lay is an African-

American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and

interests similarly situated." *State v. Petrovich*, 396 So.2d 1318, 1322 (La. 1981). The legislature has

great latitude in making laws and in creating classifications under those laws, so long as those

classifications can withstand constitutional muster. *See id. See also  Burmaster v. Gravity Drainage

Dist. No. 2 of the Parish of St. Charles*, 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a

person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously,

or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or

---

16   Article 1, Section 17, of the La. Constitutional 1974; and 782 A, of LaC.Cr.P.

political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

In *Sibley*, this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. *Sibley* at 1107. Under the first level of scrutiny enumerated in *Sibley*, the law creating the classification completely falls. *See Moore v. RLCC Technologies, Inc.* p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal protection and the proponent of the law carries the burden of proving that the classification substantially furthers an important government interest. *See id.* p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. *See id.* p. 11, 668 So.2d 1141. *See also Soloco*, *supra*; *Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359; *Manuel v. State*, 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of

12

November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution and Article 782. (A) of the Louisiana code of Criminal Procedure to be Amended to require unanimity verdicts on or after effective date.

## DISCUSSION

Louisiana Code of Civil Procedure article 3601A provides that [a] injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law; "The writ of injunction is a harsh, drastic, and extraordinary remedy. It should only issue in those instances where the moving party is threatened with irreparable loss or injury and is without an adequate remedy at law. Irreparable injury has been \*4 interpreted to mean a loss that cannot be adequately compensated in money damages or measured by a pecuniary standard. Morris v. Trust Technologies, LLC, 18-0831 (La. App. 1st Cir. 2/28/19), 274 S. 3d 15, 18-19.

Generally, plaintiff's seeking issuance of a preliminary injunction bear the burden of establishing by a preponderance of the evidence a prima facie showing that they will prevail on the merits and that irreparable injury or loss will result without the preliminary injunction. LSA-C.C.P. art. 3601; Hill v. Jindal, 14-1757 (La. App. 1 Cir. 6/17/15), 175 So. 3d 988, 1002, **writ denied**, 15-1394 (La. 10/23/15), 179 So. 3d 600. However, a threat of irreparable injury need not be shown when the deprivation of a constitutional right is at issue or when the act sought to be enjoined is unlawful. **Hill**, 175 So. 3d at 1002. The only issue to be considered at a hearing on a preliminary injunction is whether the moving party has met its burden of proving that it is entitled to the relief sought as a matter of law and the likelihood that it will likely prevail on the merits of the case. **Louisiana Ass'n of Self-Insured Employers v. Louisiana Workforce Com'n**, 11-1892 (La. App. 1 Cir. 3/28/12), 92 So.3d 397, 400.

Lay challenges Article 1, Section 17 of the La. Const. 1974 and Article 782.A of the Louisiana Criminal Code of Procedure which allowed a 10-2 verdict violate the "Equal Protection Clause(s)" under the rationale of United States v. Fordice, 505 US 717, 729, 112 S. ct. 2727, 120 L. Ed. 2d 575

[1992][policies that are "traceable" to a State's dejure racial segregation and still have discriminatory effects offend the "Equal Protection Clause"; Louisiana v. United States, 380 US 145, 156, 85 S. ct. 817,823 [1965]; and Sibley v. Board of Supervisors of La. Univ. and Agric. and Mechanical College, 477 So. 2d 1094 [1985].

The unconstitutional State of Louisiana procedures[17] used to obtain the 10-2 verdict in State v. Lay #215530-22nd Judicial District Court Parish of St. Tammany used for impeachment and sentencing purposes in State v. Lay #11CR5-112033-22nd Judicial District Court-Parish of Washington clearly violated the "Equal Protection Clauses" of both the United States and the State of Louisiana Constitution 1974 at the time my conviction(s) and sentence(s) became final in State v. Lay #11-CR5-112033 and State v. Lay #215330 used for enhancement under La. R.S. 15:529.1[18] thus entitling petitioner Lay to a new trial and or sentencing hearing without use of State v. Lay #215530 [10-2 verdict].[19]

Wherefore petitioner Lay prays the Court holds Article 1, Section 17 of the La. Constitution. 1974; and Article 782A of the La. C.Cr.P. in violation of boht the United States and the State of Louisiana Constitutions "Equal Protection Clause" and reverse my conviction and sentence due to State v. Lay #215530-C being used for impeachment and sentencing purposes under La. R.S. 15:529.1.

Respectfully submitted this___day of February, 2021 under the penalty of perjury and good-faith.

Richard B. Lay #110315
RLCC -Cajun 2 C2 #12
1630 Prison Road
Cottonport Louisiana 71327
P. O. Box 174
St. Gabriel, LA 70776

---

17   Article 1, Section 17 of the La. Constitution. 1974 and Article 782A of the Louisiana Code of Criminal Procedure..
18   Peterson v. Cain, 302 F. 3d 508, 511 [5th Cir. 2002][citing Williams, 529 US 380-81].
19   See Glover v. United States, 531 US 198 203, 123 S. ct. 696[2001]; and US v. Franks 203 F. 3d 811, [5th Cir. 2000].

## CERTIFICATE OF SERVICE

I state a copy of "Amended Objections" was mailed to Warren Montgomery-District Attorney

this ___day of February, 2022 properly addressed with postage affixed.

_____
Richard B. Lay #110315
RLCC -Cajun 2 C2 #12
1630 Prison Road
Cottonport Louisiana 71327

Richard B Lay 110315
EHCC — Fox 2 B
P.o. Bx 174
St. Gabriel, LA.
70776

Clerk of Court
USDC — ED — LA.
500 Poy dras Stay Rm C151
New Orleans, LA.
70130

US POSTAGE PITNEY BOWES
ZIP 70776
02 4W
0000387932 JAN 09 2023
$ 001.92



PRISON MAIL
NOT CENSORED . NOT RESPONSIBLE
FOR CONTENTS.
ELAYN HUNT CORRECTIONAL CENTER