Exhibit
1(A)

RCH 24, 2021

TWENY-SECOND JUDICIAL DISTRICT COURT CONVENED ON THE ABOVE DATE
SUANT TO PREVIOUS ASSIGNMENT. PRESENT HONORABLE, JEROME WINSBERG,
RICT JUDGE PRESIDING, WALTER REED, DISTRICT ATTORNEY, LORRIE PRICE, DEPUTY
RK OF COURT, JULIA OEHRLEIN, OFFICIAL COURT REPORTER AND SANDRA CONERLY,
UTY SHERIFF. WHEREUPON, THE FOLLOWING MATTERS WERE TAKEN UP AND
OSED OF AS FOLLOWS, TO-WIT:


TE OF LOUISIANA

HARD LAY                              CHARGE:         **CASE #: 11-CR5-112033**
                                      BATTERY OF A CORRECTIONAL FACILITY
                                      EMPLOYEE

RCH 24, 2011
                                             JEROME WINSBERG

S CAUSE CAME ON FOR ARRAIGNMENT AND VARIOUS MOTIONS. PRESENT, LEIGH ANN
L, JOHN LINDNER, ATTORNEY FOR THE DEFENDANT AND THE DEFENDANT, RICHARD

IT BE KNOWN THAT JUGDE JEROME WINSBERG HAS BEEN APPOINTED BY THE
PREME COURT FOR ALL PROCEEDINGS CONCERNING THIS DEFENDANT IN THE 22ND
ICAL COURT.

THIS TIME, THE COURT APPOINTS JOHN LINDER AS COUNSEL FOR THE DEFENDANT.

THIS TIME, THE STATE MAKES AN ORAL MOTION TO AMEND THE BILL OF INFORMATION
REFLECTED:

RRECTED SPELLING OF RAYBURN CORRECTIONAL CENTER AND THE FOLLOWING
DITIONAL WORDING ADDED TO THE BILL OF INFORMATION:

HILE THE OFFENDER IS UNDER THE JURISDICTION AND LEGAL CUSTODY OF THE
PARTMENT OF PUBLIC SAFETY AND CORRECTIONS, OR IS BEING DETAINED IN ANY JAIL,
SON, CORRECTIONAL FACILITY, JUVENILE INSTITUTION TEMPORARY HOLDING CENTER,
LFWAY HOUSE, OR DETENTION CENTER."

THIS TIME, THE DEFENDANT, PRESENT IN OPEN COURT WITH COUNSEL WAS
RAIGNED AND PLED NOT GUILTY.
IRTY DAYS TO FILE PLEADINGS.
TEEN DAYS TO FILE SUPERVISORY WRITS.

OTION FOR DISCOVERY IS SATISFIED.

XPARTE MOTION FOR COUNSEL IS SATISFIED.

L OTHER MOTIONS ARE CONTINUED UNTIL APRIL 20, 2011 AT 11:00 A.M.



3.

*Exhibit* 1(B)

*11 - CR5 - 112033*

*Gave to me*
*open court*
*3-24-11*

JAIL

FELONY BILL OF INFORMATION

STATE OF LOUISIANA - PARISH OF WASHINGTON

TWENTY-SECOND JUDICIAL DISTRICT

TO THE HONORABLE, THE TWENTY-SECOND JUDICIAL DISTRICT COURT OF LOUISIANA, sitting in for the Parish of WASHINGTON, comes now into open Court the undersigned District Attorney of the Twenty-Second Judicial District of Louisiana, in the name and by the authority of said State, informs the said Honorable Court:

That the person(s) named and identified below, late of the Parish of WASHINGTON on or about the date below described, in the Parish of WASHINGTON aforesaid and within the jurisdiction of the Twenty-Second Judicial District in and for the Parish of WASHINGTON, State of Louisiana and contrary to the form of the Statutes of the State of Louisiana in such cases made and provided, and against the peace and dignity of the same did violate:

DEFENDANT'S NAME AND DATE OF BIRTH:

RICHARD LAY    DOB: 01/02/1959   SSN: 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
        Arrest Date: 12/30/2010
    RAYBURN CORRECTIONAL CENTER, ANGIE, LA. 70426-

DATE OF OFFENSE:        December 21, 2010

COUNT 1
R.S. 14:34.5 BATTERY ON A CORRECTIONAL FACILITY EMPLOYEE, by committing a battery without the consent of the victim when the offender has reasonable grounds to believe the victim is a correctional facility employee acting in the performance of his duties. Name of facility: Rayburn Correctional Center, Name of Employee: Jerry Primes.

*while the offender*
*is under the jurisdiction*
*and legal custody of*
*the Dept. of Public Safety*
*and Corrections, or is*
*being detained in any*
*jail, prison, correctional*
*facility, juvenile instituto*
*temporary holding center*
*halfway house, or*
*detention facility.*

WALTER P. REED
DISTRICT ATTORNEY
22nd JUDICIAL DISTRICT
STATE OF LOUISIANA

BY:_____

2.

*Exhibit 2*

# The Supreme Court of the State of Louisiana

**STATE OF LOUISIANA**

No.2021-KH-00437

**VS.**

**RICHARD B. LAY**

– – – – – –

IN RE: Richard B. Lay - Applicant Defendant; Applying For Supervisory Writ, Parish of Washington, 22nd Judicial District Court Number(s) 11-CR5-112033, Court of Appeal, First Circuit, Number(s) 2021 KW 0088;

– – – – – –

**June 08, 2021**

Writ application denied.

JTG

JDH

SJC

WJC

JBM

PDG

Weimer, C. J., recused.

Supreme Court of Louisiana
June 08, 2021

Second Deputy Clerk of Court
For the Court

State ex rel Richard B. Lay

Versus

1st Circuit Court of Appeal

2021-KW-0088

No.  2021-KH-00437

1st Circuit Court of Appeal

State of Louisiana

_____

Date Filed

Deputy Clerk:

## PETITION FOR REVIEW

**NOW INTO COURT** comes petitioner Richard B. Lay who moves this Court to review the correctness of the lower courts summarily denial of relief

## JURISDICTION

Jurisdiction of this court is invoked pursuant to Article 5, section 2 and 5 of the Louisiana Constitution 1974; LSA-C.Cr.P. art. 881.5 and 930.8A(1). See also Becnel v. Blackburn, 410 So. 2d 1012 [La. 1982]; and State v. Smith, 700 So. 2d 493 [La. 1997][case cited].

## STATEMENT OF FACTS

**1.**     The State of Louisiana named and used State of Louisiana v. Lay #215530; #197086; and #1301364, 131/364, 131/275- for sentencing purposes under LSA-R.S. 15:529.1.

2.     On April 20, 2020 the United States Supreme Court ruled in Ramos v. Louisiana, 590 US ___140 s. CT. 1390, 2020 US Lexis 2407 held: "Ramos felony conviction by a non- unanimous jury is unconstitutional because the Sixth Amendments protection against non-unanimous felony guilty verdicts applies against the States through Due Process Clause of the Fourteenth Amendment"

In the concurring opinion by Justice(s) Soto Mayor, Kavanaugh and Thomas it was said…

The majority vividly describes the legacy of racism that generated Louisiana's and Oregon's laws. *Ante*, at 1-2, 13-14, and n. 44. Although Ramos does not bring an equal protection challenge, the history is worthy of this Court's attention. That is not simply because that legacy existed in the first place-unfortunately, many laws and policies in this country have had some history of racial animus-but also because the States' legislatures never truly grappled with the laws' sordid history in reenacting them. See generally *United States* v. *Fordice*, 505 U. S. 717, 729, 112 S. Ct. 2727, 120 L. Ed. 2d 575 (1992) [policies that are ``traceable'' to a State's *de jure* racial segregation and that still ``have discriminatory effects'' offend the Equal Protection Clause]. Where a law otherwise is untethered to racial bias-and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it-the new law may well be free of discriminatory taint. That cannot be said of the laws at issue here[1]. While the dissent points to the ``legitimate'' reasons for Louisiana's reenactment, *post*, at 3-4, Louisiana's perhaps only effort to

_____

[1] Article 1, Section 17, of the La. Constitutional. 1974; and 782 A, of LSA-C.r. P.

1

contend with the law's discriminatory purpose and effects came recently, when the law was repealed altogether.

Today, Louisiana's and Oregon's laws are fully-and rightly-relegated to the dustbin of history. And so, too, is *Apodaca*. While overruling precedent must be rare, this Court should not shy away from correcting its errors where the right to avoid imprisonment pursuant to unconstitutional procedures hangs in the balance.

3.  Petitioner Lay based his "Equal Protection" challenges to Article 1, Section 17 of the La. Const. 1974; and Article 782A, of LSA-C Cr. P. in which State v. Lay #215530 is per se and for interruption of 10-year prescription period[2] to allow usage of State of Louisiana v. Lay #197086; #130, 364, and #131/275 which was not known to him or his counsel and did not become known to him until Rams v. Louisiana:

Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(A) of the Louisiana Code of Criminal Procedure violates defendant Lay's right to a unanimous jury verdict under both the USCA Amendment 14; and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974 in light of the fact they were adopted for the sole purpose to deprive African Americans of the equal protection of rights guaranteed by the United States Constitution in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Lay is an African-American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." *State v. Petrovich*, 396 So.2d 1318, 1322 (La. 1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. *See id. See also Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles*, 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

In *Sibley*, this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or

---

[2] See Senate Bill #221 amending La. R.S. 15:529.1 effective November 1, 2017 reducing the cleansing period from 10 to 5-years for non-violent offense is applicable upon resentencing.

religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis,  it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. *Sibley* at 1107. Under the first level of scrutiny enumerated in *Sibley*, the law creating the classification completely falls. *See Moore v. RLCC Technologies, Inc.* p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal protection and the proponent of the law carries the burden of proving that the classification substantially furthers an important government interest. *See id.* p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. *See id.* p. 11, 668 So.2d 1141. *See also Soloco*, *supra*; *Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359; *Manuel v. State*, 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution and Article 782. (A) of the Louisiana  code of Criminal Procedure to be Amended to require unanimity verdicts on or after effective date.

Wherefore Petitioner Lay prays the following relief to issue:

1. Hold both Article 1, Section 17 of the La. Constitutional. 1974 and Article 782 A of the La. C.Cr.P. unconstitutional under Article 1, Section 3, of the La. Const 1974; and USCA Amendment 14 [Equal Protection Clause] and enjoin the State's use of State of Louisiana v. Lay #215530 obtain pursuant to said unconstitutional statutes for sentencing purposes under the same rationale of Gideon v. Wainwright, 372 US 355 [1963] and

2. Resentence petitioner Lay without the usage of State of Louisiana v. Lay #215530 per se; and #197086 v. #130/364, 131/275 all are now non violent and over 5-years from State v. Lay

#383759-F-22nd JDC-St. Tammany making me a 2nd and not 4th offender. See Senate Bill of

Information #221 amending La. R.S. 15:529.1 effective 11-01-2017 for re-sentencing.

Respectfully submitted this 29th day of April, 2021 under the penalty of perjury and

good-faith

_____
Richard B. Lay # 110315
Raymond LaBorde Correctional Center
Cajun 2 C2
1630 Prison Road
Cottonport, La. 71327

**PLEASE SERVE:**

1. Warren Montgomery
   District Attorney
   701 N. Columbia St.
   Covington LA 70433

2. Brian Messinger
   Attorney at Law
   434 N. Columbia St
   Covington LA 70433

3. Richard B. Lay #110315
   Raymond LaBorde Correctional Center
   Cajun 2 C2
   1630 Prison Road
   Cottonport, La. 71327

4. Marcus Myers-Warden
    Raymond LaBorde Correctional Center
   1630 Prison Road
   Cottonport, La. 71327

5. Jeff Landry- Attorney General
   State of Louisiana
   1885 N. 3rd Street
   Baton Rouge, La. 70802

6. District Defender's Office
   St. Tammany/Washington Parish
   402 N. Jefferson Ave.
   Covington LA 70433

7. Jerome Winberg-Judge Ad Hoc
   5031 St. Charles Ave.
   New Orleans LA 70115

State of Louisiana

Versus

Richard B. Lay

No. 11-CR5-112033

22nd Judicial District Court

Parish of Washington

### MOTION TO CONSIDER ALL CLAIMS BEFORE THE COURT

**NOW INTO COURT** comes defendant Richard B. Lay who moves this court to rule upon all claims presented rightfully before this court under his court's original Jurisdiction-Article 5, Section 16(A) of this LA. Const. 1974 as invoked by petitioner Lay since.

1.  Edwards v. Vannoy does not control whether Ramos is retroactive under Louisiana Law.

2.  Ramos did not rule that Article 17, of the LA. Constitutional. 1974 and Article 782(A) of the LA.C.Cr.P. violates the Equal Protection Clauses of both the United States and the State of Louisiana Constitution which will entitle vacation of both conviction and sentence now.

May ___22___, 2021

*Granted*
*all claim will*
*be reviewed by*
*the Court.*
*Jerome M. Winberg*
*Judge*
*June 21, 2021*

**Richard B. Lay #110315**
Raymond LaBorde Correctional Center
Cajun 2 C2
1630 Prison Road
Cottonport, La. 71327

Cc

1.   W. Montgomery
     District Attorney
2.   J. Landry- Attorney General

A True Copy of Original
This_____
_____
By. Clerk of Court

*Exhibit 2*

State ex rel Richard B. Lay

Versus

22nd Judicial District Court

11-CR5-112033-Washington Parish

No.  21-KW-0595

1st Circuit Court of Appeal

State of Louisiana

Date Filed

Deputy Clerk:

---

### A CRIMINAL PROCEEDING

---

**Request Leave to Amend Application for Writs of Habeas Corpus; Certiorari; Supervisory; Mandamus; and Prohibition to the 22nd Judicial District Court Parish of Washington-Docket Number: 11-CR5-112033**

**Richard B. Lay #110315**
Raymond LaBorde Correctional Center
Cajun 2 C2 #48
1630 Prison Road
Cottonport, La. 71327

1

## INTERESTED PARTIES

1.　**Jerome Winsberg-Judge Ad Hoc**
　　5031 Street, Charles Ave.
　　New Orleans, LA 70115

2.　**Warren Montgomery**
　　District Attorney
　　701 N. Columbia St.
　　Covington, LA 70433

3.　**Richard B. Lay #110315**
　　Raymond LaBorde Correctional Center
　　Cajun 2 C2
　　1630 Prison Road
　　Cottonport, La. 71327

### ISSUES AND QUESTIONS PRESENTED

**1.**     Whether Petitioner <u>Lay</u> is entitled to a ruling that Article 1, Section 17, of the La. Constitutional. 1974 and Article 782 A of the La. Code Criminal Procedure violates the Article 1, Section 2 and 3 of the La. Constitutional. 1974 and a judgment vacating his conviction and sentence there under.

2.     Whether Petitioner <u>Lay</u> is entitled to a ruling that Article 1, Section 17, of the La. Constitutional. 1974 and Article 782 A of the La. Code Criminal Procedure violates the "Equal Protection Clause" of the United States Constitution and a judgment vacating his conviction and sentence there under.

# TABLE OF CONTENT

Interested Parties……………………………………………………………………2

Issues and Questions Presented…………………………………………………..3

Jurisdiction…………………………………………………………………………5

Statement of Case……………..………………………………………………5,6,7

Action by Trial Court……………………………………………………………7

Law and Argument……………………………………...…………………...7,8,9,10,11

Law and Argument 2………………………………………………………11,12,13

Conclusion……………………………………………………………………..13,14

Certificate of Service…………………………………………………………..14

## JURISDICTION

  Jurisdiction of this court is invoked pursuant to Article 5, section 2 and 16 of the Louisiana Constitution 1974; LSA-C.Cr.P. art. 881.5 and 930.8A(1). See also Becnel v. Blackburn, 410 So. 2d 1012 [La. 1982]; and State v. Smith, 700 So. 2d 493 [La. 1997][case cited].

## STATEMENT OF FACTS

**1.**  The State of Louisiana named and used State of Louisiana v. Lay #215530; #197086; 383759; and #1301364, 131/364, 131/275- for sentencing and impeachment purposes. purposes under LSA-R.S. 15:529.1.

2.  On April 20, 2020 the United States Supreme Court ruled in Ramos v. Louisiana, 590 US ___140 S. CT. 1390, 2020 US Lexis 2407 held: "Ramos felony conviction by a non- unanimous jury is unconstitutional because the Sixth Amendments protection against non-unanimous felony guilty verdicts applies against the States through Due Process Clause of the Fourteenth Amendment"

In the concurring opinion by Justice(s) Soto Mayor, Kavanaugh and Thomas it was said…

  The majority vividly describes the legacy of racism that generated Louisiana's and Oregon's laws. *Ante*, at 1-2, 13-14, and n. 44. Although Ramos does not bring an equal protection challenge, the history is worthy of this Court's attention. That is not simply because that legacy existed in the first place-unfortunately, many laws and policies in this country have had some history of racial animus-but also because the States' legislatures never truly grappled with the laws' sordid history in reenacting them. See generally *United States v. Fordice*, 505 U. S. 717, 729, 112 S. Ct. 2727, 120 L. Ed. 2d 575 (1992) [policies that are ``traceable'' to a State's *de jure* racial segregation and that still ``have discriminatory effects'' offend the Equal Protection Clause]. Where a law otherwise is untethered to racial bias-and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it-the new law may well be free of discriminatory taint. That cannot be said of the laws at issue here[1]. While the dissent points to the ``legitimate'' reasons for Louisiana's reenactment, *post*, at 3-4, Louisiana's perhaps only effort to contend with the law's discriminatory purpose and effects came recently, when the law was repealed altogether.

  Today, Louisiana's and Oregon's laws are fully-and rightly-relegated to the dustbin of history. And so, too, is *Apodaca*. While overruling precedent must be rare, this Court should not shy away from correcting its errors where the right to avoid imprisonment pursuant to unconstitutional procedures hangs in the balance.

3.  Petitioner Lay based his "Equal Protection" challenges to Article 1, Section 17 of the La. Const. 1974; and Article 782A, of LSA-C Cr. P. in which State v. Lay #215530 is per se and for interruption of 10-year prescription period[2] to allow usage of State of Louisiana v. Lay #197086; #130, 364, and #131/275 which was not known to him or his counsel and did not become known to him until Rams v. Louisiana:

---

[1] Article 1, Section 17, of the La. Constitutional. 1974; and 782 A, of LSA-C.r. P.
[2] See Senate Bill #221 amending La. R.S. 15:529.1 effective November 1, 2017 reducing the cleansing period from 10 to 5-years for non-violent offense is applicable upon resentencing.

Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(A) of the Louisiana Code of Criminal Procedure violates defendant Lay's right to a unanimous jury verdict under both the USCA Amendment 14; and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974 in light of the fact they were adopted for the sole purpose to deprive African Americans of the equal protection of rights guaranteed by the United States Constitution in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Lay is an African-American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." *State v. Petrovich*, 396 So.2d 1318, 1322 (La. 1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. *See id. See also  Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles*, 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

In *Sibley*, this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. *Sibley* at 1107. Under the first level of scrutiny enumerated in *Sibley*, the law creating the classification completely falls. *See  Moore v. RLCC Technologies, Inc.* p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal protection and the proponent of

the law carries the burden of proving that the classification substantially furthers an important government interest. *See id.* p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. *See id.* p. 11, 668 So.2d 1141. *See also Soloco*, *supra*; *Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359; *Manuel v. State*, 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution and Article 782. (A) of the Louisiana code of Criminal Procedure to be Amended to require unanimity verdicts on or after effective date.

## ACTION BY TRIAL COURT

On April 28, 2021 the Court denied without reasons my pro se Motion to Correct an Unconstitutional Based Sentence in light of Ramos v.Louisiana, 590 US ___ [4/20/20]; and fact Article 1, Section 17 of the La. Const. 1974 and Article 782 A of the La.C.Cr.P. violates the "Equal Protection Clause" of both the "US and the State of Louisiana  Constitution to which the 10-2 verdict of State v. Lay #215530-C used for impeachment and sentencing purposes.

## LAW AND ARGUMENT 1

The opening address at the 1898 Louisiana Constitutional Convention made clear that the point of the entire Convention was to limit African-American participation in the democratic process and to "perpetuate the supremacy of the Anglo-Saxon race in Louisiana." Official Journal of the Proceedings of the Constitutional Convention of the State of Louisiana, 8-9 (1898) [hereinafter "Journal"]. Closing the Convention, Honorable Thomas J. Semmes celebrated the putatively succession "mission" of the delegates "to establish the supremacy of the white race in this state." Id. at 374.

When discussing the provisions adopted to prevent African-American suffrage, a likeminded delegate explained:

The Supreme Court of the United States in the Wilson case, referring to that, said that they had swept the filed of expedients, but they were permissible expedients, and that is what we have done in order to keep the negro from exercising suffrage. What care I whether the test we have put be a new one or an old one? what care I whether it be more or less ridiculous or not? doesn't it meet the case? Doesn't it let the white man vote, and doesn't it stop the negro from voting, and isn't that what we came here for? [Applause] Constitutional Convention of the State of Louisiana, supra at 380.

In his closing remarks, President Kruttschnit bemoaned that the delegates had been constrained by the Fifteenth Amendment such that they could not provide what they would have wished. Universal White manhood suffrage and the exclusion from the suffrage of every man with a trace of African blood in his veins: Id. at 380. He went on to proclaim:

I say to you, that we can appeal to the conscience of the nation, both judicial and legislative and I don't believe that they will take the responsibility of striking down the system that we have reared in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon case in Louisiana. Id. at 381.

The proponents of those rules sometimes tried to justify then under the guise of cost saving devices, but commentators have directly linked the diminution of the jury trial right to the Convention's larger effort "to consolidate Democratic power in the hands of the 'right pp.,' thereby passing the poorer sorts, just as the suffrage provision did." W. Billings & E. Haas, In Search of Fundamental law: Louisiana's Constitutions, 1812-1874, The Center for Louisiana Studies (1993), pp. 93-109. See also Thomas Aiello, Jim Crow's Last stand, non-unanimous Criminal Jury Verdicts in Louisiana, LSU Press, 2015; Angela A. Allen-Bell, These Jury System are Vestiges of White Supremacy, Washington Post, 9/22/2017. The 1898 Convention substantially diminished the Sixth Amendment jury trial guarantee through non-unanimity rules, the elimination of misdemeanor juries, and the reduction of jury size for lesser felonies.

In recent debates in the Louisiana Legislature John DeRossier, district attorney in Calcasieu Parish, told the panel that the law's roots in White Supremacy are not sufficient enough to change those historical racists provisions: I've heard a lot about the system being adopted as a vestige of slavery. I have no reason to doubt that. I'm not proud of that, that's the way it started, but it is what it is…" Associated Press, Rid to Strike Louisiana's Jim Crow-era Jury law advances        in        State        House        –        NOLA.come        (2018),

http://www.nola.come/crime/index/ssp/2018/04/bid_to_strike_louisiana_jim_c.html [last visited May 23, 2018).

The Louisiana Supreme Court has previously confronted the uncorrected problems of the 1898 Constitutional Convention. It held:

The need to eradicate past evil effects and to prevent the continuation or repetition in the future of the discriminatory practices shown to be so deeply engrained in the laws, policies, and traditions of the State of Louisiana, completely justified the District Court in entering the decree it did and in retaining jurisdiction of the entire case to hear any evidence of discrimination in other parishes and to enter such orders as justice from time to time might require. Louisiana v. United States, 380 US 145, 156, 85 S. Ct. 817, 823 (1965). See also Robert J. Smith, Bidish J. Sarma, How and Why Race Continues to Influence the Administration of Criminal Justice, Vol. 72 No. 2 La. Law Rev. 361, 375 (2012) (The "Delegate achieved these anti-participation goals not only by restricting access to the ballot box but also by diluting the voice of members of racial minority groups by allowing non-unanimous jury verdicts in criminal cases." Id. at 376 (noting commentators at the time of constitutional Convention's concern that African Americans presence on juries would prevent convictions, and result in hijacking sentencing outcomes]; Thomas Aiello, Jim Crow's Last stand, non-unanimous Criminal Jury Verdicts in Louisiana, LSU Press, 2015; Aliza Kaplan, Amy Saack overturning Apodaca v. Oregon should be easy: non-unanimous verdicts in criminal cases undermine the credibility of our justice system, vol. 95 Oregon Law Review No. 1, 3 (February 2017); Angela A. Allen-Bell, These Jury System are Vestiges of White Supremacy, Washington Post, 9/22/2017.

Ultimately, Petitioner Lay does not take on the responsibility to prove that the non-unanimous jury verdicts proceed on an unbroken line of racism from 1898 to 2020, or even that the rule imposed a racist silencing of jurors in his own case. Instead, Petitioner Lay must simply demonstrate that Article 1, Section 17 of the Louisiana Constitution 1974 and La. C.Cr.P. Art. 782.A – non-unanimous jury verdicts were enacted for the sole purpose to retain White Supremacy insofar to deprive African Americans and other minority (non-Anglo-Saxon) of their rights to vote and fear that their presence on juries would prevent convictions and result in hijacking sentencing outcomes.

Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(A) of the Louisiana Code of Criminal Procedure violates defendant Lay's right to a unanimous jury verdict under

both the USCA Amendment 14[3]; and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974[4] in light of the fact they were adopted for the sole purpose to deprive African Americans of the equal protection of rights guaranteed by the United States Constitution in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Lay is an African-American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." _State v. Petrovich_, 396 So.2d 1318, 1322 (La. 1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. _See id. See also  Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles_, 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

In _Sibley_, this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis,  it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. _Sibley_ at 1107. Under the first level of scrutiny enumerated in _Sibley_, the law creating the classification completely falls. _See  Moore v. RLCC Technologies, Inc._ p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal protection and the proponent of the law carries the burden of proving that the classification substantially furthers an important

---

[3] See marshal v. United States, 414 US 417, 94 S. Ct. 700, 38 L. Ed. 2d 618 (1974)
[4] State v. Brown, 648 So. 2d 872 (La. 1995).

government interest. *See id.* p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. *See id.* p. 11, 668 So.2d 1141. *See also Soloco*, *supra*; *Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359; *Manuel v. State*, 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution and Article 782. (A) of the Louisiana Code of Criminal Procedure to be amended to require unanimity verdicts but did not make this requirement retroactive. On the 20th day of April 2020, the United States Supreme Court in Ramos, supra held the State of Louisiana non-unanimous verdict system violated Amendment 5 and 6 applicable to the states through the Fourteenth Amendment but did not decide it violated the equal protection clause[5].

## LAW AND ARGUMENT 2

On April 20, 2020 the United States Supreme Court ruled in Ramos v. Louisiana, 2020 US Lexis 2407 held: "Ramos felony conviction by a non- unanimous jury is unconstitutional because the Sixth Amendments protection against non-unanimous felony guilty verdicts applies against the States through the Privileges or Immunities Clause of the Fourteenth Amendment" In the concurring opinion by Justice(s) Soto Mayor, Kavanaugh and Thomas it was said…

The majority vividly describes the legacy of racism that generated Louisiana's and Oregon's laws. *Ante*, at 1-2, 13-14, and n. 44. Although Ramos does not bring an equal protection challenge, the history is worthy of this Court's attention. That is not simply because that legacy existed in the first place-unfortunately, many laws and policies in this country have had some history of racial animus-but also because the States' legislatures never truly grappled with the laws' sordid history in reenacting them. See generally *United States v. Fordice*, 505 U.

---

[5] See generally United States v. Fordice, 505 US 717, 729 112 S. Ct. 2727, 120 La. R.S. Ed. 2d 575 [1992][policies that are "traceable" to a State of Louisiana's de jure racial segregation and still "have discriminatory effects" offend the Equal Protection Clause].

S. 717, 729, 112 S. Ct. 2727, 120 L. Ed. 2d 575 (1992) [policies that are ``traceable'' to a State's *de jure* racial segregation and that still ``have discriminatory effects'' offend the Equal Protection Clause]. Where a law otherwise is untethered to racial bias-and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it-the new law may well be free of discriminatory taint. That cannot be said of the laws at issue here[6]. While the dissent points to the ``legitimate'' reasons for Louisiana's reenactment, *post*, at 3-4, Louisiana's perhaps only effort to contend with the law's discriminatory purpose and effects came recently, when the law was repealed altogether.

Today, Louisiana's and Oregon's laws are fully-and rightly-relegated to the dustbin of history. And so, too, is *Apodaca*. While overruling precedent must be rare, this Court should not shy away from correcting its errors where the right to avoid imprisonment pursuant to unconstitutional procedures hangs in the balance.

Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(A) of the Louisiana Code of Criminal Procedure violates defendant Smith's right to a unanimous jury verdict under both the USCA Amendment 14; and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974 in light of the fact they were adopted for the sole purpose to deprive African Americans of the equal protection of rights guaranteed by the United States Constitution in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Smith is an African-American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." *State v. Petrovich*, 396 So.2d 1318, 1322 (La. 1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. *See id. See also Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles*, 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

---

[6] Article 1, Section 17, of the La. Constitutional. 1974; and 782 A, of LSA-C.r. P.

In *Sibley*, this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. *Sibley* at 1107. Under the first level of scrutiny enumerated in *Sibley*, the law creating the classification completely falls. *See Moore v. RLCC Technologies, Inc.* p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal protection and the proponent of the law carries the burden of proving that the classification substantially furthers an important government interest. *See id.* p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. *See id.* p. 11, 668 So.2d 1141. *See also Soloco*, *supra*; *Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359; *Manuel v. State*, 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution and Article 782. (A) of the Louisiana code of Criminal Procedure to be Amended to require unanimity verdicts on or after effective date.

Wherefore I pray the following relief to issue:

1.      Hold Article 1, Section 17 of the La. Const. 1974 and Article 782 (A) of the La. Code Criminal Procedure unconstitutional under both the United States and the State of Louisiana

Constitution 1974, "Equal Protection Clauses" since they were adopted to deprive African American of "Equal Rights/Privileges" as whites; and

2.   Hold the Repeal of these Statues has not corrected those affected of their right to avoid imprisonment pursuant to unconstitutional procedures in compliance with Sibley and Fordice to which this Court must do.

Respectfully submitted this ___ day of July, 2021 under the penalty of perjury and good-faith.

_____

**Richard B. Lay #110315**
Raymond LaBorde Correctional Center
Cajun 2 C2
1630 Prison Road
Cottonport, La. 71327

**CERTIFICATE OF SERVICE**

I state a copy of this writ application was mailed to all listed "Interested Parties" properly addressed with postage affixed this ___ day of July 2021.

_____

**Richard B. Lay #110315**
Raymond LaBorde Correctional Center
Cajun 2 C2
1630 Prison Road
Cottonport, La. 71327