The United States Court Of Appeal
For the U.S. Fifth Circuit

Richard B. Lay - Pro Se    Civil Action
Versus
Donnie Bordelon - Warden;    24-30350
and The State Of louisiana

Application For A Writ Of Habeas
Corpus, And or A Certificate Of
Appealibility As A Sanctioned Petit-
ioner to The United States District
Court - Eastern District Of louisiana
Docket No: 2:19-CV-9803
The Honorable Sarah Vance -- Judge

Richard B. Lay
Doc # 110315
EHCC - Fox 2B
P.O. Box 174
St. Gabriel, LA. 70776

U.S. DISTRICT COURT
Eastern District of Louisiana
Deputy Clerk
JUL 17 2024

TENDERED FOR FILING

Footnote(s)
1. In Re Richard B. Lay - No. 24-90004
U.S. Court Of Appeal - For The Fifth Circuit

# TABLE OF CONTENTS ..... i Page(s)

1. Interested Parties . . . . . . I
2. Issues And Questions Presented ... II, III
3. Table Of Authorities ... IV, V, VI, VII
4. Law And Argument 1 ... 1-13
5. Law And Argument 2 ... 14-17
6. Law And Argument 3 ... 18-21
7. Law And Argument 4 ... 21
8. Law And Argument 5 ... 22
9. Conclusion . . . . . . . . 23
10. Certificate of Services . . . . . 23

i

<u>Interested Parties:</u>

1. Matthew Caplan — Asst. District Attorney
22nd Judicial District Court — Parish
of St. Tammany / Washington
701 N. Columbia St.
Covington, LA. 70433

2. Jeff Landry — Governor
State of Louisiana
900 N. 3rd Street
Baton Rouge, LA. 70804

3. Donnie Bordelon — Warden
Elayn Correctional Center
6925 Hwy 74
St. Gabriel, LA. 70776

4. Sarah Vance — Judge
United States District Court
Eastern District of Louisiana
500 Poydras St. Room C/51
New Orleans, LA.
          70130

5. Richard B. Lay #110315
Elayn Hunts Correctional Center
6925 Hwy 74
P.O. Box 174
St. Gabriel, LA. 70776

I

# Issues and Questions Presented

1. Petitioner Lay did not discover the basis for his Equal Protection Clause claims involving the State of Louisiana's deliberate and systematically adoption of the Non-Unanimous Jury Verdict System to establish white supremacy and to discriminate to deny African Americans to serve as jurors making their two votes meaningless and easy for the 10-majority white to obtain convictions, incarcerating African-Americans in Ramos v. Louisiana, 140 S.Ct. 1390 [2020]; and further research and having legal cases Shepardised.

2. Petitioner Lay has been effectively and deliberately denied meaniful Assistance at trial, and on Direct Appeal thru filing of a No-merit Brief contrary to the United States and the Louisiana Supreme Court's precedents.

3. Petitioner Lay was deliberately denied consideration of his Equal Protection Clause exhausted on Remand per Rhines v. Weber, 544 U.S. 269 [2005] by the magistrates falsely alleging I did not exhaust this claim and this claim constitutes a 2nd Successive Writ needing authorization from the

II

United States Court of Appeal —
For The Fifth Circuit despite NO
response from the State of Louisiana
in Rebuttal despite Notice of fillings
Served upon Counsel Of records.

5. Petitioner Lay filed several valid
Motions To VACATE All Judgments
to which the Court Arbitrarily,
Capriciously And invidously denied
relief by using the higher term
of Rule 60 (b) 6 as grounds for
Relief Whereas Several lower provis-
ions applied.

III

## TABLE OF Authorities

1. Strander + West Virginia, 100 U.S. 363, 25 L.Ed 664 [1879] . . . . . . . . . . 1

2. Ramos + Louisiana, 140 S.Ct. 1390 [2020] 1, 9, and 11

3. State + Riddick, 351 So.3d 273, 277 [La. 10/21/22] . . . . . . . . 1,3,4,5

4. Alexander + Louisiana, 405 U.S. 625, 92 S.Ct. 1221 [1972] . . . . . . . 2

5. Hill + Texas, 316 U.S. 400, 62 S.ct 1159 [1942] . . . . . . . . . . . 3,6

6. Espinoza + Montana Dep't Of Revenue, ___ U.S. ___ 140 S.ct. 2246, 2268, 207 L.Ed 2d 679 [2020] . . . . . 3,4

7. Apodaca + Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed 2d 184 [1972] . . 4

8. Marks + U.S., 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed. 2d 260 [1977] . . . . 5

9. United States + Fordice, 505 U.S. 717, 112 S.Ct. 2727 [1992] . . . . . . . 7

10. State + Hankston, 122 So.3d 1028 [La. App. 4 Cir. 2013] writ denied, 134 So.3d 1193 [La. 3/14/14] . . . . . . . . . .

    Johnson + Louisiana, 406 U.S. 356, 92 S.Ct 1620 [1972] . . . . . . . . 9

11. State + Willie Gipson, 296 So.3d 105 [La. 6/03/20] . . . . . 10

12. Melvin Carter Maxie, # 13-CR-73522-11th JDC/Sabine . . . . . . . 10

13. Pointer + Texas, 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed. 2d 923 . . . . . 11

14. Duncan + Louisiana, 88 S.ct. 1444, 391 U.S. 145 [1968] . . . . . . 11, 11

IV

14. Burdine v. Johnson, 262 F.3d 336 [5th Cir. 2001] ......... 14

15. Yarborough v. Gentry, 540 U.S. 1, 124 S.ct. 1, 157 L. Ed.2d 1 [2003] ......... 14

16. Wiggins v. Smith, 539 U.S. 510, 521, 123 S.Ct. 2527, 156 L. Ed. 2d 471 [2003] ......... 14

17. U.S. v. Phillips, 210 F.3d 345, 348 [5th Cir. 2000][ quoting U.S. v. Williamson, 183 F.3d 458 [5th Cir. 1999] ......... 14

18. Campbell v. Thaler, 2-10-CV-0271, 2014 U.S. Dist. Lexis 37544, 2014 WL 116359 [N.D. Tex. March 20, 2014][ quoting Nelson v. Estelle, 642 F.2d 903 [5th Cir. Unit A April —, 1981][Intern Donovan v. Christotoro, 416 U.S. 637, 94 S.ct. 1866, 40 L. Ed.2d 431 [1974] ......... 15

19. State v. Watts, 735 So. 2d 866 [1996] ......... 15

20. State v. Breaux, 504 So. 2d 1011 [La. App. Kir. 1987] ......... 16

21. State v. Cook, 372 So. 2d 1202 [La 1979] ......... 16

22. Johnson v. Puckett, 930 F.2d 445 [5th Cir.] cert. denied, 112 S.Ct. 252 [1991][ cases cited ] ......... 16

23. State v. Baker, 970 So.2d 948 [La 2007] ......... 16

24. State v. Lewis, 104 So.3d 407 [La 2017] ......... 16

25. Garrett v. U.S., 471 U.S. 773 [1985] ......... 16

26. State v. Cotton, 45 So.3d 1030 [La 2010] ......... 16

27. Penson v. Ohio, 488 U.S. 75, 109 S.ct. 346 [1988] ......... 16

28. State v. Melon, 660 So. 2d 508 [La. App. 4 Cir. 1993] ......... 17

29. State v. Brown, 620 So. 2d 508 [La. App. 4 Cir. 1993] ......... 17

30. State v. Martin, 643 So.2d 830 [La. App. 4 Cir. 1994] ......... 17

V.

31. State v Augustine, 550 So. 2d 1331, 1334 [La. 1990] . . . . . . . . 17

32. Spencer v Texas, 385 U.S. 554, 87 S. Ct. 648, 17 L. Ed 2d 606 [1967] . . . 17

33. State v Skipper, 906 So. 2d 339 [La. 2005] . . . . . . . . 17

34. Apprendi v New Jersey, 530 U.S. 466 . . . . . 17

35. State v Prieur, 277 So. 2d 126 [La. 1973] . . . . . . . . 17

36. Kirby v Illinois, 406 U.S. 682 [1972] . . . 18

37. Faretta v Calif., 422 U.S. 806 [1972] . . 18

38. Meyers v Collins, 8 F.3d 249, 252 [5th Cir. 1993] . . . . . . . 18

39. Patterson v Illinois, 487 U.S. 285. [1988] . . . . . . . . 18

40. Brown v Wainwright, 665 F.2d 607 [5th Cir. 1982] . . . . 18

41. Crandell v Bunnell, 25 F.3d 751 [9th Cir. 1994] . . . . . . . 18, 19

42. U.S. v Silkwood, 893 F.2d 245 [10th Cir. ] [voluntarily waiver when trial court attempted to persuade defendant of appointed counsel's adequacy, rather than conducting penetrating inquiry into decision to proceed pro se, imper- missibly forcing defendant to choose between self-representation and poor counsel], cert. denied, 496 U.S. 1087] . . . 19

43. McKaskle v Wiggins, 466 U.S. 168 . . . . . . . . 19, 21

44. Kirby v Illinois, 406 U.S. 682 [1972] . . . 21

VI

45. U.S. * Cronic, 466 U.S. 648 [1984] . . . 21
46. Florida * Nixon, 543 U.S. 175 [2004] . . . 21
47. Rhines * Weber, 544 U.S. 269 [2005] . . . 1

United States Constitution

48. Amendment Sixth . . . . . . 14, 19
49. Amendment fourteenth . . . . .
(a). Due Process . . . . . 13a, 17
(b). Racial Discrimination . . . . . . 13a, 13(a)(b),
24

Louisiana Constitution 1974

50. Article 1, Section 17 . . . ~ . . .
51. Article 1, Section 2 . . . . . ~ 18
52. Article 1, Section 3 . . . . . . 18

Louisiana State Statutes

53. Article 782, A, of Criminal Code
Procedure . . . .
54. Article 487, of Criminal Code
Procedure . . . . . . ~ . 16, 18

Louisiana Revised Statutes

55. R.S. 14:34.5 B(2) . . . . . . 17
R.S. 15: 529.1 D(1)(b) . . . 15, 17, 17.

U.S. Federal Rules Civil Procedure

56. Rule 60 (b)(2)(3), (6) . . . . . . 24

VII

## I.   BackGround

Petitioner Richard Lay filed an Application for The Writ Of Habeas Corpus under 28 U.S.C. § 2254. Lay's petition, as Amended, challenged his 2011 State Conviction[1] by unanimous jury verdict for battery on a correctional facility employee and his related multiple offender adjudication. The Case was initially referred to Magistrate Judge Joseph C. Wilkinson, Jr., who issued a Report And Recommendation on February 28, 2020 recommending dismissal of the petition as procedurally barred and otherwise meritless! Lay filed Numerous objections to Magistrate Judge Wilkinson's R+R.[2] Subsequently, the Court referred the matter to Magistrate Judge Donna Phillip for a supplemental R+R addressing Lay's claim in part under Ramos v louisiana, 140 S.ct. 1390 [2020]. Magistrate Judge Currault recommended dismissal of Lay's Ramos related claims in the supplemental R+R.[3] Lay filed multiple objections to the supplemental R+R[4] District Court Judge Sarah S. Vance considered the petition, record, the applicable law, the magistrate

Footnote(s)
1. R. Doc. 33
2. R. Doc. 36, 37, & 42
3. R. Doc. 50
4. R. Doc. 51 + 54                    VIII

Judges R&Rs, and Lay's objections, and ultimately adopted the MAGISTRATE Judges' R&R as its opinion, thereby dismissing Lay's petition with prejudice.[5] IN the Order and Reasons dated June 13, 2023, the Court affirmed the MAGISTRATE's Judges' determination that Lay's claims are meritless, and further-determined that his "Numerous objections all either: (1). mirror the underlying claims in the petition, (2). rehash arguments made before this MAGISTRATE Judges, (3). improperly raise New issues not presented to the MAGISTRATE Judges, or (4). otherwise lack merit due to their conclusory Nature, failure to address the MAGISTRATE Judges" relevant recommendations, or misstatement of Applicable law.[6]

IN July 2023, Lay filed motions to alter or Amend Judgment and to vacate Judgment.[7] The Court denied motions, and decline to issue a Certificate of Appealability ["COA"] as to Lay's motions.[8] Lay appealed the Court's order and Reasons, And on JANUARY 10, 2024, the Fifth Circuit Court of Appeals dismissed the appeal for WANT of prosecution.[9]

FootNote(s)

5. R. Doc. 57
6. R. Doc. 57
7. R. Docs. 64+65. The Court construed Lay's motion, which was styled as a

IX

Petitioner Lay has filed a motion to reinstate the Dismissed Appeal on January 10, 2024--- In Re Lay No. 19-9803-R.(2)- USDC- ED-La. in light Of In Re Richard B. Lay No. 24-90004[May 17, 2024] holding that my filings related to my Conviction And Sentence for battery on a Correctional Officer which I only — Need leave For Permission To Proceed As A SANCTioned Prisoner.

Lay has Now filed five motions Seeking VArious relief from the Court. The Court will address each motion below

## II Motions To Vacate

Lay has filed four motions that he

motion for a New trial Under Federal Rule Of Civil Procedure 59(a), as a motion to Alter Or Amend Judgment Under Federal Rule Of Civil Procedure 59(e). R. Doc. 67,

8. R. Doc. 67

9. R. Doc. 69, Specifically, the Fifth Circuit issued a notice informing Lay that his Appeal Could Not proceed until he established whether he had SAtisfied a previous SANCTion imposed against him in a Separate CASe, Lay v. TANNer, No. 13-30708, Lay failed to Comply With the Fifth Circuit's Notice.

X.

Styles as motions to vacate or amended motion to vacate.[10] In his first motion, styled as "Motion to Vacate and Set Aside All Judgments #I," Lay contends that the magistrate judge and trial judge applied the wrong Louisiana laws to determine his claims in various respect.[11] In the second motion, styled as "Motion to Vacate II," Lay reasserts his claims in part under Ramos.[12] The third motion requests that the court consider a filing made with the Fifth Circuit as an amended motion to vacate and to set aside the judgment.[13] The Fifth Circuit filing, which was a request for leave to amend his original request to file a successful habeas corpus petition also reiterates Lay's claims in part under Ramos, asserting that neither magistrate judge Wilkinson nor Currault addressed Lay's "Equal Protection Clause Challenges as a viable claim

Footnote(s)

10. R. Docs. 70, 70-1, 71, +
11. R. Doc. 70.
12. R. Doc. 70-1.
13. R. Doc 71,
14. R. Doc. 71-1.


XI

as of right under Clearly established
precedents from the United States Supreme
Court And the louisiana Supreme
Court.[14] In Lay's fourth motion, styled
as a "motion To Treat Attached
Application For COA as an Amended
motion To vacate Judgment," Lay
attaches a motion he originally filed
with the Fifth Circuit raising his
arguments in part under Ramos in
support of his request that the Fifth
Circuit issue a COA.[15] Lay requests
that the Court Consider the Arguments
raised in a previously fi'ed document
in support of Lay's Contention that
the magistrate Judges erroneously
concluded that Lay did not exhaust
his "Equal Protection Clause Challenges
to the Non-unanimous Jury verdict
system. with his Ramos Claim.[16] Because
the second, third, fourth, and fifth mot
ions raise the same argument under
Ramos,[17] the Court will Consider the
arguments raised therein in support

Footnote(s)

14. R. Doc. 71-1.
15. R. Docs. 73 + 73-1; ~~Enter Richard Jax December~~
16. R. Doc. 74.
17. R. Docs. 70-1, 71, 73, + 74.

XII

Motion to Vacate judgment.

Federal Rule of Civil Procedure 60
(b). provides a limited means for
a party to seek relief from a final
Judgment in a habeas proceeding. A
district court has broad discretion
to grant or deny motion under Rule
60(b). Lyles v. Medtronic Sofamor Danek,
USA, Inc., 871 F.3d 305, 315 [5th Cir.
2017]. Rule 60(6) permits a court to
grant relief from a final judgment
or order only upon a showing of one
of the following:

(1). mistake, inadvertence, surprise, or excusable
Neglect;
(2). Newly discovered evidence that, with reas-
onable diligence, could not have been discov-
ered in time to move for a New trial
under Rule 59(a).
(3). fraud [whether previously called int-
rinsic or extrinsic], misrepresentat-
ion, or misconduct by an opposing
Party;
(4). the judgment is void;
(5). the judgment has been satisfied,
released or discharged; it is based on
on earlier judgment that has been re-
versed or vacated; or applying it pros-
pectively is no longer equitable; or
(6). any other reason that justifies
relief.

XIII

Magistrate Judge Currault found that Lay's Ramos claim based on his assertion that he was convicted in 2011 by a non-unanimous verdict is erroneous only because the court did not properly rule upon my actual claim which is: The use of State + Lay # 215530 C — 22nd Judicial District Court a non-unanimous Jury verdict was used for impeachment at my trial and for enhancement of my sentence under LJA-R.S. 15:529.1 Pursuant to Article 1, Section 17 of the Law Const. 1974. and Article 782A, of the Criminal Code Of Procedure which is unconstitutional under the fourteenth Amendment — Fundamental Due Process; and Equal protection due to being adopted at the 1898 and 1973 Constitutional Convention to establish white Supremacy and to deliberately and systematically exclude otherwise African American as jurors to make it easier for African Americans to be convicted since their votes would be meaningless. See Alexander + louisiana, 405 U.S. 625, 628-69, 92 S.Ct. 1221 [1972]. See Hill + Texas, 316 U.S. 400, 406, 62 S.Ct. 1159, 86 L. Ed 1559 [1942]. See also Rideau + whitley, 237 F. 3d 972, 481, 482

XIV

<u>Law And Argument I</u>

... ON July 27, 2020, the District Court construed Lay's motion for remand to the State Courts [ECF No. 40] as a request to Amend his petition to include two unexhausted claims discovered in <u>Ramos + Louisiana</u>, 140 S.ct. 1390 [2020] challenging the Non-unanimous Jury Verdict system' as to his current conviction And the predicates used to enhance my sentence under LSA-R.S. 15:529.1. ECF No. 43. The Court granted <u>Lay</u> leave to Amend his petition and staying the habeas corpus per <u>Rhines</u><sup>2</sup> until the <u>Ramos</u> related claims are exhausted:

The State Courts pleadings <u>Lay</u> provided reflect that his request for relief under <u>Ramos</u><sup>1</sup> challenging Louisiana's Non-unanimous Jury Verdict system being adopted to discriminate against African-American voting and Participation in the Jury Service and to establish White Supremacy... has been denied at least twice. On October 14, 2020, the motion to vacate based on <u>Ramos</u> and that Louisiana Non-unanimous Jury Verdict system violated the <u>Equal Protection</u> of rights under both the United States and State of Louisiana Constitutions <u>Provisions</u>

<u>Footnote(s)</u>

1. <u>Sixth</u> And <u>Equal Protection</u> challenges to the Non-unanimous Jury verdict

2. <u>Rhines + Weber</u>, 544 U.S. 269 [2005]

1.

States And the State of Louisiana Constitutions. The State Courts And the U.S. District Court has yet to rule upon the facts that the Non-Unanimous Jury Verdict System was adopted to discriminate against African Americans and to establish White Supremacy which was Clearly established at the time of my Conviction(s) And Sentence(s) by use of State + Law # 215530-c — 22nd Judicial District Court — St. Tammany Parish a 10-2 verdict for impeachment purposes during trial And Sentencing enhancement under LSA-R.S. 15:529.1. The State trial Court denied without stated reasons Lay's second motion based in part on Ramos on November 4, 2021. Id. at 52 Lay filed unsuccessful writs Applications in the Louisiana First Circuit in pursuit of relief in part under Ramos. Id. at 10. His related writ application to the Louisiana Supreme Court was denied without stated reasons. Id. at 69[3]

Lay's Equal Protection challenges to the nature and Reasons For Adoption of the Non-Unanimity—

Footnote(s)

3. See further exhaustion denied without written Reasons. State + Lay, 2021-KH-1994, 2022 WL-224326, at 1 [La. 1/26/22] [denying Lay's writ application asserting Ramos related claims]; State + Lay, No. 2021-KH-1256, 2022 WL 224326, at 1 [La. 1/26/22] [same]; State + Lay, 317 So.3d 321 [La. 6/8/21].[2e]

Louisiana's Constitutional Provisions permitting Non-Unanimous Verdicts arose in the late 1800. After ratification of the Fourteenth Amendment and passage of the Civil Rights Act of 1875, the Supreme Court held that States could no longer entirely bar black jurors from jury service. Strauder v West Virginia, 100 U.S. 303, 25 L. Ed. 664 [1879]. Before that time, and throughout the 1800s, Louisiana required a unanimous jury verdict for a felony conviction. In the wake of Strauder and other post-Reconstruction developments, Louisiana convened a Constitutional Convention in 1898, the purpose of which was, in the words of a delegate, to "establish the Supremacy of the white race." See Generally Ramos, 140 S. Ct. at 1393-1394. See also Official Journal of Proceedings of the Constitutional Convention of the State of Louisiana p. 374 [H. J. Hearey ed. 1898]. See Also State v Riddick, 351 So.3d 273, 277 [La. 10/21/22]. Alongside several laws intended to disenfranchise African-Americans from the jury verdict without explicitly such intent. With a careful eye on racial demographics, the convention delegates sculpted a facially race-neutral rule permitting 10-2 verdicts in order to ensure that African American jurors service would be meaningless. Ramos

3.

590 U.S. at _____, 140 S.ct. at 1394
[citations omitted].

A criminal defendant "is entit-
led to require that the State, not
deliberately and systematically deny
to members of his race the right to
participate in the administration of
Justice". Alexander + Louisiana, 405 U.S.
625, 628-29, 92 S.ct. 1221. Accordingly, where
sufficient proof of discrimination
in violation of the Fourteenth Amend-
ment has been made out and not
rebutted:

... No State is at liberty to impose
upon one charged with a crime a
discrimination in its trial procedure
with the Constitution, and an Act of
Congress, passed in its trial procedure
which the Constitution, alike forbid—
Nor is this Court at liberty to grant
or withhold the benefits of equal
protection, which the Constitution com-
mands for all, merely as we may
deem the defendant innocent or guilty.
It is the State's function, not ours, to
assess the evidence against a defend-
ant. But it is our duty as well as
the State's to see to it that through
out the procedure for bringing him
to justice he shall enjoy the prot-
ection which the Constitution guar-
antees. Equal protection of the laws

P. 4₈

is something more than an abstract right. It is a command which the State must respect, the benefits which every ~~citizen~~ person may demand. Not the least merit of our constitutional system is that its safeguards extend to all least deserving as well as most virtuous. <u>Hill v Texas</u>, 316 U.S. 400, 406, 62 S.Ct. 1159, 86 L.Ed. 1559 [1942].

<u>Ramos</u> is a profound sweeping change in the law which touches on basic fundamental fairness. Not only did it restore the original intent of the <u>Framers</u> in regard to the Sixth Amendment, it also cured a rule that was indisputably ~~~~ adopted for ~~~~ racially discriminatory purposes of diluting the power of black jurors. See <u>Ramos</u>, 140 S.ct. at 1394; <u>State v Riddick</u>, Supra at 288. Thomas Aiello, Jim Crow's last stand Nonunanimous Criminal Jury Verdicts in Louisiana [2015]. That the Louisiana Constitution of 1974 somehow cleansed the non-unanimous jury system of its racial animus and impact is an untenable position. See <u>Espinoza v Montana Dep't of Revenue</u>, ___ U.S. ___ 140 S.ct. 2246, 2268,

<u>Footnote(s)</u>

1. The majority observes the **Framers** of Louisiana Constitution 1974 were justif-

P.5.

207 L. Ed 2d 678 [2020][Alito, J., Concurring][conceding that "if the Original motivation for the laws Mattered [in Ramos], it certainly matters here]. In 1898, the delegates averred their primary motivation was Judicial efficiency, with the second motivation being the disparate impact the law would have on African-Americans. State + Riddick, at 288. In 1973, Judicial efficiency, was again advanced as a primary motivation despite the continued disparate impact on African-Americans being a byproduct of the law. See, Angela Allen-Bell, How The Narrative About louisiana's Non-unanimous Juries ~~and Judge~~ Became a person of interest in the case Against Justice in the Deep South 67 Mercer L. Rev. 585, 605 [2016]. Further, in defending non-unanimous juries

ied in Relying on Apodaca + oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L. Eds. 2d 184 [1972]. However by 1973 it was Known that the full Bill of Rights would one day be fully incorporated against the States to the same extent as the federal government. Further, the "Binding" rule of Apodaca comes from only one Justice's view. That view was rejected by everything that had come before Apodaca and everything that had come After. The idea that a Concurrence

#. 6.

on Judicial efficiency grounds, one delegate at the 1973 Convention recognized that the system discriminated against minority groups he referenced as being "ugly, poor, and illiterate," but that "juries don't convict nice looking, intelligent, well-meaning decent folks." Transcript of the Louisiana Constitutional Convention 1973 V. VII at 1184. Not only is this language reminiscent of the 1898 ~~Constitution~~ Constitutional Convention, it also shows that the delegates at the 1973 Convention knew of the racial discriminatory purposes behind the non-unanimous jury verdict system, knew that it would continue to have a disparate impact, and yet continued the system despite such knowledge. See Riddick, at 288. Unanimous jury verdicts are so fundamental to due process and fairness that the people of Louisiana amended their Declaration of

Opinion can control the holding of a case, is based on the often [and rightfully] criticized "Marks rule". Marks v. U.S., 430 U.S. 188, 97 S.Ct. 990, 51 L.Ed. 2d 260 [1977], Richard M. Re, Beyond the Marks Rule, 132 Harv. L. Rev. 1942 [2019].

[7] 7.

rights on November 6, 2018 Article 1, Section 17 of the Louisiana Const- itution 1974 And Article 782,A of Louisiana Code Criminal Procedure to be Amended to require Unan- imous Jury Verdicts Prospectively. It Provided No relief to Offenders whose Sentences/convictions was final prior to April 20, 2020. Acts 2018, No. 722 §1. Thereafter, legislative attempts to make unanimous verdicts retroactive for Collateral review cases have similarly failed to be passed by the legislat- ure. See 2022 = La. H.B. 271 [NS] [3/14/22], 2022 La. H.B. 1077 [NS] [5/10/22] [The legislature being the represent- ative body of the people].

Request Judicial Notice of the finding by Majority of <u>Louisiana</u> Supreme Court in <u>Ramos</u> ≠ <u>Louisiana</u>, supre of the racist origin of <u>Louisiana</u> and Oregon[2]

The majority vividly describes the legacy of racism that generated <u>Louisiana</u>'s and Oregon. Ante, at 1-2, 13-14. and n. 44. Although <u>Ramos</u> does not bring an equal protect- ion challenge, the history is worthy of this Court's attention. That is not simply because that legacy existed in the first

<u>Footnote(s)</u>
2. <u>Oregon</u> made unanimity in Jury trials

8, 8

place unfortunate, many laws and policies in this Country have had some history of racial animus but also because the States' legislatures never truly grappled with the laws' sordid history in reenacting them. See generally United States * Fordice, 505 U.S. 717, 729, 112 S.Ct. 2727, 120 L.Ed. 2d 575 [1992] [ policies that are "traceable" to a State's de jure racial segregation and still "have discriminatory effects" offends the Equal Protection Clause] where a law otherwise is untethered to racial bias and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it. the new law may well be free of discriminary taint. That cannot be said of the laws at issue here. While the dissent points to the "legitimate" reasons for louisiana's reenactment, post, at 3-4, louisiana's perhaps only effect to contend with the law's discriminatory purposes and effects came recently, when the law was repealed altogether. Today, Louisiana's and Oregon's laws are fully and rightly relegated to the dustbin of history.

retroactive.

2.

and so, too, is Apodaca. While over-
ruling precedent must be rare, this
Court should not shy away from
correcting its errors where the right
to avoid imprisonment pursuant to
unconstitutional procedures hangs in
the balance. ~~...~~

Data showing that votes of African
Americans jurors have been disproport-
ionately silenced is compelling evidence
that the use of the pre-Ramos rule
affected fairness and accuracy of
criminal trials. "in light of the rac-
ist origins of the non-unanimous jury,
it is no surprise that non-unanimous
juries can make a difference in prac-
ice, especially in cases involving black
defendants, victims, or jurors. Id at 1417
[Kavanaugh, J. concurring in part]. The
whole point of the law was to make
it easier to convict African-American
by louisiana's constitutional convent-
ion of 1974, which reauthorized the
use of the "Jim Crow law, the expect-
ed ease of convicting African-American
in louisiana had come simply to be
described as "Judicial efficiency. State
+ Hankston, 122 So.3d 1028, 1038 [La. App
4 Cir. 8/2/13], ~~...~~ Writ denied.
134 So.3d 1193 [La. 3/14/14]. But despite
"race neutral" language justifying the
law in 1974, it has continued to have

8 10.

a detrimental effect on African-American citizens[3] then and now, non-unanimous juries can silence the voices and negate the vote of black jurors, especially in cases with black defendants or black victims. And only one or two black jurors. The 10-Jurors "can simply ignore the views of their fellow panel members of a different race or class." Johnson v Louisiana 406 U.S. 356, 397, 92 S.ct. 1620, 32 L.Ed. 2d 152 [1972] [Stewart, J., dissenting]" Ramos, 140 S.ct. at 1414-18 [Kavanaugh, J., concurring in Part].

Approximately 32% of Louisiana's population is Black[4], yet according to the Department of Corrections 69% of prisoners incarcerated for felony convictions are black[5]. Against this grossly disproportionate backdrop, it cannot be seriously contended that our longtime use of ~~~~~~~ deliberately designed to enable majority-White juries to ignore the opinions and votes of Black Jurors at trials of Black defendants has not affected the fundamental fairness of Louisiana's criminal legal system. The original purpose and the lasting discriminatory effect on the Non-unanimous Jury rule all implicate fund.

Footnote(s)

3. Data on Non-unanimous Jury
 P. 14,

amental fairness. The rights at issue here also directly implicate the acc- uracy of convictions. While many of those convicted by Non-unanimous Juries are surely guilty of the crimes of which they were convicted. We still have a subset of convictions ▪▪▪▪▪ where at least one-but often two Jurors had sufficient doubt of the accused's guilt to vote "Not guilty. Experience teaches, and the Ramos dec- ision reiterates that those "Not guilty votes should Not be cavaliesly dismiss- ed as meaningless. Ramos, 140 S.ct. at 140. State + Willie Gipson, 296 So.3d 1051 [LA. 6/3/20][ Johnson, C.J., would grant and docket and assigned Reasons].

verdict obtained in the record of, State + Melvin Carter Maxie, 11th Judicial District Court - Parish of Sabine, No. 13- CR-72522 And submitted to the Supreme Court in the Joint-Appendix in Ramos + Louisiana, shows that African-Ameri- cans have been 30% more likely to be convicted by Non-unanimous Juries than white defendants and that African- American Jurors. Casted "empty" votes at 64 percent above the expected rate whereas white ▪▪▪▪▪▪▪▪ Jurors casted "empty" votes at 32 % percent less than the expected rate if empty votes were evenly dispersed amongst all

D.12.

As Justice Goldberg said so wisely in his concurring opinion in Pointer + State of Texas, 380 U.S. 400, 85 S.ct. 1065, 13 L. Ed. 2d 923:

'to deny to the States the power to impair a fundamental constitutional right is not to increase federal power, but, rather, to limit the power of both federal and state governments in favor of safeguarding the fundamental rights and the liberties of the individual. 380 U.S., at 414, 85 S.ct, at 1073; Duncan + Louisiana 88 S.ct. 1444, 391 U.S. 145, 153, 20 L.Ed. 2d 491 [1968]. The State Of Louisiana has

Jurors. Ramos + State of Louisiana 2018 WL 8545357, at 51, ___ U.S. ___, ___ L.Ed.2d ___.

4. Census Statistics available at https://www.census.gov./quickfacts/LA [last accessed May 25, 2020]

5. Statistics from the Louisiana Department of Public Safety And Corrections January 2020 Briefing Book available at https://32082.pdn.co/wp-content/uploads/2020/02-Full-Jan.-2020 BB3.13.2020.pdf [last accessed May 25, 2020]

13(a)

Not denied the facts that the
State of Louisiana in the 1898 and
1973 Constitutional Convention
adopted laws to establish white
supremacy and to deliberate and
systematically deprive African Am-
erican of their rights to serve
on Jury Venires in order to cont-
rol the outcome at 10-2 majority
white jurors for easier convictions
on African Americans and to make
their votes meaningless to which
said practice a thru Non-Unanimous
Jury Verdict System is still eff-
ective today.

Lay relies upon the "Equal Prot-
ection Clause" in the adoption of
the Non-Unanimous Jury Verdict
System --- a claim he did not
know of at the time of his
convictions and sentences to which
I first read of in Ramos and
further legal research and exhaust-
ion thru all courts in the State
of Louisiana prior to proceeding
in United States District Courts

Petitioner Lay is raising an
independent claim not made by
the defendant in Ramos yet more
powerful that I'm entitle to relief
under the line of "Equal Protection"
of rights based upon Race.

13/61

## Law And Argument 2

The Sixth Amendment guarantees the right to effective assistance Of Counsel at every critical Stage of the proceedings against them. Burdine & Johnson, 262 F.3d 336, 344 [5th Cir. 2001]. See Yarborough & Gentry, 540 U.S. 1, 5, 124 S.ct. 1, 157 L.Ed. 2d 1 [2003]. This right is denied When defense attorney's performance falls below an objective standard of Reasonableness and thereby prejudices the defense. Yarborough, 540 U.S. 1, 5, 124 S.ct. 1, citing Wiggins & Smith, 539 U.S. 510, 521, 123 S.ct. 2527, 156 L.Ed. 2d 471 [2003]. This Count reviews Claims Of ineffective assistance of Counsel under the two-pronged test established in Strickland & Washington, 446 U.S. 668, 104 S.ct. 2052, 80 L. Ed. 2d 674 [1984]; Bridge & Lynaugh, 830 F.2d 770, 773 [5th Cir. 1988].

First, Counsel's Assistance is deficient if it falls "below an objective Standard Of Reasonableness." Strickland, 466 U.S. at 688. This Court has described this Standard as requiring that Counsel "research relevant Facts and Law or make an informed decision that Certain avenues will Not be fruitfull." U.S. & Phillips, 210 F.3d 345, 348 [5th Cir. 2000] [quoting

14.

U.S. + Williamson, 183 F.3d 458, 462-63 [5th Cir. 1999]. Solid, meritorious arguments based on directly controlling precedent should be discovered and brought to the Court's attention. Id. Lay's trial[6] post-trial[7], appellate counsel[8] and on post-conviction and sentencing relief[9] failed to meet this standard by failing to research and raise the herein specific objections resulting in unconstitutional waiver and or forfeiture without due process of law. See Campbell + Thaler, No. 2-10-CV-0271, 2014 U.S. Dist. Lexis 37544, 2014 WL 116359 at 6-7 [N.D. Tex. 3/20/14] [quoting Nelson + Estelle, 642 F.2d 903, 906 [5th Cir. Unit A 1981] [in turn Donovan + Christoture, 416 U.S.

Footnote(s)

6. Appointed Lay Co-counsel over his objections without a Farretta hearing in to my motion to appoint Conflict-Free Counsel. Appointed Counsel ended up being standby Counsel over my objections. State + Watts, 735 So.2d 866 [1996].

7. Appointed standby counsel in response to my Request for Counsel. State + Watts, supra.

8. No counsel appointed to perfect my claims in "Opposition To The Anders Brief." See also LSA-R.S. 15: 529.1.D.(1)(6); State + Watts, supra; Cotton + State,

15.

637, 645, 94 S.Ct. 1866, 40 L.Ed. 2d 431 [1974]. See also State + Cotton, 45 So.3d 1030 [La. 2010] [Waiver of Appellate rights to Sentence].

Claims

(a). The Oral Amendment of information from a misdemeanor to a felony on March 24, 2011 to which I was arraigned was subjected to Quashing on Nov. 28, 2011 after swearing of the Jury by the defense pursuant to LSA C. Cr. P. art 487.

(b). The Oral Amendment of the Bill of Information was Null and void Since No Notice of any Written Notice of Amending the Original Bill of Information prior to trial leaving only the misdemeanor battery being valid. Nor was I arraigned on a Written Bill of Information. See State + Breaux, 509 So.2d 1011 [La. App. 1 Cir. 1981]; and State + Cook, 372 So.2d 45 So.3d 4030 [La. 2010].

-9. No Counsel appointed on PCR would file the herein Claims per my instructions. See Penson + Ohio, 488 U.S. 75, 109 S.Ct. 346 [1988].

16.

1202 [La. 1979]. See Also John-
son + Puckett, 430 F.2d 445, 447
[5th Cir.], cert denied 112 S.ct.
252 [1991][Cases cited]:

(c), (2). The use of State + Lay #383759-F
22nd JDC/St. Tammany to which
I was under Jurisdiction of the
Department of Corrections per LSA-
R.S. 14:34.5.B(2) for enhancement
Purposes then used #383759-F as
a felony Predicate for enhancement
under LSA-R.S. 15:529.1 violated
my due Process And double Jeop-
Ardy Violation of State + Baker,
970 So.2d 948 [La. 2007]; State +
Lewis, 104 So.2d 407 [La. 2012]; Garr
ett + U.S., 471 U.S. 773, 793 [1985].

(d), (2). The trial Court was without Jur-
isdiction to impose any Sentence
without a hearing and ruling on my
Post-trial Motions for:
(1). Post-Judgment of Acquittal;
(2). Arrest of Judgment;
(3). New Trial; and
(4). Modify verdict/Judgment. See State
+ Melon, 660 So.2d 508 [La. App. 4 Cir.
1993]; State + Brown 620 So.2d
508 [La. App. 4 Cir. 1993]; State +
Martin 647 So.2d 830 [La. App. 4
Cir. 1994]; and State + Augustine,
550 So.2d 1331, 1334 [La. 1990].

17.

(e). The reading of the ORAl Bill of INformation to the Jury Which I WAS Never arraigned that at the time of the battery ON the CorrectioNAl Officer that I WAS under the Jurisdiction of the Department of CorrectioNs per LSA-R.S. 14:35.5(B)(2) Without proving this fact renders the Offense a misdemeanor Per Apprendix + New Jersey, 530 U.S. 466; State + Prieur, 277 So.2d 126 [La. 1973].

(f) The State telling the Jury that I WAS under the Jurisdiction Of the Department of CorrectioNs the alleged battery WAS committed uPoN Officer Jerry Primes per LSA-R.S. 14:35.5 (B)(2) without any CurAtive Jury instructioNs or objectioNs by CouNsel violAted Spencer + Texas, 385 U.S. 554, 87 S.Ct. 648, 17 L.Ed 2d 606 [1967] cited with approval in State + Skipper, 906 So.2d 339 [La. 2005]; Apprendix + New Jersey, 530 U.S. 466; State + Prieur, 277 So. 2d 126 [La. 1973].[10]


Footnote (s)

10. See U.S. CONst. Amend. 14; Article 1 Section 2,3 And 17 Of La. CONSt 1974

18.

## Law And Argument 3

The Sixth Amendment provides that in all Criminal Prosecution, the accused shall enjoy the right ... to have the assistance of Counsel. The Sixth Amendment right to counsel applies to all federal and State Criminal Prosecutions. Kirby + Illinois, 406 U.S. 682, 689 [1972]. In Faretta + California, 422 U.S. 806 [1975], the Supreme Court held that the accused has a Sixth Amendment right to conduct her own defense in a Criminal case. Id at 821; Meyers + Collins, 8 F.3d 249, 252 [5th Cir. 1993]. To proceed, a defendant must knowingly and intelligently waives the right to Counsel. Faretta, 422 U.S. at 835. To ensure a valid waiver of Counsel the trial Judge must make a "searching or formal" inquiry into both the defendant's understanding of the Sixth Amendment waiver and her awareness of the disadvantage of self-representation. Patterson + Illinois, 487 U.S. 285, 299 [1988]; Brown + Wainwright, 665 F.2d 607, 610 [5th Cir. 1982] ["While the right to Counsel is in force Until waived, the right of self-representation does not attached Until asserted. Waiver must be voluntary] Patterson, 482 U.S. at 292, N.4 [It

19.

the defendant must choose between bad counsel, the choice may be involuntary]. See CRANdell + Bunnell, 25 F.3d 751, 755 [9th Cir. 1994]; and U.S. + Silkwood, 893 F.2d 245, 248-49 [10th Cir.] involuntary waiver when trial court attempted to persuade defendant of appointed counsel's adequacy, rather than conducting penetrating inquiry into decision to proceed pro se, impermissibly forcing defendant to choose between self-representation and poor counsel], Cert. denied, 496 U.S. 908 [1990]; MC KASKle + Wiggins, 466 U.S. 168.

Petitioner lax filed several written and oral motions To Appoint Conflict-free counsel; motion to Appoint, Effective Counsel; motion To DisQUALIFY Counsel due to various reasons including but not limited to breakdown in communication, difference of opinions in the defense I wish to present, appoint a private Investigator to locate inmate witness Edward Sims[11] and Sylvester MARtin[12] for trial purposes which counsel Linder made this representation to the court on June 22, 2011.

Footnote(s)
11. Eye witness of false claim of

20.

(a). It appears to me that mr. Lay probably believes that he could represent himself better than I could, And that's his, I mean that's his perogative. If he WANTs me to continue to represent him, I'll do everything in my power to give him the best representation he CAN get.

Counsel Linder then explained to the Court that, that he told me [Lay] Why, he WAS appointed to represent him:

(b). The reason that I WAS appointed to this Case is that there's NO one left on the Conflict Panel that has Not represented him in the PAST who is not discharged, who he has Not filed Bar Complaints against. AND I don't KNOW anybody else in the Parish who Could represent him right Now, to tell you the truth.

Officer Jerry Primes That I Committed a battery upon him causing minor Injuries to which No treatment WAS sought by him. Witness allegely release on Parole at the time of trial.

12. A eye witness to Jerry Primes manner of dress on the day he removed me from my Cell in restraints

21.

Following Lay's complaint about Counsel Linder. The trial Judge denied the Motion To Dismiss Counsel. The Court also told me [Lay] ~~___~~ apparently, you're representing yourself to a great extent and what I'm going to do, if you have No objections, is to MAKE you CO-COUNSEL with ~~___~~ Linder.

Contrary to the Magistrate's Report And Recommendation I did Orally object to being appointed Co-Counsel/representing myself and Force to have a Conflict of Interest Counsel Linder appointed as Stand-by. I filed Writ Application to the 1st Circuit Court of Appeal—No. 2011-KW-1645 which was denied on Nov. 21, 2011 with Guidry, J., dissents in part and would grant the Application as to relator's appointment as Co-Counsel in this matter. I would Re-MAND to the trial Court for a hearing under Faretta + California, 422 U.S. 806, 95 S.Ct. 2525 [1973]; Mc Kas-kle + Wiggins, 465 U.S. 168, 183; and U.S. + Cronic, 466 U.S. 648, 639, 104 S.Ct. 2039, 2047, 80 L.Ed 2d 657 [1984].

Law And Argument 4

The Sixth Amendment provides that in all criminal prosecution, the accused shall enjoy the right ...

22.

To have The ASSISTANCE Of Coun-
Sel. Kirby + Illinois, 406 U.S. 682,
689 [1972]; and U.S. + Cronic, 466
U.S. 648, 659, 104 S.Ct. 2039, 2047,
80 L.Ed 2d 657 [1984]; and Florida
+ Nixon, 543 U.S. 175 [2004].

Petitioner lay WAS deprived of
his Sixth Amendment right to Coun-
Sel Post-trial/sentencing to per-
fect the following pleadings drafted
by me due to appointed Counsel
Barrow in front of the trial
Judge stated he WAS appointed as
STAND-by Counsel only... Construct-
ively denying me ANY to Perfect
my Post-trial motions as follows:

(a). Post-Judgment Of Acquittal;
(b). Arrest Of Verdict/Judgment;
(c). Modify Verdict;
(d). New Trial;
(e). Motion To Quash multiple Bill
     Of Information; and
(f). Request For Witness Subpoena(s)
     and Request For Subpoena Duces
     Tecum for the multiple Bill Adj-
     Udication Hearing.

Law And Arguments
The trial Court erroneous denied
various motion To Vacate All
Judgments Pursuant to Fed. R.

23.

Civ. P. 60(b)(2)+(3) and(6) that's
Clearly Contrary to and or an un-
reasonable application of Clearly
established precedents by the
United States Supreme Court and
the Louisiana Supreme Court. My
Equal Protection Clause Claims are not
rebutted by the State of Louisiana
despite Notice from the trial court
to file one by a Certain date.


Wherefore I Pray the following
relief to issue:

1. Appoint Apellate Counsels to
perfect the herein Briefed errors
by the District Court.

2. Find my Equal Protection Claims
exhausted with the Khrorer Claim
per Rhine + weber, order.

3. Find that I was deprived of
effective Counsel under Strickland
and Cronic at trial, post-trial
and on Direct Appeal.

4. Find the State of Louisiana has
failed to rebutt my independent
Equal Protection Claims upon
Notice to Counsel of records and
issue appropriate relief.

24.

5. Any And all Other relief I'm entitled to, Not specifically Prayed For.

Respect fully Submitted this 15 day of July, 2024 under the Penalty of Perjury and good-faith.

Richard B. Cay
Doc # 110315
RHCC— Box 2B
P. O. Box 174
St. Gabriel; La 70776

## Certificate of Service

I State a Copy Of this Brief has been mailed to all Interested Parties listed herein the 15 day of July, 2024 Properly addressed with Postage Affixed

Richard B Cay 110315

25.

Richard B. Ray
Doc # 103615
Ether Pod 2B
R.O. Box 174
St. Gabriel La.
70776

(2)

(1) Sarah Vance Judge
United States D. strict
Court
EASTERN District of
Louisiana
500 Poydras St.
New Orleans La. 70130

US POSTAGE PAID
$0.00
Origin: 70776
07/15/24
2177070776-02

P
UNITED STATES
POSTAL SERVICE

Retail

US POSTAGE $009.50°



PRISON MAIL
NOT CENSORED, NOT RESPONSIBLE
FOR CONTENTS.
ELAYN HUNT CORRECTIONAL CENTER

0 Lb 13.20 Oz
RDC 03

EXPECTED DELIVERY DAY: 07/17/24

C026

SHIP
TO:
500 POYDRAS ST
NEW ORLEANS LA 70130-3319

USPS TRACKING® #

9505 5148 1442 4197 3482 93