United States District Court
Eastern District Court

Richard B. Clay-Pro-se      Civil Action
Versus
Tim Hooper-Warden
State of Louisiana, etel    19-9803-R (2)

Date filed: _____

                              Deputy Clerk

#1   Proof of Exhaustion of "Equal
Protection Clauses" by operation of
Article 1, Section 2,3, And 17 of La.
Const. 1974; USCA Amend. 14th [Equal
Protections:

1. Melissa Henry-Clerk of Court—
St. Tammany And John Crain-Clerk
of Court— Washington been
Served With Rhines Stay And Abeyance
Order issued on July 22, 2020 . . . .
                                   1-12

2. State # Lay-11-CR5-112,033. . . . . .
13-59 ████████████████████████████

3. State # Lay-215530-c . . . . . . . . .
62-81 ████████████████████████████

4. State # Lay-383759-E . . . . . . . . .
                    82-92 ████████

5. Notice of Ex Parte Communicat-
ion . . . . . . . . . 93-96 ████████

6. Exhibits on Reversal Non-Unani-
mous . . . . . . . . . 97-103

1.

Respectfully Submitted this
4th day of April, 2025 under
the Penalty And good faith

Richard B. Lay
110315-Doc No.
EHCC - Fox 2B
P. O. Box 174
St. Gabriel, LA 70776

2.

TO: Melissa Henry
      Clerk of Court
      22nd Judicial District Court
      Parish of St. Tammany
      P. O. Box 1090
      Covington, LA. 70433

      Johnny Crain
      Clerk of Court
      22nd Judicial District Court
      Parish of Washington
      P. O. Box 607
      Franklinton, LA. 70438

IN re: State + Lay # 215530-C — St. Tammany
        State + Lay # 383759-F — St. Tammany
        State + Lay # 11-CRS-112033 — Washington

Dear Clerks
            Attached you'll find a Federal
Court order dated July 27, 2020 ordering
me to exhaust my Ramos + Louisiana
140 S.Ct. 1390, 1395 [2020] in State Court's by
Filing for relief therein within 60-days of
the July 27, 2020 order. See Lay + McCain,
19-9803-R(2) [U.S.D.C. E.D. La.]. File in Highlighted
Case.

   August 14, 2020

CC                          Richard B. Lay 110315
Warren Montgomery          R.L.C.C.- C2- A1 #14
District Attorney          1630 Prison Road
                           Cottonport, LA 71327

Jerome Winsberg
Judge Ad Hoc

U.S. District Court — Eastern District of Louisiana

-------------------------------------------------

Richard B Lay 110315
Raymond Laborde Correctional Center

1630 Prison Road
Cottonport, LA 71327

-------------------------------------------------

Case: 2:19-cv-09803  #43
11 pages.
Mon Jul 27 15:04:05 2020

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

RICHARD B. LAY                                    CIVIL ACTION

VERSUS                                            NO. 19-9803

S.W. "SANDY" MCCAIN, WARDEN                       SECTION "R" (2)


ORDER AND REASONS


Richard Lay petitions this Court for a writ of habeas corpus pursuant
to 28 U.S.C. § 2254.[1]  In addition, Lay files a "Petition for Remand to State
Courts," in which he invokes a recent U.S. Supreme Court case, *Ramos v.
Louisiana*, 140 S. Ct. 1390, 1395 (2020).   Here, Lay asks the Court to
"[r]emand to the Louisiana Supreme [Court]" so that he may pursue a new
claim under *Ramos*.[2]  The Court construes Lay's filing as a motion to amend
his petition and to stay the case under *Rhines v. Weber*, 544 U.S. 269 (2005).
The Court grants the motion as construed.

_____

[1]      R. Doc. 1.
[2]      R. Doc. 40 at 5.


3.

## I.  BACKGROUND

Lay filed his petition for habeas corpus pursuant to 28 U.S.C. § 2254 on April 19, 2019.[3]  He amended that petition twice[4] before McCain responded.[5]  On February 28, 2020, the Magistrate Judge issued a report and recommendation regarding Lay's habeas claims.[6]  Lay filed objections on April 9, 2020.[7]  Then, on April 20, 2020, the U.S. Supreme Court issued an opinion in *Ramos*, where it held non-unanimous jury verdicts for serious criminal offenses unconstitutional.  *Ramos*, 140 S. Ct. at 1397.

On June 15, 2020, Lay filed the "Petition for Remand," invoking *Ramos*.[8]  In it, Lay first argues that *Ramos* bears retroactively on his case.[9]  Second, Lay argues that *Ramos* invalidates his sentence enhancement,[10] as he represents to the Court that at least two of his predicate offenses are the result of non-unanimous jury verdicts.[11]  Lay adds that he is currently

---

3    R. Doc. 1.
4    *See* R. Doc. 24; R. Doc. 27.
5    *See* R. Doc. 31.
6    R. Doc. 33.
7    *See* R. Doc. 36; R. Doc. 37.
8    *See* R. Doc. 40.
9    *Id.* at 5.
10   *Id.*
11   *Id.* at 6, 10.  The jury verdict was unanimous for the instant conviction. *See* St. Rec. Vol 3 of 15, November 30, 2011 Minute Order of Verdict.  The state records mention the predicate offenses insofar as they are the basis for the multiple bill, *see, e.g.*, St. Rec. Vol 1 of 15, December 15, 2011, Multiple Offender Bill of Information.  But the state records do not contain the

2

4.

"collaterally attack[ing]" his predicate offenses under *Ramos* in state court.[12] As a result, Lay asks this Court to "remand" this matter to the Louisiana Supreme Court,[13] something this Court does not have the authority to do. Alternatively, Lay asks this Court to "hear and decide all issues herein,"[14] — again, something this Court may not do, because Lay has not exhausted his new *Ramos* claim in state court. *See Rhines v. Weber*, 544 U.S. 269, 273 (2005).

## II.  DISCUSSION

### A.  Construing Lay's Motion As a Motion to Amend the Habeas Petition

"The decision to recharacterize a motion is discretionary." *See United States v. Elam*, 930 F.3d 406, 409 (5th Cir. 2019).  In the context of *pro se* motions, courts must look to "the substance of the relief sought," rather than the motion's label, *see Hernandez v. Thaler*, 630 F.3d 420, 427 (5th Cir. 2011), always keeping in mind that *pro se* litigants are "entitled to have their filings liberally construed." *Id.*

---

criminal judgments for the predicate offenses, nor mention of whether those jury verdicts were unanimous.

[12]  *Id.* at 6.
[13]  R. Doc. 40 at 1.
[14]  *Id.* at 7.

3

*5.*

In substance, Lay moves to amend his habeas petition to add a new claim under *Ramos*. Claims are different from objections, in that claims add grounds for relief, as Lay does here. *See, e.g., United States v. Riascos*, 76 F.3d 93, 94 (5th Cir. 1996) ("The district court may construe an issue raised for the first time in an objection to a magistrate judge's report and recommendation as a motion to amend [the] complaint."); *Hines v. Ontiveros*, No. CV 07-255-PHX-JAT, 2008 WL 2559401, at *2 (D. Ariz. June 23, 2008) ("[A]lthough Petitioner does not specifically state in his objections that he is attempting to amend his habeas petition, the court will 'liberally construe' this as an attempt to amend his Petition to add new grounds for relief.").

Courts "should freely give leave [to amend] when justice requires." Fed. R. Civ. P. 15(a)(2); *see also Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597-98 (5th Cir. 1981) ("The policy of the federal rules is to permit liberal amendment."). The Court finds that justice requires leave to amend in this matter, because the U.S. Supreme Court's *Ramos* decision is material to Lay's sentence. Moreover, the Supreme Court is poised to decide whether *Ramos* will take retroactive effect. *See Edwards v. Vannoy*, No. 18-31095, 2019 WL 8643258 (5th Cir. May 20, 2019), *cert. granted*, 2020 WL 2105209

4

6.

(May 4, 2020). The Court, therefore, construes Lay's *Ramos* motion[15] as a motion to amend his habeas petition.[16]

### B.   *Rhines* Stay and Abeyance

As a consequence of the new *Ramos* claim, Lay has a "mixed petition" in federal court—*i.e.*, his petition consists of both exhausted and unexhausted claims. *See Rhines*, 544 U.S. at 273. In *Rhines*, the Court noted that the one-year statute of limitations period in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214, necessitated a "stay-and-abeyance" procedure for petitioners who had good reason for presenting mixed petitions to federal district courts, especially if the petitioner would fall outside of the one-year statute of limitations without a stay. *Id.* at 278. Lay satisfies this criterion.[17]

A district court should stay, rather than dismiss a mixed petition, if it finds that (1) "the petitioner had good cause for his failure to exhaust," (2) the "unexhausted claims are potentially meritorious" and (3) "there is no

---

15    *Id.*
16    R. Doc. 1; R Doc. 24; R. Doc. 27.
17    On September 16, 2016, the Louisiana Supreme Court denied Lay's writ application without stated reasons. *State v. Lay*, 206 So. 3d 203 (La. 2016). Lay's conviction and sentence became final on December 15, 2016, when he did not file a writ application with the U.S. Supreme Court. *Ott v. Johnson*, 192 F.3d. 510, 513 (5th Cir. 1999).

7.

indication that the petitioner engaged in intentionally dilatory litigation tactics." *Id.*

The Court finds that Lay satisfies the *Rhines* factors, warranting the stay-and-abeyance procedure. First, Lay demonstrates "good cause for his failure to exhaust," because the U.S. Supreme Court did not decide *Ramos* until Lay's habeas petition was already before this Court. "There is little authority on what constitutes good cause to excuse a petitioner's failure to exhaust." *Blake v. Baker*, 745 F.3d 877, 980 (9th Cir. 2014). If the Court analogizes petitioner's position to the procedural default context, "good cause" would exist when a petitioner's failure to raise a claim in state court is attributable to "some objective factor external to the defense." *See Neville v. Dretke*, 423 F.3d 474, 480 (5th Cir. 2005). Here, the *Ramos* decision was unavailable to Lay as he proceeded in state court.

Second, Lay's unexhausted *Ramos* claim is "potentially meritorious." Indeed, the U.S. Supreme Court will soon decide whether *Ramos* applies retroactively. *See Edwards v. Vannoy,* No. 18-31095, 2019 WL 8643258 (5th Cir. May 20, 2019), *cert. granted*, 2020 WL 2105209 (May 4, 2020).[18]

---

[18]    The Court notes that Lay must first address his predicate convictions before he attacks his enhanced sentence in this proceeding under *Ramos*. *See Lackawanna County District Attorney v. Cross*, 532 U.S. 394 (2001) ("If [a] conviction is later used to enhance a criminal sentence, the defendant generally may not challenge the enhanced sentence through a petition under

8.

Third, nothing in the record supports a finding that Lay has intentionally engaged in "dilatory" tactics in this federal habeas proceeding.

"A mixed petition should not be stayed indefinitely." *Rhines*, 544 U.S. at 277. Though a stay and abeyance is appropriate in this case, the Court must "place reasonable time limits on a petitioner's trip to state court and back." *Id.* at 278. The U.S. Supreme Court has approved a thirty-day scheme—thirty days for a petitioner to file the unexhausted claim in state court and thirty days to return to federal court after exhaustion. *Id.* (citing with approval *Zarvela v. Artuz*, 254 F.3d 374, 381 (2d. Cir. 2001)). Given the ongoing COVID-19 pandemic, the Court extends the usual thirty-day deadline to sixty days.

## III. CONCLUSION

For the foregoing reasons, the petitioner's motion for leave to amend his habeas petition is GRANTED, as explained herein. Pursuant to *Rhines v. Weber*, 544 U.S. 269 (2005), federal proceedings in this matter are administratively STAYED. Within SIXTY days after service of this Order, Petitioner shall file his unexhausted *Ramos* claim in state court if he has not

---

§ 2254 on the ground that the prior conviction was unconstitutionally obtained.").

7

9.

already; within SIXTY days of the Louisiana Supreme Court's ruling on Petitioner's *Ramos* claim, petitioner shall file in this Court a Notice of Ruling (1) indicating the case number and the disposition of the ruling, and (2) he shall move to lift the administrative stay to proceed on his petition if needed.

New Orleans, Louisiana, this __27th__ day of July, 2020.

*Sarah Vance*

SARAH S. VANCE
UNITED STATES DISTRICT JUDGE

8

10.

```
MIME-Version:1.0
From:Efile_Notice@laed.uscourts.gov
To:Efile_Information
Bcc:
--Case Participants: Matthew Caplan (mcaplan@22da.com)
--Non Case Participants:
--No Notice Sent:

Message-Id:<10539290@laed.uscourts.gov>
Subject:Activity in Case 2:19-cv-09803-SSV Lay v. McCain et al Order
Staying Case
Content-Type: text/plain
This is an automatic e-mail message generated by the CM/ECF system.
Please DO NOT RESPOND to this e-mail because the mail box is unattended.
***NOTE TO PUBLIC ACCESS USERS*** There is no charge for viewing opinions.

U.S. District Court
Eastern District of Louisiana

Notice of Electronic Filing
The following transaction was entered on 7/27/2020 2:16 PM CDT and filed
on 7/27/2020

Case Name: Lay v. McCain et al

Case Number: 2:19-cv-09803-SSV
https://ecf.laed.uscourts.gov/cgi-bin/DktRpt.pl?238078

Filer:

WARNING: CASE CLOSED on 07/27/2020

Document Number: 43

Copy the URL address from the line below into the location bar
of your Web browser to view the document:
https://ecf.laed.uscourts.gov/doc1/085111825804?caseid=238078&de_seq_num=12
1&magic_num=MAGIC


Docket Text:
ORDER AND REASONS: For the reasons stated
herein, the petitioner's motion for leave to amend his habeas petition
is GRANTED, as explained herein. Pursuant to Rhines v. Weber, 544 U.S. 269
(2005), federal proceedings in this matter are administratively STAYED.
Within SIXTY days after service of this Order, Petitioner shall file his
unexhausted Ramos claim in state court if he has not already as stated
herein.
Signed by Judge Sarah S. Vance on 7/27/2020.(mm) (NEF: MJ)


2:19-cv-09803-SSV Notice has been electronically mailed to:
Matthew Caplan mcaplan@22da.com


2:19-cv-09803-SSV Notice has been delivered by other means to:
Richard B Lay
110315
Raymond Laborde Correctional Center
Cajun 2-A1 #14
1630 Prison Road
Cottonport, LA 71327


The following document(s) are associated with this transaction:
```

11.

Document description: Main Document
Original filename: n/a
Electronic document Stamp:
[STAMP dcecfStamp_ID=1091133085 [Date=7/27/2020] [FileNumber=10539289-0]
[81b628c03de0264cd61cb2bf96f87c8024f195f8a6927000cc4d794ad5dff7c996d050fbcb
435028401e89dbaf42900baf3c209fa24ada274f8171445e162e14]]



United States Court of Appeal
For The Fifth Circuit


Richard B. Lay-Pro Se        Civil Action
Versus
Donnie Bordelon - Warden      24-30350
Elayn Hunts Correct-
ional Center, etal


Request Leave To Amend Memoran-
dum In Support: As Sanction Prisoner


... It must become the hertiage of
our Nation to rise above racial class-
ifications that are so inconsistent
with our commitment to the equal
dignity of all persons. This imper-
ative to purge racial Prejudice from the
administration of justice was given
New force And the ratification of the
Civil War Amendments.


The Central Purpose of the Fourteenth
Amendment was to eliminate racial dis-
Crimination emanating from official sou-
rces in the States," Mc laughlin * Flor-
ida, 379 U.S. 184, 192, 85 S.Ct. 283, 13L. Ed.
222 [1964]. In the years before And
after the ratification of the Fourteenth
Amendment, it became Clear that racial
discrimination in the Jury System posed
a particular threat both to the promise

13.

of the Amendment and to the integrity of the jury trial." Almost immediately after the Civil War, the South began a practice that would continue for many decades: All-white juries punished black defendants particularly harshly, while simultaneously refusing to punish violence by whites, including Ku Klux Klan members, against blacks and Republicans." Forman, Juries and Race in the Nineteenth Century, 113 Yale L. J. 895, 909-910 [2004]. To take one example, just in the years 1865-1866, all-white juries in Texas decided a total of 500 prosecutions of white defendant charged with killing African-Americans. All 500 were acquitted. Id., at 916. The stark and unapologetic nature of race-motivated outcomes challenged the American belief that "the jury was a bulwark of liberty", id., at 909, and prompted Congress to pass legislation to integrate the jury system and to bar persons from eligibility for jury service if they had conspired to deny the civil rights of Africans, id., at 920-930. Members of Congress stressed that the legislature was necessary to preserve the right to a fair trial and to guarantee the equal preserve the right to a fair trial and to guarantee the equal protection of the laws. Ibid.

Time and again, this Court has been called upon to enforce the Constitution's guar-

2.  14.

antee against State-Sponsored racial discrimination ▨▨▨▨▨ in the jury system. Beginning in 1880, the Court interpreted the Fourteenth-Amendment to prohibit the exclusion of jurors on the basis of race. Strauder + West, 100 U.S. 303, 305-309, 25 L. Ed. 664 [1880]. The Court has repeatedly struck down laws and practices that systematically exclude racial minorities from Juries. See, e.g., Neal + Delaware, 103 U.S. 370, 26 L. Ed. 567 [1881]; Hollins + Oklahoma, 295 U.S. 394, 55 S.Ct. 784, 79 L. Ed. 1500 [1935] [per Curiam]; Avery + Georgia, 345 U.S. 559, 73 S.Ct. 891, 97 L. Ed. 1244 [1953]; Hernandez + Texas, 347 U.S. 475, 74 S.Ct. 667, 98 L. Ed. ▨▨ 866 [1954]; Castaneda + Partida, 430 U.S. 482, 97 S.Ct. ▨▨ 1270 [1977]. To guard against discrimination in Jury Selection, the Court has ruled that no litigant may exclude a prospective juror on the basis of race. Baton + Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L. Ed. 2d 69 [1986]; Edmonson + Leesville Concrete Co., 500 U.S. 42, 112 S.Ct. 2348, 120 L. Ed. 2d 660 [1991]; Georgia + McCollum, 505 U.S. 42, 112 S.Ct. 2348, 120 L. Ed. 2d 33 [1992].

The Louisiana Non-unanimous Jury Verdict System adopted in 1898 and 1974 is relevant to the determination of whether African-Americans were

3.

15.

subjected to a fundamentally fair Due
Process Jury Trial deliberately And
systematically denying African Americans
to participate as jurors in Any mean-
ful way violating the Equal Protection
and Due Process Clauses of both the
United States and the state of
louisiana Constitutions.

IN a Concurring decision in
Espinoza, etal + Montana Depart-
ment of Revenue, 591 U.S. 464, 140 S.ct.
2246, 207 L.Ed.2d 679 [June 30, 2020]
stating:
..... Regardless of the motivation
for this ~~~~~~~~~~~~~~ Provision
or its Predecessor, its application
here violates the Free Exercise Clause
... Nevertheless, the Provision's origin
is relevant under the decision we iss-
ued earlier this Term in Ramos + lou-
isiana, 590 U.S. ___ 140 S.ct. 1390, 206 L.
Ed.2d 583 [2020]. The question in Ramos
was whether louisiana And oregon laws
allowing Non-unanimous jury verdicts
in Criminal trials violated the Sixth
Amendment. The Court ~~~~ held that
they did, emphasizing that the States
Originally adopted those laws for racially
discriminatory reasons. id., at ____,
140 S.ct., at 1391-1395. The role of the
Ku Klux Klan was highlighted. see ibid;
See Also id., at ___, 140 s.ct., at 1410
[Sotomayor, J., Concurring in Part].
                    4.

16.

## Undisputed Facts:

1. At the Louisiana Constitutional Convention Of 1898 Non-Unanimous Jury Verdicts were enacted for the sole purpose establish White Supremacy insofar to deprive African Americans and ▓▓▓▓ Other minority [Non-Anglo-Saxon] Of their rights to vote and fear that their Presence on Juries would prevent convictions and result in hijacking Sentencing outcomes.

2. At the Louisiana Constitutional Convention[1] Article 1, Section 17 of the Louisiana Constitution 1974; and Article 782A of the Louisiana Code Of Criminal Procedure were enacted for the sole purpose to deprive African Americans of the Equal Protection of Rights to a fundamental Fair Jury Trial despite recognized that the 1898 Non-Unanimous Jury Verdict System discriminated against African American in a ▓▓▓▓▓ disproportionate ensuring that African American Juror Service would be meaningless.[2] Ramos, 140 S.Ct. at 1417 [Kavanaugh, J., Concurring in Part].

Footnote(s)
[1] 1973 Constitutional Convention

5.

17.

Respectfully Submitted this
22nd day of July, 2024 under the
Penalty of Perjury and good-
faith.

Richard B. Lay
EHCC- Fox 2B
P.O. Box 174
St. Gabriel, LA. 70776

Certificate of Service

I State a copy was mailed to
all Interested parties listed in
the "Appellate Brief" mail to this
Court on July 15, 2024 Properly
address and postage affixed

Richard Lay //03/15
Richard Lay

Footnote(s)

2. One delegate at the 1973 Convention
recognized that the system discrimin-
ated against minority groups he refer-
erence as being "ugly, poor, [and] illit-
erate," but that juries don't convict
Nice-looking, intelligent, well-meaning
decent Peoples Transcript of louisiana
Constitutional Convention of 1973 V. VII
at 1184. See State & Hankston, 2012-0375
[La. App. 4 Cir. 2013], 122 So. 3d 1028,
1036, writ denied, 2013-2109 [La. 2014]
134 So. 3d 1193; State & Riddick, 351 So. 3d
273, N5 [Oct. 21, 2022].

6.

*18.*

State of Louisiana                    Docket Number 11-CRS-112033
VERSUS                                22nd Judicial District Court
Richard Lay                           Parish of St. Washington

Date Filed: _____
                                      Deputy Clerk

Memorandum In Support
To modify Verdict

Now into the Court comes defendant Lay who files the memorandum In Support To modify Verdict dated April 30, 2012.

La.C.CRP. Art. 464 requires that an indictment or bill of information be a plain, concise, and definite written statement of the essential facts constituting the offense charged. An information is a written accusation of crime made by the district Attorney. La.C.CRP. Art. 384. There can be no oral bill of information. State v Buttner, 411 So.2d 35 [La. 1982]; State v Vidrine, 476 So.2d 537 [La. App. 1st Cir. 1985].

On march 24, 2011 The State moved to orally amend the bill to charge defendant Lay with battery on a Correctional officer while under the Jurisdiction of the Department of Corrections, arraigned and pled not guilty thru Counsel Lindner. The State did not file a written bill of information to conform to this new charge.

The crime of battery on a correctional officer while under the Jurisdiction of the department of correction was not a responsive verdict to battery on a Correctional as the maximum penalty is greater; and contains a element Not found in the crime of battery on a Correctional

officer under La.R.S. 14:34.5-A(1)&B(1), viz, the offender being under the Jurisdiction of the department of Corrections [ R.S. 14:34.5. B(3).

Respectfully submitted this ___ day of may, 2012.



Richard Lay 110315
WCC- Elm A-2-13
P. O. Box 1260
Winnfield, La. 71483

CC
J. Winsberg - Judge Ad Hoc
J. Crain - Clerk
M. James - Atty.
L. Walls - ADA

File

20.



Richard Lay-Pro se                              No: 2022-KH-01692

Versus                                          Louisiana Supreme Court

1st Circuit Court of Appeal                      State of Louisiana
#22-KW-0868

_____                          _____
Filed:                                          Deputy Clerk:

Documents in Support

1.    Judgment of 1st Circuit Court of Appeal …………………………………………...1,2

2.    Writ Application to 1st Circuit Court of Appeal …………………………………3-10

3.    Documents in Support of Writ Application……………………………..…………...11-25

4.    Judgment of 1st Circuit Court of Appeal on Motion to Adopt……………………….26-37


October _10_, 2020


_____
Richard B. Lay #110315
RLCC-C2 C2 #45
1630 Prison Road
Cottonport Louisiana 71327


21.

State ex rel Richard B. Lay                        No.  21-KW-0595

Versus                                             1st Circuit Court of Appeal

22nd Judicial District Court                       State of Louisiana

11-CR5-112033-Washington Parish

_____                            _____

Date Filed                                         Deputy Clerk:

_____

### A CRIMINAL PROCEEDING

_____

_____

**Request Leave to Amend Application for Writs of Habeas Corpus; Certiorari;**

**Supervisory; Mandamus; and Prohibition to the 22nd Judicial District Court Parish of**

**Washington-Docket Number: 11-CR5-112033**

_____

**Richard B. Lay #110315**
Raymond LaBorde Correctional Center
Cajun 2 C2 #48
1630 Prison Road
Cottonport, La. 71327




1

**INTERESTED PARTIES**

1.      **Jerome Winsberg–Judge Ad Hoc**
        5031 Street, Charles Ave.
        New Orleans, LA 70115

2.      **Warren Montgomery**
        District Attorney
        701 N. Columbia St.
        Covington, LA 70433

3.      **Richard B. Lay #110315**
        Raymond LaBorde Correctional Center
        Cajun 2 C2
        1630 Prison Road
        Cottonport, La. 71327



## ISSUES AND QUESTIONS PRESENTED

**1.**    Whether Petitioner Lay is entitled to a ruling that Article 1, Section 17, of the La. Constitutional. 1974 and Article 782 A of the La. Code Criminal Procedure violates the Article 1, Section 2 and 3 of the La. Constitutional. 1974 and a judgment vacating his conviction and sentence there under.

**2.**    Whether Petitioner Lay is entitled to a ruling that Article 1, Section 17, of the La. Constitutional. 1974 and Article 782 A of the La. Code Criminal Procedure violates the "Equal Protection Clause" of the United States Constitution and a judgment vacating his conviction and sentence there under.



3

### TABLE OF CONTENT

Interested Parties...................................................................................2

Issues and Questions Presented..............................................................3

Jurisdiction.........................................................................................5

Statement of Case.............................................................................5,6,7

Action by Trial Court...........................................................................7

Law and Argument.....................................................................7,8,9,10,11

Law and Argument 2..........................................................................11,12,13

Conclusion.......................................................................................13,14

Certificate of Service..........................................................................14



## JURISDICTION

Jurisdiction of this court is invoked pursuant to Article 5, section 2 and 16 of the Louisiana Constitution 1974; LSA-C.Cr.P. art. 881.5 and 930.8A(1). See also Becnel v. Blackburn, 410 So. 2d 1012 [La. 1982]; and State v. Smith, 700 So. 2d 493 [La. 1997][case cited].

## STATEMENT OF FACTS

1.    The State of Louisiana named and used State of Louisiana v. Lay #215530; #197086; 383759; and #1301364, 131/364, 131/275- for sentencing and impeachment purposes. purposes under LSA-R.S. 15:529.1.

2.    On April 20, 2020 the United States Supreme Court ruled in Ramos v. Louisiana, 590 US ___140 S. CT. 1390, 2020 US Lexis 2407 held: "Ramos felony conviction by a non- unanimous jury is unconstitutional because the Sixth Amendments protection against non-unanimous felony guilty verdicts applies against the States through Due Process Clause of the Fourteenth Amendment"

In the concurring opinion by Justice(s) Soto Mayor, Kavanaugh and Thomas it was said…

The majority vividly describes the legacy of racism that generated Louisiana's and Oregon's laws. *Ante*, at 1-2, 13-14, and n. 44. Although Ramos does not bring an equal protection challenge, the history is worthy of this Court's attention. That is not simply because that legacy existed in the first place-unfortunately, many laws and policies in this country have had some history of racial animus-but also because the States' legislatures never truly grappled with the laws' sordid history in reenacting them. See generally *United States* v. *Fordice*, 505 U. S. 717, 729, 112 S. Ct. 2727, 120 L. Ed. 2d 575 (1992) [policies that are ``traceable'' to a State's *de jure* racial segregation and that still ``have discriminatory effects'' offend the Equal Protection Clause]. Where a law otherwise is untethered to racial bias-and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it-the new law may well be free of discriminatory taint. That cannot be said of the laws at issue here[1]. While the dissent points to the ``legitimate'' reasons for Louisiana's reenactment, *post*, at 3-4, Louisiana's perhaps only effort to contend with the law's discriminatory purpose and effects came recently, when the law was repealed altogether.

Today, Louisiana's and Oregon's laws are fully-and rightly-relegated to the dustbin of history. And so, too, is *Apodaca*. While overruling precedent must be rare, this Court should not shy away from correcting its errors where the right to avoid imprisonment pursuant to unconstitutional procedures hangs in the balance.

3.    Petitioner Lay based his "Equal Protection" challenges to Article 1, Section 17 of the La. Const. 1974; and Article 782A, of LSA-C Cr. P. in which State v. Lay #215530 is per se and for interruption of 10-year prescription period[2]  to allow usage of State of Louisiana v. Lay #197086; #130, 364, and #131/275 which was not known to him or his counsel and did not become known to him until Rams v. Louisiana:

---

[1] Article 1, Section 17, of the La. Constitutional. 1974; and 782 A, of LSA-C.r. P.
[2] See Senate Bill #221 amending La. R.S. 15:529.1 effective November 1, 2017 reducing the cleansing period from 10 to 5-years for non-violent offense is applicable upon resentencing.

Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(A) of the Louisiana Code of Criminal Procedure violates defendant Lay's right to a unanimous jury verdict under both the USCA Amendment 14; and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974 in light of the fact they were adopted for the sole purpose to deprive African Americans of the equal protection of rights guaranteed by the United States Constitution in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Lay is an African-American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." _State v. Petrovich_, 396 So.2d 1318, 1322 (La. 1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. _See id. See also Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles_, 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

In _Sibley_, this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. _Sibley_ at 1107. Under the first level of scrutiny enumerated in _Sibley_, the law creating the classification completely falls. _See Moore v. RLCC Technologies, Inc._ p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal protection and the proponent of

  

the law carries the burden of proving that the classification substantially furthers an important government interest. *See id.* p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. *See id.* p. 11, 668 So.2d 1141. *See also Soloco*, *supra*; *Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359; *Manuel v. State*, 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution and Article 782. (A) of the Louisiana code of Criminal Procedure to be Amended to require unanimity verdicts on or after effective date.

## ACTION BY TRIAL COURT

On April 28, 2021 the Court denied without reasons my pro se Motion to Correct an Unconstitutional Based Sentence in light of Ramos v.Louisiana, 590 US ___ [4/20/20]; and fact Article 1, Section 17 of the La. Const. 1974 and Article 782 A of the La.C.Cr.P. violates the "Equal Protection Clause" of both the "US and the State of Louisiana Constitution to which the 10-2 verdict of State v. Lay #215530-C used for impeachment and sentencing purposes.

## LAW AND ARGUMENT 1

The opening address at the 1898 Louisiana Constitutional Convention made clear that the point of the entire Convention was to limit African-American participation in the democratic process and to "perpetuate the supremacy of the Anglo-Saxon race in Louisiana." Official Journal of the Proceedings of the Constitutional Convention of the State of Louisiana, 8-9 (1898) [hereinafter "Journal"]. Closing the Convention, Honorable Thomas J. Semmes celebrated the putatively succession "mission" of the delegates "to establish the supremacy of the white race in this state." Id. at 374.

When discussing the provisions adopted to prevent African-American suffrage, a likeminded delegate explained:



The Supreme Court of the United States in the Wilson case, referring to that, said that they had swept the filed of expedients, but they were permissible expedients, and that is what we have done in order to keep the negro from exercising suffrage. What care I whether the test we have put be a new one or an old one? what care I whether it be more or less ridiculous or not? doesn't it meet the case? Doesn't it let the white man vote, and doesn't it stop the negro from voting, and isn't that what we came here for? [Applause] Constitutional Convention of the State of Louisiana, supra at 380.

In his closing remarks, President Kruttschnit bemoaned that the delegates had been constrained by the Fifteenth Amendment such that they could not provide what they would have wished. Universal White manhood suffrage and the exclusion from the suffrage of every man with a trace of African blood in his veins: Id. at 380. He went on to proclaim:

I say to you, that we can appeal to the conscience of the nation, both judicial and legislative and I don't believe that they will take the responsibility of striking down the system that we have reared in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon case in Louisiana. Id. at 381.

The proponents of those rules sometimes tried to justify then under the guise of cost saving devices, but commentators have directly linked the diminution of the jury trial right to the Convention's larger effort "to consolidate Democratic power in the hands of the 'right pp.,' thereby passing the poorer sorts, just as the suffrage provision did." W. Billings & E. Haas, In Search of Fundamental law: Louisiana's Constitutions, 1812-1874, The Center for Louisiana Studies (1993), pp. 93-109. See also Thomas Aiello, Jim Crow's Last stand, non-unanimous Criminal Jury Verdicts in Louisiana, LSU Press, 2015; Angela A. Allen-Bell, These Jury System are Vestiges of White Supremacy, Washington Post, 9/22/2017. The 1898 Convention substantially diminished the Sixth Amendment jury trial guarantee through non-unanimity rules, the elimination of misdemeanor juries, and the reduction of jury size for lesser felonies.

In recent debates in the Louisiana Legislature John DeRossier, district attorney in Calcasieu Parish, told the panel that the law's roots in White Supremacy are not sufficient enough to change those historical racists provisions: I've heard a lot about the system being adopted as a vestige of slavery. I have no reason to doubt that. I'm not proud of that, that's the way it started, but it is what it is…" Associated Press, Rid to Strike Louisiana's Jim Crow-era Jury law advances in State House – NOLA.come (2018),



8

http://www.nola.come/crime/index/ssp/2018/04/bid_to_strike_louisiana_jim_c.html [last visited May 23, 2018).

The Louisiana Supreme Court has previously confronted the uncorrected problems of the 1898 Constitutional Convention. It held:

The need to eradicate past evil effects and to prevent the continuation or repetition in the future of the discriminatory practices shown to be so deeply engrained in the laws, policies, and traditions of the State of Louisiana, completely justified the District Court in entering the decree it did, and in retaining jurisdiction of the entire case to hear any evidence of discrimination in other parishes and to enter such orders as justice from time to time might require. Louisiana v. United States, 380 US 145, 156, 85 S. Ct. 817, 823 (1965). See also Robert J. Smith, Bidish J. Sarma, How and Why Race Continues to Influence the Administration of Criminal Justice, Vol. 72 No. 2 La. Law Rev. 361, 375 (2012) (The "Delegate achieved these anti-participation goals not only by restricting access to the ballot box but also by diluting the voice of members of racial minority groups by allowing non-unanimous jury verdicts in criminal cases." Id. at 376 (noting commentators at the time of constitutional Convention's concern that African Americans presence on juries would prevent convictions, and result in hijacking sentencing outcomes]; Thomas Aiello, Jim Crow's Last stand, non-unanimous Criminal Jury Verdicts in Louisiana, LSU Press, 2015; Aliza Kaplan, Amy Saack overturning Apodaca v. Oregon should be easy: non-unanimous verdicts in criminal cases undermine the credibility of our justice system, vol. 95 Oregon Law Review No. 1, 3 (February 2017); Angela A. Allen-Bell, These Jury System are Vestiges of White Supremacy, Washington Post, 9/22/2017.

Ultimately, Petitioner Lay does not take on the responsibility to prove that the non-unanimous jury verdicts proceed on an unbroken line of racism from 1898 to 2020, or even that the rule imposed a racist silencing of jurors in his own case. Instead, Petitioner Lay must simply demonstrate that Article 1, Section 17 of the Louisiana Constitution 1974 and La. C.Cr.P. Art. 782.A – non-unanimous jury verdicts were enacted for the sole purpose to retain White Supremacy insofar to deprive African Americans and other minority (non-Anglo-Saxon) of their rights to vote and fear that their presence on juries would prevent convictions and result in hijacking sentencing outcomes.

Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(A) of the Louisiana Code of Criminal Procedure violates defendant Lay's right to a unanimous jury verdict under



both the USCA Amendment 14[3]; and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974[4] in light of the fact they were adopted for the sole purpose to deprive African Americans of the equal protection of rights guaranteed by the United States Constitution in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Lay is an African-American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." *State v. Petrovich*, 396 So.2d 1318, 1322 (La. 1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. *See id. See also Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles*, 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

In *Sibley*, this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. *Sibley* at 1107. Under the first level of scrutiny enumerated in *Sibley*, the law creating the classification completely falls. *See Moore v. RLCC Technologies, Inc.* p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal protection and the proponent of the law carries the burden of proving that the classification substantially furthers an important

---

[3] See marshal v. United States, 414 US 417, 94 S. Ct. 700, 38 L. Ed. 2d 618 (1974)
[4] State v. Brown, 648 So. 2d 872 (La. 1995).




government interest. *See id.* p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. *See id.* p. 11, 668 So.2d 1141. *See also Soloco*, *supra*; *Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359; *Manuel v. State*, 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution and Article 782. (A) of the Louisiana Code of Criminal Procedure to be amended to require unanimity verdicts but did not make this requirement retroactive. On the 20th day of April 2020, the United States Supreme Court in Ramos, supra held the State of Louisiana non-unanimous verdict system violated Amendment 5 and 6 applicable to the states through the Fourteenth Amendment but did not decide it violated the equal protection clause[5].

## LAW AND ARGUMENT 2

On April 20, 2020 the United States Supreme Court ruled in Ramos v. Louisiana, 2020 US Lexis 2407 held: "Ramos felony conviction by a non- unanimous jury is unconstitutional because the Sixth Amendments protection against non-unanimous felony guilty verdicts applies against the States through the Privileges or Immunities Clause of the Fourteenth Amendment" In the concurring opinion by Justice(s) Soto Mayor, Kavanaugh and Thomas it was said…

The majority vividly describes the legacy of racism that generated Louisiana's and Oregon's laws. *Ante,* at 1-2, 13-14, and n. 44. Although Ramos does not bring an equal protection challenge, the history is worthy of this Court's attention. That is not simply because that legacy existed in the first place-unfortunately, many laws and policies in this country have had some history of racial animus-but also because the States' legislatures never truly grappled with the laws' sordid history in reenacting them. See generally *United States v. Fordice*, 505 U.

---

[5] See generally United States v. Fordice, 505 US 717, 729 112 S. Ct. 2727, 120 La. R.S. Ed. 2d 575 [1992][policies that are "traceable" to a State of Louisiana's de jure racial segregation and still "have discriminatory effects" offend the Equal Protection Clause].

S. 717, 729, 112 S. Ct. 2727, 120 L. Ed. 2d 575 (1992) [policies that are ``traceable'' to a State's *de jure* racial segregation and that still ``have discriminatory effects'' offend the Equal Protection Clause]. Where a law otherwise is untethered to racial bias-and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it-the new law may well be free of discriminatory taint. That cannot be said of the laws at issue here[6]. While the dissent points to the ``legitimate'' reasons for Louisiana's reenactment, *post*, at 3-4, Louisiana's perhaps only effort to contend with the law's discriminatory purpose and effects came recently, when the law was repealed altogether.

Today, Louisiana's and Oregon's laws are fully-and rightly-relegated to the dustbin of history. And so, too, is *Apodaca*. While overruling precedent must be rare, this Court should not shy away from correcting its errors where the right to avoid imprisonment pursuant to unconstitutional procedures hangs in the balance.

Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(Á) of the Louisiana Code of Criminal Procedure violates defendant Smith's right to a unanimous jury verdict under both the USCA Amendment 14; and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974 in light of the fact they were adopted for the sole purpose to deprive African Americans of the equal protection of rights guaranteed by the United States Constitution in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Smith is an African-American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." *State v. Petrovich*, 396 So.2d 1318, 1322 (La. 1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. *See id. See also Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles*, 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

---

[6] Article 1, Section 17, of the La. Constitutional. 1974; and 782 A, of LSA-C.r. P.

In *Sibley*, this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. *Sibley* at 1107. Under the first level of scrutiny enumerated in *Sibley*, the law creating the classification completely falls. *See  Moore v. RLCC Technologies, Inc.* p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal protection and the proponent of the law carries the burden of proving that the classification substantially furthers an important government interest. *See id.* p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. *See id.* p. 11, 668 So.2d 1141. *See also Soloco*, *supra*; *Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359; *Manuel v. State*, 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution and Article 782. (A) of the Louisiana code of Criminal Procedure to be Amended to require unanimity verdicts on or after effective date.

Wherefore I pray the following relief to issue:

1.    Hold Article 1, Section 17 of the La. Const. 1974 and Article 782 (A) of the La. Code Criminal Procedure unconstitutional under both the United States and the State of Louisiana



Constitution 1974, "Equal Protection Clauses" since they were adopted to deprive African American of "Equal Rights/Privileges" as whites; and

2.    Hold the Repeal of these Statues has not corrected those affected of their right to avoid imprisonment pursuant to unconstitutional procedures in compliance with Sibley and Fordice to which this Court must do.

Respectfully submitted this 9 day of July, 2021 under the penalty of perjury and good-faith.

**Richard B. Lay #110315**
Raymond LaBorde Correctional Center
Cajun 2 C2
1630 Prison Road
Cottonport, La. 71327

## CERTIFICATE OF SERVICE

I state a copy of this writ application was mailed to all listed "Interested Parties" properly addressed with postage affixed this 9 day of July 2021.

**Richard B. Lay #110315**
Raymond LaBorde Correctional Center
Cajun 2 C2
1630 Prison Road
Cottonport, La. 71327

State of Louisiana

Versus

Richard B. Lay

~~Deputy~~

JUL 1 3 2022

Filed:

No. 11-CR5-112033

22ⁿᵈ Judicial District Court

Parish of Washington

Deputy Clerk:

Lauren Grob, Deputy Clerk

**NOW INTO COURT** comes petitioner Richard B. Lay who moves this Court to correct his unconstitutional based sentence imposed pursuant to LSA-R.S.15.529.1

## JURISDICTION

Jurisdiction of this court in invoked pursuant to Article 5, Section 2 and 16(A) of the Louisiana Constitution 1974: LSA-C.Cr.P. art. 881.5 and 930.8 A (1).See also State ex rel Becnel, 410 So. 2D 1012 [La. 1982]; and State of Louisiana v. Smith, 700 So. 2D 493 [La. 1997] [case cited].

## STATEMENT OF FACTS

1.    The State of Louisiana named and used State of Louisiana v. Lay #215530; #197086; and #1301364, 131/364, 131/275- for sentencing purposes under LSA-R.S. 15:529.1.

2.    On April 20, 2020 the United States Supreme Court ruled in Ramos v. Louisiana, 206 La. R.S. Ed. 583, 2020 US Lexis 2407 held: "Ramos felony conviction by a non- unanimous jury is unconstitutional because the Sixth Amendments protection against non-unanimous felony guilty verdicts applies against the States through the Privileges or Immunities Clause of the Fourteenth Amendment"

In the concurring opinion by Justice(s) Soto Mayor, Kavanaugh and Thomas it was said…

The majority vividly describes the legacy of racism that generated Louisiana's and Oregon's laws. *Ante*, at 1-2, 13-14, and n. 44. Although Ramos does not bring an equal protection challenge, the history is worthy of this Court's attention. That is not simply because that legacy existed in the first place-unfortunately, many laws and policies in this country have had some history of racial animus-but also because the States' legislatures never truly grappled with the laws' sordid history in reenacting them. See generally *United States v. Fordice*, 505 U. S. 717, 729, 112 S. Ct. 2727, 120 L. Ed. 2d 575 (1992) [policies that are ``traceable" to a State's *de jure* racial segregation and that still ``have discriminatory effects" offend the Equal Protection Clause]. Where a law otherwise is untethered to racial bias-and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it-the new law may well be free of discriminatory taint. That cannot be said of the laws at issue here[i]. While the dissent points to the ``legitimate" reasons for Louisiana's reenactment, *post*, at 3-4, Louisiana's perhaps only effort to contend with the law's discriminatory purpose and effects came recently, when the law was repealed altogether.

Today, Louisiana's and Oregon's laws are fully-and rightly-relegated to the dustbin of history. And so, too, is *Apodaca*. While overruling precedent must be rare, this Court should not shy away from

---

1    See Senate Bill of Information #221 amending La. R.S. 15:529.1 effective November 1, 2017 reducing the cleansing period from 10 to 5-years for non-violent offense is applicable upon re-sentencing.

  1 

A True Copy of Original
This _____

36.

Dy Clerk of Court

correcting its errors where the right to avoid imprisonment pursuant to unconstitutional procedures hangs in the balance.

3.    Petitioner Lay based his "Equal Protection" challenges to Article 1, Section 17 of the La. Const. 1974; and Article 782A, of LSA-C Cr. P. in which State v. Lay #215530 is per se and for interruption of 10-year prescription period[2] to allow usage of State of Louisiana v. Lay #197086; #130, 364, and #131/275 which was not known to him or his counsel and did not become known to him until Ramos, supra.

Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(A) of the Louisiana Code of Criminal Procedure violates defendant Lay's right to a unanimous jury verdict under both the USCA Amendment 14; and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974 in light of the fact they were adopted for the sole purpose to deprive African Americans of the equal protection of rights guaranteed by the United States Constitution in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Lay is an African-American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." State v. Petrovich, 396 So.2d 1318, 1322 (La. 1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. See id. See also Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles, 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

In Sibley, this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.

2    See Marshal v. United States, 414 US 417, 94 S. Ct. 700, 38 L. Ed. 2d 618 (1974)

  

_Sibley_ at 1107. Under the first level of scrutiny enumerated in _Sibley_, the law creating the classification completely falls. _See Moore v. RLCC Technologies, Inc._ p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal protection and the proponent of the law carries the burden of proving that the classification substantially furthers an important government interest. _See id._ p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. _See id._ p. 11, 668 So.2d 1141. _See also Soloco_, _supra_; _Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury_, 96-0543 (La. 11/25/96), 684 So.2d 359; _Manuel v. State_, 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution and Article 782. (A) of the Louisiana code of Criminal Procedure to be Amended to require unanimity verdicts on or after effective assistance of counsel date.

Wherefore Petitioner Lay prays the following relief to issue:

1. Hold both 1. Hold both Article 1, Section 17 of the La. Constitutional. 1974 and Article 782 A of the La. C.Cr.P. unconstitutional under Article 1, Section 3, of the La. Const 1974; and USCA Amendment 14 [Equal Protection Clause] and enjoin the State's use of State of Louisiana v. Lay #215530 obtain pursuant to said unconstitutional statues for sentencing purposes under the same rationale of Gideon v. Wainwright, 372 US 355 [1963] and

2. Re-sentence petitioner Lay without the usuage of State of Louisiana v. Lay #215530 per se; and #197086 v. #130/364, 131/275 in accordance with law.

Respectfully submitted this 16 day of May, 2022 under the penalty of perjury and good-faith.

Richard B. Lay #110315
Raymond Laborde Correctional Center
Cajun 2 C2
1630 Prison Road
Cottonport Louisiana 71327

State of Louisiana

Versus

State of Louisiana

Filed: _____

No. 11-CR5-112033

22nd Judicial District Court

Parish of Washington

_____

Deputy Clerk:

### ORDER

Based on the foregoing Motion to Correct an Unconstitutional based sentence:

IT IS ORDER that State of Louisiana thru Warren Montgomery-District Attorney "Show Cause" before this court on the ____day of _____, 2022 at _____o'clock____m., why said relief should not issue as provided by law.

IT IS ORDERED Counsel Brian Meissner 434 N. Columbia LA 70434 is to represent petitioner Lay in this matter.

Clerk to serve a copy of this motion and order upon all parties.

Said and done this ____day of _____, 2022

_____
Judge

**PLEASE SERVE:**

1.  Warren Montgomery
    District Attorney
    701 N. Columbia St.
    Covington LA 70433

2.  Brian Messner
    Attorney at Law
    434 N. Columbia St
    Covington LA 70433

3.  Richard B. Lay #110315
    Raymond LaBorde Correctional Center
    Cajun 2 C2
    1630 Prison Road
    Cottonport, La. 71327

4.  Marcus Myers-Warden
    Raymond LaBorde Correctional Center
    1630 Prison Road
    Cottonport, La. 71327

5.  Jeff Landry- Attorney General
    State of Louisiana
    1885 N. 3rd Street
    Baton Rouge, La. 70802







4

6.    District Defender's Office
      St. Tammany/Washington Parish
      402 N. Jefferson Ave.
      Covington LA 70433







*Exhibit D*

| | |
|---|---|
| State of Louisiana | No: 11-CR5-112033 |
| Versus | 22nd Judicial District Court |
| Richard B. Lay | Parish of Washington |
| Filed: _____ | Deputy Clerk: _____ |

## DOCUMENTS IN SUPPORT OF MOTION TO
## CORRECT AN UNCONSTITUTIONAL BASED SENTENCE

**EXHIBIT**

1.    Multiple Offender Bill of Information............................................................1-2

2.    May 13, 2013 Minutes..................................................................................3

3.    Minutes 9-18-95 State v. Lay Docket Number 215530-[10-2 Jury Verdict] rec'd

2021.........................................................................................................4-12

May 16, 2022

Richard B. Lay #110315
Raymond Laborde Correctional Center
Cajun 2 C2
1630 Prison Road
Cottonport Louisiana 71327

Cc

1.    **Matthew Caplan**
      Asst. District Attorney

2.    **Brian Meissner**
      Attorney at Law





MAY 13, 2013

THE TWENY-SECOND JUDICIAL DISTRICT COURT CONVENED ON THE ABOVE DATE
PURSUANT TO PREVIOUS ASSIGNMENT. PRESENT HONORABLE, JEROME WINSBERG,
DISTRICT JUDGE PRESIDING, LEIGH ANNE WALL, DISTRICT ATTORNEY, LORRIE PRICE,
DEPUTY CLERK OF COURT, JACKIE WILLIE, OFFICIAL COURT REPORTER AND JOHNNY
CAUSEY, DEPUTY SHERIFF. WHEREUPON, THE FOLLOWING MATTERS WERE TAKEN UP AND
DISPOSED OF AS FOLLOWS, TO-WIT:

STATE OF LOUISIANA
VS
RICHARD LAY

CHARGE:                    CASE #: 11-CR5-112033
BATTERY OF A CORRECTIONAL FACILITY
EMPLOYEE

May 13, 2013

                                        JEROME WINSBERG

This cause came on for multiple offender hearing.  Present, Leigh Anne Wall, assistant
district attorney, Ernest Barrow, attorney for the defendant and the defendant, Richard Lay.

At this time, the following motions were addressed to wit;

Amended Motion to Disqualify Counsel is denied. .
Note objection by Mr. Lay.

Motion for Recusal is denied.
Note objection by Mr. Lay.

Motion to Continue is denied.

Opposition to Multiple Bill is denied.

State witness, Assistant Warden John Jerrell called and sworn.

State Exhibit #1 - Certified copies of record from Rayburn Correctional Center offered, filed
and introduced.

Note Objection by Mr. Lay.

State Exhibit #2 - Certified copies from docket 383759 out of St. Tammany Parish offered,
filed and introduced.

Felix Indest called and sworn.

State Exhibit #3 - Certified copies from docket 215530 out of St. Tammany Parish, offered,
filed and introduced.

Officer James Folks called and sworn.

State offers witness as an expert in the field of fingerprint analysis and the court accept
witness as expert in this field.

State Exhibit #4 - Certified copies from docket 197086 out of St. Tammany Parish, offered
filed and introduced.

State Exhibit #5 - Certified copies from docket 130364 out of St. Tammany Parish, offered,
filed and introduced.

The State submits this matter to the court, whereupon, the court finds the defendant to be a
4th felony offender and hereby vacates and sets aside the previous sentence in this matter
and sentences the defendat as follows;

Pursuant to Act 15:529.1, the court sentences the defendant to serve a period of twenty two
(22) years hard labor without the benefit of probation, parole or suspension of sentence in
the custody of the Louisiana Department of Public Safety and Correction as a 4th felony
offender.

The defendant is given credit for any time served subsequent to arrest and this sentence is
to run concurrent with any sentence now being served.

The court advised the defendant he has two (2) years from the date the judgment of
conviction becomes final to file any and all petitions for post conviction relief.

Thirty (30) days to file for appeal.

Thirty (30) days to file for reconsideration of sentence.

# 215550-C

EXHIBIT

Court attachment

MONDAY, SEPTEMBER 18, 1995

COURT MET THIS DAY PURSUANT TO ADJOURNMENT, PRESENT AND PRESIDI
HER HONOR, PATRICIA T. HEDGES, JUDGE DIVISION "C", RONALD T. GRACIANE
ASSISTANT DISTRICT ATTORNEY, PATRICK J. CANULETTE, SHERIFF AND LUCY
REID RAUSCH, CLERK OF COURT.  (Bailiff, George Duck, Carol Dobson
and Robert Munster and Court Reporter, Lynn Nunez)



All outstanding motions having been heard, Court at this time moved this hearing into open court and everyone being present and ready for Trial.

Court ordered that the names of the Petit Jurors, written on seperate cards contained in the sealed envelope, be removed and shuffled and that the names of 18 prospective jurors be drawn, which was done, and said persons were seated in the jury box. This being the noon hour, Court recessed for lunch.

The defendant being present in open Court, attended by his Counsel, Douglas C. Ellis, the Defense at this time requested a hearing in chambers; which Court granted and same was done. The Defense at this time objects to the Court's selection of two additional jurors for Judge Stephen A. Duczer's court after the selection of the first jury panel in this matter. Argument was heard on behalf of the State and the Defense and submitted to the Court; whereupon Court denies said motion. The Defense counsel at this time informed the Court that he has issued a subpoena requesting Slidell Police Department policy manuals which the State is objecting to said request and after argument by both parties; whereupon Court ordered the State to allow the Defense counsel access to said manual and that a copy can be made however if said manual is not used during the scope of the Trial all copies are to be destroyed. The Defense counsel further informed the Court that he is satisfied with the response to the subpoena regarding the records of Melissa Thompson.

Court moved this matter back into open Court, and everyone being present, Court had the panel of 18 prospective jurors sworn and voidire examination was begun and the following named persons were peremptorily challenged by State and Excused by the Court:
1.    Lakeithia A. Johnson
2.    Mary B. Sears

The State requested that prospective juror Townsend be excused for cause, which Court denied; whereupon the State at this time used its third peremptorily challenge and Court excused Cynthia E. Townsend.

The following named persons were peremtorily challenged by Defense and Excused by the Court:

1.    Anita L. Kelley
2.    Elizabeth Bollich
3.    Andrew G. Bumpas
4.    Jacqueline K. Smith
5.    Carrol M. Sumner

The following named persons were duly sworn and impaneled to try this case to-wit:

1.    Alonzo C. Baham
2.    Roy J. Marchand
3.    Michael V. Tricou
4.    Marilyn A. Mackay
5.    Nelson T. Tassin
6.    Ronald J. Joachim, Sr





MONDAY, SEPTEMBER 18, 1995

7.      Janet H. Towner
8.      Marcia I. Guidry
9.      Paulette P. Graf
10.     Emily J. Hall

Court ordered that the names of the Petit Jurors, written on seperate cards contained in the sealed envelope, be removed and shuffled and that the names of 18 prospective jurors be drawn, which was done, the voidire examination was begun and the following named persons were peremptorily challenged by the State and Excused by the Court:

4.      Janis A. Kahrs
5.      Melody F. Scanlon
6.      William J. Short
7.      Nicholas A. Manalle, Jr.
8.      Carl W. Francis
9.      Lisa A. Fonseca

The following named persons were peremptorily challenged by the Defense and excused by the Court:

6.      George C. Durant, III
7.      Henry J. Eberhardt, III
8.      Shirley M. Temples
9.      Rodney O. Sorapuru, Sr.
10.     Terry J. Lemoine
11.     Barry J. James

The following named persons were challenged for cause and excused by the Court:

1.      Madiline F. Fauntleroy
2.      Michael G. Duplechain

The following named persons were duly sworn and impaneled to try this case to-wit:

11.     Sandra K. Smith
12.     Jeanne M. Blume

The Court at this time informed the State and the Defense that two alternates will be selected in this matter and that they will each be given two peremptorily challenges for the purpose of selecting the alternates. The following named persons were duly sworn and impaneled as alternates in this matter:

1.      Tammy M. Bordeaux
2.      Steven F. Summers

Court at this time had all of the jurors sworn together as a whole and instructed them as to the rules of sequestration and recessed this matter until 9:00 a.m. on Tuesday, September 19, 1995.



TUESDAY, SEPTEMBER 19, 1995

COURT MET THIS DAY PURSUANT TO ADJOURNMENT, PRESENT AND PRESIDING, HER HONOR, PATRICIA T. HEDGES, JUDGE DIVISION "C", RONALD T. GRACIANETTE, ASSISTANT DISTRICT ATTORNEY, PATRICK J. CANULETTE, SHERIFF AND LUCY REID RAUSCH, CLERK OF COURT. (Bailiff, Carol Dobson, and Court Reporter, Lynn Nunez)





TUESDAY, SEPTEMBER 19, 1995

The defendant being present in open Court, attended by his Counsel, Douglas C. Ellis, and the trial of this matter having been continued for September 18, 1995.

The jury was returned to the Courtroom and all counsel at this time waived polling of the jury.

The Court at this time Court ordered the Clerk to read the Bill of Information and the defendants plea, which was done.

The State made its opening statement to the jury, followed by the opening statement of the Defense.

Evidence was heard on behalf of the State and the following witnesses giving testimony:

1.   Melissa Thompson
2.   Jeron Fitzmorris
3.   Simmie Fairley

On motion of the Defense, Court ordered that the jury be retired, which was done.  The Defense counsel at this time that the present policy manual of Slidell Police Department, be turned over, in response to his subpoena; whereupon Court ordered that the policy manuals be produced for Mr. Ellis' examination only.  Further, the Defense informed the Court that they intend to recall Mrs. Thompson, and request that she bring with her the Evidence Handling Guide, that was mentioned in her prior testimony, to which the State objects and argued.  Court at this time orders that when Ms. Thompson returns to Court, said manual is to be produced also.

Court at this time had the jury returned to the Courtroom.

Evidence was heard on behalf of the State with the following witnesses giving testimony:

4.   Thomas Chin
5.   Jesse Simon

This being the noon hour, Court recessed for lunch.

The defendant being present in open Court, attended by his Counsel, Douglas C. Ellis, The jury was returned to the Courtroom and the State and the Defense waived polling of the jury.

The testimony of the State's witness, Sgt. Jesse Simon, continued. Further evidence was heard on behalf of the State, with the following witness giving testimony:

6.   Capt. Ziggy Swenson

The State at this time offered, introduced and filed into evidence the following items:

S-1    Evidence receipt date January 5, 1993
S-2a   Brown envelope as returned from the Crime Lab
S-2b   Brown evidence envelope turned in by Sgt. Jesse Simon
S-2c   Small envelope inside of S-2b
S-2d   Package containing cocaine
S-3    Survey map
S-4    Picture of Sgt. Jesse Simon in disguise

At this time, on motion of the Assistant District Attorney, Court ordered that the evidence marked S-1 through S-4 be given to the Jury for their viewing, which was done.

The State at this time rested its case subject to the right

the jury for their viewing, which was done.

The State at this time rested its case subject to the right of rebuttal.

Evidence was heard on behalf of the Defense with the following witnesses giving testimony:

1. Randy Fortenberry
2. Richard Lay

The Defense at this time objects to the State asking the defendan the outcome of the civil suits, Court at this time had the jury retire

Argument was heard; whereupon Court overruled the Defense's objection.

Court at this time recessed briefly.




The defendant being present in open Court, attended by his Counsel Douglas C. Ellis, the jury was returned to the Courtroom and the State and the Defense, waived polling of the jury.

The Defense at this time request that the jury view the evidence.

It being the noon hour, Court recessed this matter for lunch and reminded the jury the as to the rules of sequestration.

The defendant being present in open Court, attended by his Counsel Douglas C. Ellis, the Defense counsel outside the presence of the jury requested that he be allowed to refer to the prior trial during his closing arguments, the State argued; whereupon Court ordered the State and the Defense to refer to the prior trial as a prior hearing.

The Court ordered the jury return to the Courtroom, the State and the Defense, waived polling of the jury and viewing of the evidence was continued and thereafter completed.

The State at this time made its closing arguments to the Jury, followed by the Defense's closing arguments and concluding with the State's rebuttal arguments.

Court at this time retired the jury, upon request of the Defense.

The Defense at this time requested a mistrial, on the grounds of a misstatement of fact by the State during its closing arguments, argument was heard by both Counsel; whereupon Court denied said motion.

The Court at this time informed the State and the Defense of her concerns regarding the juror Ms. Sandra Smith possibly sleeping during closing arguments and at which time Court cleared the Courtroom except for the parties directly involved in this trial and had Ms. Smith brought into the Courtroom. Ms. Smith was then questioned by the Court, the Defense and the State and the Court at this time determined that Ms. Smith be allowed to remain as a juror in this matter. Ms. Smith was returned to the jury room at this time. The Defense objects to the Court's ruling.

The State and the Defense requested that the jury charges be amended by the Court, which was done.

The Court ordered the jury be returned to the Courtroom.

Court then charged the jury and release the alternate jurors and retired the Jury to the Jury room for their deliberation at 5:55 p.m.

The defendant being present in open Court, attended by his Counsel, Douglas C. Ellis, the Jury was returned to the Courtroom at 6:50 p.m. after having informed the Court of their need for further instruction.

Court at this time instructed the Jury as to their request and again retired the Jury for further deliberation at 6:54 p.m.

The defendant being present in open Court, attended by his Counsel Douglas C. Ellis, the Defense at this time moved for a mistrial in this matter, based on a conversation overheard by the defendant concerning comments made in the jury room, argument was heard and Court denied said motion.

The defendant being present in open Court, attended by his Counsel Douglas C. Ellis, and after mature deliberation at 7:57 p.m. the Jury returned to the Courtroom and through their Foreman returned their written verdict to the Court, which verdict the Clerk was ordered to read as follows: