

United States ~~Court~~ District Court

Eastern District of Louisiana

Richard B. Lay-Prose                    Civil Action
versus
Tim Hooper-Warden;            19-9803-R(2)
State of Louisiana

#2.   Proof Of Exhaustion of Equal
Protection Clauses by operation of
[A. Const. Art. 1, Section 2,3 and 17
[1974]; and USCA-Amend.14[Equal
Protection] in "21S530-C; And 38375-9#
—St. Tammany; and 11-CRS-112033-B—
Washington per laws of both the
United States And State of Louis
iana as to exhaustion of State
remedies, my "Equal Protection
Clauses" Challenges is not based
upon any ruling in Ramos but a
Separate and Independent Claims
recognized by the United States
Supreme Court in Ramos[ newly
discovered].            Pages: 50-104

April, 8—, 2025

            Richard B. Lay 110315
            EHCC-Fox 2 B
            P. O. Box 174
            St. Gabriel, La.
                        70776



Office Of The Clerk

**Court of Appeal, First Circuit**
State of Louisiana
www.la-fcca.org

Rodd Naquin
Clerk of Court

Post Office Box 4408
Baton Rouge, LA
70821-4408
(225) 382-3000

**Notice of Judgment and Disposition**

September 26, 2022

Docket Number:  2022 - KW - 0868

State Of Louisiana
        versus
Richard B. Lay

TO:   Richard  Lay
      AVC
      1630 Prison Road
      Cottonport, LA 71327

Warren LeDoux Montgomery
701 N. Columbia Street
Covington, LA 70433
wmontgomery@22da.com

In accordance with Local Rule 6 of the Court of Appeal, First Circuit, I hereby certify that this notice of judgment and disposition and the attached disposition were transmitted this date to the trial judge or equivalent, all counsel of record, and all parties not represented by counsel.

*a.s\N*

RODD NAQUIN
CLERK OF COURT



# STATE OF LOUISIANA

# COURT OF APPEAL, FIRST CIRCUIT

STATE OF LOUISIANA

VERSUS

RICHARD B. LAY

NO. 2022 KW 0868

SEPTEMBER 26, 2022

---

In Re:    Richard B. Lay, applying for supervisory writs, 22nd
          Judicial District Court, Parish of Washington, No. 11-
          CR5-112033.

---

BEFORE:   THERIOT, CHUTZ, AND HESTER, JJ.

    WRIT DENIED.

MRT
WRC
CHH

COURT OF APPEAL, FIRST CIRCUIT

_____
DEPUTY CLERK OF COURT
FOR THE COURT



State ex rel Richard Lay

Versus

State of Louisiana

No: 2022-KW-0868

1st Circuit Court of Appeal

State of Louisiana

A Criminal Proceedings

---

Application for Writs of Habeas Corpus, Certiorari, Supervisory, Mandamus and Prohibition to the 22nd Judicial District Court – Parish of Washington Docket No: 11-CR5-112033 Honorable Jerome Winsberg---Judge Ad Hoc

---

**Richard Lay #110215**
RLCC- Cajun 2 C2 #45
1630 Prison Road
Cottonport Louisiana 71327



1

## ISSUES AND QUESTIONS PRESENTED

1.    Whether petitioner Lay has properly challenged the unconstitutionality of Article 782, of the Louisiana Criminal Code of Procedure and Article 1, Section 17 of the Louisiana Constitution 1974 under the "Equal Protection Clause" of both the United States and the State of Louisiana Constitution left open by Ramos v. Louisiana, 2020 US lexis 2407 to entitle him to relief from his conviction and sentence imposed pursuant to a 10-2 verdict?



2

INTERESTED PARTIES

1.   Jeff Landry
     LA Attorney General
     1885 N. 3ʳᵈ Street
     Baton Rouge, LA 70802

2.   Warren Montgomery
     District Attorney
     701 N. Columbia Street
     Covington, LA 70434

3.   Jerome Winsberg-Judge Ad Hoc
     Parishes of St. Tammany / Washington
     5031 St. Charles Street
     New Orleans, LA 70115

4.   Richard B. Lay
     DOC #110315
     RLCC-Cajun 2 C2 #45
     1630 Prison Road
     Cottonport Louisiana 71327



3

## JURISDICTION

Jurisdiction of this court in invoked pursuant to Article 5, Section 2 and 10 of the Louisiana Constitution 1974: LSA-C.Cr.P. art. 881.5 and 930.8 A (1).See also State ex rel Becnel, 410 So. 2D 1012 [La. 1982]; and State of Louisiana v. Smith, 700 So. 2D 493 [La. 1997] [case cited].

## STATEMENT OF FACTS

1.    The State of Louisiana named and used State of Louisiana v. Lay #215530; #197086; and #1301364, 131/364, 131/275- for sentencing purposes under LSA-R.S. 15:529.1.

2.    On April 20, 2020 the United States Supreme Court ruled in Ramos v. Louisiana, 206 La. R.S. Ed. 583, 2020 US Lexis 2407 held: "Ramos felony conviction by a non- unanimous jury is unconstitutional because the Sixth Amendments protection against non-unanimous felony guilty verdicts applies against the States through the Privileges or Immunities Clause of the Fourteenth Amendment"

In the concurring opinion by Justice(s) Soto Mayor, Kavanaugh and Thomas it was said…

The majority vividly describes the legacy of racism that generated Louisiana's and Oregon's laws. *Ante*, at 1-2, 13-14, and n. 44. Although Ramos does not bring an equal protection challenge, the history is worthy of this Court's attention. That is not simply because that legacy existed in the first place-unfortunately, many laws and policies in this country have had some history of racial animus-but also because the States' legislatures never truly grappled with the laws' sordid history in reenacting them. See generally *United States v. Fordice*, 505 U. S. 717, 729, 112 S. Ct. 2727, 120 L. Ed. 2d 575 (1992) [policies that are ``traceable'' to a State's *de jure* racial segregation and that still ``have discriminatory effects'' offend the Equal Protection Clause]. Where a law otherwise is untethered to racial bias-and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it-the new law may well be free of discriminatory taint. That cannot be said of the laws at issue here[1]. While the dissent points to the ``legitimate'' reasons for Louisiana's reenactment, *post*, at 3-4, Louisiana's perhaps only effort to contend with the law's discriminatory purpose and effects came recently, when the law was repealed altogether.

Today, Louisiana's and Oregon's laws are fully-and rightly-relegated to the dustbin of history. And so, too, is *Apodaca*. While overruling precedent must be rare, this Court should not shy away from correcting its errors where the right to avoid imprisonment pursuant to unconstitutional procedures hangs in the balance.

---

1    See Senate Bill of Information #221 amending La. R.S. 15:529.1 effective November 1, 2017 reducing the cleansing period from 10 to 5-years for non-violent offense is applicable upon re-sentencing.




3.      Petitioner Lay based his "Equal Protection" challenges to Article 1, Section 17 of the La. Const. 1974; and Article 782A, of LSA-C Cr. P. in which State v. Lay #215530 is per se and for interruption of 10-year prescription period[2] to allow usage of State of Louisiana v. Lay #197086; #130, 364, and #131/275 which was not known to him or his counsel and did not become known to him until Ramos, supra.

Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(A) of the Louisiana Code of Criminal Procedure violates defendant Lay's right to a unanimous jury verdict under both the USCA Amendment 14; and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974 in light of the fact they were adopted for the sole purpose to deprive African Americans of the equal protection of rights guaranteed by the United States Constitution in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Lay is an African-American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." State v. Petrovich, 396 So.2d 1318, 1322 (La. 1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. See id. See also Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles, 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

In Sibley, this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest.

2    See Marshal v. United States, 414 US 417, 94 S. Ct. 700, 38 L. Ed. 2d 618 (1974)



5



*Sibley* at 1107. Under the first level of scrutiny enumerated in *Sibley*, the law creating the classification completely falls. *See Moore v. RLCC Technologies, Inc.* p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal protection and the proponent of the law carries the burden of proving that the classification substantially furthers an important government interest. *See id.* p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. *See id.* p. 11, 668 So.2d 1141. *See also Soloco*, *supra*; *Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359; *Manuel v. State*, 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution and Article 782. (A) of the Louisiana code of Criminal Procedure to be Amended to require unanimity verdicts on or after effective date.

3.  On July 8, 2022 the trial court "Summarily" denied relief without service upon the State and a "Evidentiary Hearing". Judgment was filed July 13, 2022.

## DISCUSSION

This court recently discussed the procedure by which a party may challenge a statue's constitutionality:

It is well-settled that a constitutional challenge may not be consider by an appellate court unless it was properly pleaded and raised in the trial court below. Although this court generally possesses the power and authority to decide the  constitutionality of the provisions challenged in a defendant's motion to quash, it is not required to decide a constitutional issue unless the procedural posture demands that it do so.

Moreover, this court has consistently held that legislative enactments are presumed valid and their constitutionality should be upheld when possible. Accordingly, as a result of this presumption, if a party wishes to challenge the constitutionality of a statue, the party must do so properly.



While there is no single procedure for attacking the constitutionality of a statue, it has long been held that the unconstitutionality of a statue must be specifically pleaded and the grounds for the claim particularized.

This court has expressed the challenger's burden as a three step analysis. First, a party must raise the unconstitutionality in the trial court; second, the unconstitutionality of a statue must be specifically pleaded; and third, the grounds outlining the basis of unconstitutionality must be particularized. The purpose of these procedural rules is to afford interested parties sufficient time to brief and prepare arguments defending the  constitutionality of the challenged statue. The opportunity to fully brief and argue the constitutional issues provides the trial court with thoughtful and complete arguments relating to the issue of  constitutionality and furnishes reviewing courts with an adequate record upon which to consider the  constitutionality of the statue.

The final step of the analysis articulated above requires that the grounds outlining the basis of the unconstitutionality be  particularized. This court has thoroughly considered the standard for particularizing the constitutional grounds. The purpose of particularizing the constitutional grounds. The propose of particularizing the constitutional grounds is so that the adjudicating court can analyze and interpret the language of the constitutional provision specified by the challenger. The basic principle dictates that the party challenging the  constitutionality of a statue must cite of the specific provisions of the constitution which prohibits the action.

In addition to the three step analysis for challenging the  constitutionality of a statue, the specific plea of unconstitutionality and the grounds therefor must be raised in a pleading.

Thus, in light of the foregoing jurisprudential rules, in order to properly confect a constitutional challenge, a party must raise the constitutional issue in the trial court by unconstitutionality and the grounds outlining the basis of alleged unconstitutionality in a pleading.

Raising the constitutional issue in a motion has been deemed sufficient to satisfy the purpose of the three steps and analysis required to properly assert a constitutional challenge. Moreover, we recently recognized that a motion raising the  constitutionality and the grounds therefor are sufficient to satisfy the three steps analysis for raising a constitutional challenge.

The final step of the analysis is that the party challenging the  constitutionality of a statue particularize the grounds outlining the basis of the  unconstitutionality.

Although the issue of raising constitutional grounds not particularized in trial court generally arises under circumstances in which a party raises a new or additional constitutional grounds before an



appellate court, this court has consistently found that the purpose of the three steps analysis for challenging the constitutionality of a statue is to prepare an adequate record for review. Clearly, these purpose are not satisfied if the constitutionality of a statute. Further, we not that this situation is similar to those unconstitutionality has not been placed at issue by one of the parties in a pleading. A judge's sua sponte declaration of unconstitutionality is a derogation of the strong presumption of constitutionality accorded legislative enactments.

State v. Hatton, 07-2377 (La. 7/1/08), 985 So. 2d 709, 718-20 (citations omitted).

Here, petitioner Lay raised the constitutionality of Article 782 of the Louisiana Criminal Code Procedure; and Article 1 Section 17, of the Louisiana Constitution 1974 which resulted in 10-2 verdict in State v. Lay #215530-C –2nd Judicial District Court—Parish of St. Tammany used for impeachment and enhancement purposes under LSA-R.S. 15:529.1 in violation of the "Equal Protection Clause" of both the United States and the State of Louisiana Constitutions.

The trial court's reason for the "Summarily" denial of relief is unsupported in facts and laws, and must be reversed for Service and a Answer by the State of Louisiana along with an "Evidentiary Hearing" with counsel as indigent being appointed.

Wherefore I pray appropriate relief to issue since I'm entitled to immediate release upon a resentencing.

Respectfully submitted this 3rd day of August, 2022 under the penalty of perjury and good-faith.

_____
**Richard B. Lay #110315**
RLCC-C2-C2 #45
1630 Prison Road
Cottonport Louisiana 71327


## CERTIFICATE OF SERVICE

I State of Louisiana a copy was mailed to the LA Attorney General. The District Attorney and the trial court for St. Tammany / Washington Parish this 3rd day of August, 2022 properly addressed with postage affixed.

_____
**Richard B. Lay #110315**
RLCC-C2-C2 #45
1630 Prison Road
Cottonport Louisiana 71327

3

---

3   Called in question by the US Supreme Court in Ramos with a noted History of being adopted to deprive African Americans of the "Equal Protection of Rights" afforded white citizens,



STATE EX REL RICHARD B. LAY          NO.

VERSUS                               LOUISIANA SUPREME COURT

1ST CIRCUIT COURT OF APPEAL          STATE OF LOUISIANA

DOCKET NO. 2021-KW-1126

_____      _____
FILED                                DEPUTY  CLERK

### REQUEST FOR JUDICIAL REVIEW

**NOW INTO COURT**, comes Petitioner Richard B. Lay who moves this Court to review the arbitrary decision of both the 22nd Judicial District Court and the 1st Circuit Court of Appeal denying to grant relief from the unconstitutionality  of Article 1, Section 17, of the Louisiana Constitution of 1974 and LSA-C.Cr.P. Art. 782.A on other Constitutional and State procedural grounds not ruled upon by United States Supreme Court in Ramos v. Louisiana, 2020 U.S. LEXIS 2407 [4/20/20].

### JURISDICTION

Jurisdiction of this Court is invoked pursuant to Article 1, Section 19 and Article 5, Section 2 and 5, of the Louisiana Constitution 1974.

### STATEMENT OF FACTS

1. On April 20th, 2020, the United States Supreme Court held the State of Louisiana non-unanimous jury verdicts in violation of the Sixth Amendment applicable to all States thru the Fourteenth Amendment of the United States Constitution.

2. The Court agreed by majority vote that Louisiana's less than majority verdicts in criminal jury trials violates the Equal Protection Clause under United States v. Fordice, 505 US 717, 729, 112 S.Ct. 2727, 120 L.Ed. 2d. 575 [1992], yet could not issue a judgment on this ground because the defendant Ramos did not challenge the non-unanimous verdict on the ground in the lower State Courts.

3. Petitioner Lay made the following constitutionality attacks upon his convictions and, or, sentence, after clearly proving that State v. Lay #215530—rests upon a 10-2 non-unanimous jury verdict:

1

(a) The use of a non-unanimous jury verdict for conviction, sentencing and impeachment purposes violates the Equal Protection clauses of both the United States and the State of Louisiana Constitution seeking vacation of both the convictions and sentences where State v. Lay #2155306 was obtained and used for impeachment and sentencing purpose in part under La.C.C.P. Art. 3601A, Morris v. Trust Technologies, LLC, 274 So. 3d. 15, 18-19 [La. App. 1st Cir. 2019]; and Hill v. Jindal, 175 So. 3d. 988, 1002, Writ denied, 179 So. 3d. 600 [La. 10/23/15].

(b) That Ramos is retroactive under Louisiana law as recently held by the 14th Judicial District Court – Parish of Calcasieu, on the 25th day of June 2021, in State v. David Nelson – Docket No. 3488-09, to "Judicial Notice" is requested; and

(c) The Trial Court denied relief without a hearing or service for an "Answer" by the District Attorney contrary to La.C.Cr.P. Art. 927.A; and La.C.C.P. Art. 3601. See Hill, 175 So. 3D at 1002.

4. The 1st Circuit Court of Appeal , like the trial Court, denied relief sought other than that held by the Ramos Court to which I have clearly established on November 29, 2021.

## CONCLUSION

**WHEREFORE**, Petitioner Richard Lay moves this Court hold Louisiana's Non-unanimous Jury Verdicts [10-2] unconstitutional on the alternative grounds raised by Lay and enjoin all convictions and sentences in which State v. Lay #215530-C - 22nd Judicial District Court – Parish of Tammany, was used for the conviction, impeachment, and sentencing purposes.


Respectfully submitted this _____day of December, 2021, under the penalty of perjury and good-faith.




**Richard B. Lay #110315**
RLCC Cajun 2 C2 #48
1630 Prison Road
Cottonport, LA 71327


CC
Warren Montgomery
District Attorney
Jerome Winsberg
Judge Ad Hoc

File

2

2.

State of Louisiana           No.: 215530-C (F)
Versus                        22nd Judicial District Court
Richard B. Lay               Parish of St. Tammany


Date Filed: May 15, 2020    ~~Lauren Pacaccio~~
                            ~~Deputy Clerk~~
                            ~~Lauren Pacaccio, Deputy Clerk~~


### Motion To VACATE And Set Aside Conviction and Sentence

NOW into the Court Comes defendant Richard B. Lay who moves this Court to VACATE And Set Aside his Conviction And Sentence.


### Jurisdiction

Jurisdiction is invoked pursuant to Article 5, Section 2 And 16 (A) of the LA. Const. 1974; And State ex rel Becnel + Blackburn, 410 So. 2d 1015 [ LA. 1982 ][ Cases Cited ].


### Case History

1. Defendant Lay was found guilty Possession of Cocaine within 1000 feet of a school Zone and was subsequently sentenced to _____ years under LA. R.S. 15: 529.1 by less than a UNANimous jury Verdict.

2. On April 20, 2020 the United States Supreme Court in Ramos + Louisiana No: _____ held that jury Verdicts

62.    62.    ~~77.~~    ~~73.~~

in the <u>State of Louisiana</u> by less than
a UNANimous Violates the <u>Sixth</u> And
<u>Fourteenth Amendment</u>.

3. Article 1, Section 17 of the La. Const.
1974 And Article 782 (A) of the La. C.C.P.
Violates the equal protection and due
process Clause Under Article 1, Section
2 And 3 of the La. Constitution 1974 as
they were adopted ☒ in 1898 for the
purpose of discriminating against <u>African-
American</u>, the provisions had, And CONTinue
to have the discriminatory effect Until
the Louisiana legislature Caused the amend-
ment of both provisions requiring UNAN-
imous jury verdict in all felony trials
in the <u>State of Louisiana</u> in 2018 prior
to the United States Supreme Court's ruling
in <u>Ramos</u> decision on April 20, 2020 de-
Claring less than UNANimous jury verdict
in the <u>State of Louisiana</u> Criminal trials
Violate the <u>Sixth and Fourteenth Amend-
ments</u> of the U.S. Constitution.

4. <u>Ramos</u> is retroactive for the same
reason the U.S. Supreme held Non-
UNANimous jury verdicts in <u>Burch +
Louisiana</u>, 441 U.S. 130, 99 S.Ct. 1623 [1976]
in <u>Brown + Louisiana</u>, 447 U.S. 323 [1980]
and <u>Gallew + Georgia</u>, 435 U.S. 223, 98
S.Ct. 1029 [1976].

5. <u>Ramos</u> is both prospective And

63. 2 ~~453~~. ~~78~~.

retroactive under La.C.C.P. art. 6 insofar, the U.S. Supreme Court merely interpreted what the Framers meant in regards to the Sixth Amendment right to a jury trial and the Fourteenth Amendment Due Process Clause requiring unanimous verdicts. See Burch & Louisiana, 411 U.S. 130 [1976] And Gallew & Georgia, 435 U.S. 228 [1976.]

Wherefore defendant Lay prays the following relief to issue:

1. Hold Ramos is retroactive under Federal Jurisprudence.

2. Hold Ramos is retroactive under the State of Louisiana's jurisprudence

3. Hold Article 1, Section 17 of the La. Const. 1974 And Article 782 (A) of the La. C.C.P. unconstitutional under Article 1, Section 2 And 3 of the La Const. 1974.

Respectfully submitted this 18th day of May, 2020 under the penalty of perjury and good-faith.

Richard B. Lay 110315
R.L.C.C.- Cajun 2-A1 #14

Footnote(s)

1. See Brown & Louisiana 447 U.S. 323 [1980] And Thomas & William Blackburn, 623 F. 2d 383 [5th Cir. 1980], Cert. denied, 450 U.S. 935, 101 S.Ct. 1413, 67 L.Ed. 2d 380 [1981]

64. 3.

CC                                    1630 Prison Road
Jeff Landry-                          Cottonport, La. 71327
Attorney General

Warren Montgomery
District Attorney                     

Matthew Caplan
Asst. District Attorney

<u>Order</u>

Based on the foregoing Motion And
Memorandum In Support:

It's Ordered Warren Montgomery-Dist-
rict Attorney Show Cause before this
Court on the ___ day of _____ 2020
why said relief should Not issue as
provided by law.

It's Ordered <u>Acting Warden Slay</u> produce
the body of <u>Richard Lay</u> #110815.

It's ordered <u>Brian G. Messier</u> is
appointed to represent dependant <u>Lay</u>
in the interest of Justice.

Clerk to serve all parties a Copy of
this Motion, Memorandum of law And
Court order.

**65.**    Said And done this ___ day of
_____, 2020.

Judge Ad Hoc J. Winsberg

Please Serve

1. Jeff Landry - Attorney General
   1885 No. 3rd St.
   Baton Rouge, La.
   70802

2. Warren Montgomery - District Attorney
   701 No. Columbia St.
   Covington, La 70433

3. Matthew Caplan - Asst. District Attorney
   701 No. Columbia St.
   Covington, La. 70433

4. Acting Warden Slay
   Raymond Laborde Correctional Center
   1630 Prison Road
   Cottonport, La. 71327

5. Richard B. Lay 110315
   R. LCC - Cajun 2 - A1 #14
   1630 Prison Road
   Cottonport, La. 71327

66.



5.

3.

215530-6

State of Louisiana                    Docket Number:
Versus                                22nd Judicial District Court
Richard B. Lay                        Parish of St. Tammany

Date filed:_____  _____

                                        Deputy Clerk


                Memorandum In Support
                To Set Aside Conviction
                And Sentence
        Now into the Court Comes defendant
Richard B. Lay who files this Memorandum
of Law In Support to Vacate And Set
Aside his Conviction and Multiple Bill
Adjudication And Sentence based upon
Ramos + State of La"  _____ [U.S. Supreme
Court];And Sibley + Bd. of Supvr, 477 So. 2d 1094.


    The function of statutory interpretation and
the construction to be given to legislative acts
rests with the judiciary. Livingston Parish Council
on Aging + Graves, 105 So.3d 683, 685 [La. 2012].
The fundamental question in all cases of stat-
utory interpretation is legislative intent and
the ascertainment of the reason or reasons
that prompted the legislative to enact the law.
In re: Succession of Baxter, 756 So. 2d 1122,
1128 [La. 2000]. The rules of Statutory construct-
ion are designed to ascertain and enforce the
intent of the legislature. Id.; See Also Stog-
ner + Stogner, 739 So. 2d 762, 766 [La. 1999]


67.

legislation is the solem expression of legislative will, and therefore, interpretation of the law involves primary a search for the legislative's intent. La. R.S. 1:4; La. C.C. art. 2; Lockett + State Dept. of Transp. and Development, 869 So. 2d 87, 90 [ overturned on other grounds due to legislative action ]. Moreover, the legislature is presumed to act with full knowledge of well-settled principles of statutory construction. See Catahoula Parish School Bd. + Louisiana Machinery Rentals, LLC, 124 So. 3d 1065, 1073 [ La. 2013 ]. When the law is clear and unambiguous and its application does not lead to absurd consequences, the law shall be applied as written and no further interpretation may be made in search of the intent of the legislature. La. C.C. art. 9; Lockett, 869 So. 2d at 90-91; Conerly + State, 714 So. 2d 709, 710-11 [ La. 1998 ].

Since statutes are presumed to be constitutional, "the party challenging the validity of a statute generally has the burden of proving unconstitutionality." State + Granger, 982 So. 2d 779, 786 [ La. 2008 ], quoting Moore + RLCC Techs., Inc., 95-2621 [ La. 2/28/96 ], 668 So. 2d 1135, 1140. To satisfy this burden, the challenging party must cite the specific constitutional provision that prohibits the legislative action. State + Granger, supra; State + Fleury, 799 So. 2d 468 [ La. 2001 ].

2. 68.



<u>CLAIM ONE</u>

1. <u>Article 1, Section 17</u> of the <u>Louisiana Constitution 1974</u> and <u>Article 782[A]</u> of the <u>Louisiana Code Of Criminal Procedure</u> violated defendant <u>Lay's</u> right to a jury trial and the due process clause of both the <u>United States Constitution, Amend 6 + 14;</u> <u>Article 1, Section 2, And 3</u> of the <u>Louisiana Constitution²</u> as partially held by the <u>United States Supreme Court</u> on the <u>20ᵗʰ</u> day of <u>April</u>, 2020 in <u>Ramos + State of Louisiana No.</u> ____.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." <u>State + Petrovich</u>, 396 So.2d 1318, 1322 [La. 1981]. The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. See id. See also <u>Burmaster + Gravity Drainage Dist. No. 2 of the Parish of St. Charles</u>, 366 So.2d 1381, 1388 [La. 1978]. La. Const. art. 1 § 3 provides:

.... No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of <u>race</u> or

<u>FootNote(s)</u>

1. See <u>Marshall + United States</u>, 414 U.S. 417, 94 S.Ct. 700, 38 L.Ed.2d 618 [1974].
2. <u>State + Brown</u>, 648 So.2d. 872 [La. 1995].
3. See <u>Gideon + Wainwright</u>, 372 U.S. 335 [1963]

3.



religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the later case as punishment for a crime.

In Sibley v Board of Supervisors of La. State Univ. and Agric. and Mechanical College, 477 So. 2d 1094 [La. 1985], the Louisiana Supreme Court set forth the analysis required by La. Const. art. 1 § 3 in the face of a legislative classification:

... Article 1, Section 3 commands the Courts' to decline enforcement of a legislative classification of individuals in three situations: (1) when the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) when the statute classifies persons on the basis of birth, age, sex, culture, physical condition(s), or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate advocate of the classification shows that the classification has a reasonable basis; (3) when the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. Sibley, at 107.


70.    4.

Under the first level of scrutiny enumerated in _Sibley_, the law creating the classification completely fails. See _Moore + RLCC Technologies, Inc_, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification is prima facie proof of a denial of equal protection and the proponent of the law carries the burden of proving that the classification substantially furthers an important government interest. See id., 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. See id., 668 So.2d 1141. See also _Soloco, Inc. + Dupree_, 707 So.2 12, 14 [La. 1998]; _Meds Exp. Ambulance Service, Inc + Evangeline Parish Police Jury_, 684 So.2d 359 [La. 1996]; _Manuel + State_, 677 So.2d 116 [La. 1996].

The _Louisiana_ provisions authorizing non unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discriminating against _African-Americans_; the provision(s) had, and continue to have, the desired discriminatory effect. On the ___ day of ___ 2018 the _Louisiana legislature_ caused _Article 1, Section 17_ of the La.

5.

71.

Const. 1974 and Article 782(A) of the La.C. Cr.P. to be amended to require unanimity verdicts but did not make this requirement retroactive. On the 20th day of April, 2020 the United States Supreme Court, in Ramos, supra held the State of Louisiana non-unanimous verdict system violated Amendment 5, and #6 applicable to the States thru the 14th Amendment but did not decide Ramos was retroactive under federal law.[3]

Ramos is retroactive under the United States and Louisiana Supreme Courts' jurisprudence.

In Ballew v Georgia, 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed. 2d 234 [1978], the United States Supreme Court held that conducting a criminal trial before a jury consisting of only five members deprived the defendant of his right to trial by jury under the Sixth and Fourteenth Amendments. The Court, in Burch v Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed. 2d 96 [1976], held for much the same reason as in Ballew that a five to one verdict convicting the defendant of a nonpetty offense violated the right to a jury trial. Burch was applied retroactively in Brown v Louisiana, 447 U.S. 323, 334, 100 S.Ct. 2214, 2223, 65 L. Ed. 2d 159, 169 [1980], the Court stating:

"In sum, Burch established that the con



6 cv.

Currence of Six Jurors was Constitutionally required to preserve the substance of the Jury trial right And to assure the reliability of its Verdict. It is difficult to envision a Constitutional rule that more fundamentally implicates "the fairness of the trial—the very integrity of the fact-finding process..." The basic purpose of a trial is the determination of truth...and it is the jury to whom we have entrusted the responsibility for making this determination in serious Criminal cases. Any practice that threatens the jury's ability properly to perform that function poses a similar threat to the truth—determining process itself. The ~~————~~ rule in <u>Burch</u> was directed toward elimination of just such a practice. Its purpose, therefore, Clearly requires application.

The rationale of <u>Burch</u> seemingly compels the same sort of retroactive application of <u>Ballew v Georgia</u>, supra. This conclusion was reached by <u>United States—Fifth Circuit Court Of Appeal</u> in <u>Thomas v Blackburn</u>, 623 F.2d 383 [5th Cir. 1980], cert. den. 450 U.S. 953, 101 S.Ct. 1413, 67 L.Ed.2d 380 [1981], the Court granted petitioner relief on habeas corpus application challenging his pre-<u>Ballew</u> Conviction by a five member jury. Petitioner's original state proceedings were Completed in 1972. The <u>Court</u> reasoned:

7.                    73.

"The recognition that _Ballew_ and _Burch_ share the same purpose mandates that _Ballew_ also be applied retroactively, regardless of good faith reliance by the state on the former rule or disrupted effect on the Administration of Justice. Id. at 385. _Ballew_, therefore is to be given retroactive effect."[4] The trial court erred in refusing to grant the relator's post-conviction relief.

_Ramos_ is interpretative of the _Sixth Amendment_ right to jury trial and the procedure in which the _State of Louisiana_ must follows and applies both prospectively and retroactively under _Article 6_, of the Louisiana Code Civil Procedure for the same reasons as _Ballew_ and _Burch_. See _Moore + Delta Waste Sys._, 690 So.2d. 1108, [La. App. 4 Cir. 1997]; and _Short + Griffin_, 682 So.2d 249, [La. App. 4 Cir. 1996], Cert. den., 689 So.2d 1372 [LA.1997]. See Also _Manuel + Louisiana Sheriff's Risk Management Fund_, 664 So.2d 81 [La. 1995][ interpretative laws apply both prospectively and retroactively]. Additionally _Article 1, Section 7_ of the _LA. Const. 1974_; and _Article 782 [A]_ of the La. C. Cr. P. violates _Article 1, Section 2 and 3_ of the _Louisiana Constitut-_

Footnote 6.)
[4]. See _Atkins + Listi_, 625 F. 2d 525 [5th Cir. 1980].



8

74.

~~ion 1974 for the same aforesaid reasons.~~

## CLAIM TWO

2. The use of conviction by a jury verdict of _10-2_ for multiple bill Adjudication And Sentencing under LA.R.S. 15:529.1 violates _Ram-os_, supra, And _Article 1_, Section 2 And 3 of the _Louisiana Constitution 1974_.

The _UNITED STATES Supreme Court's_ opinion in _RAMOS_ that the _Sixth Amend-ment's_ jury trial guarantee And the _Fourteenth Amendment's Due Process Clause_ require unanimous verdict. Prior to _RAMOS_ the _Supreme Court's_ decisions in _Jones_[5], _Apprendi_[6], _Ring_[7] and _Blakely_[8] elucidate a history of the _Sixth Amendment's_ jury trial guarantee demonstrating that "trial by jury has been understood to require that the truth of every accusation... should... be confirmed by the unanimous suffrage of twelve of [the dependants] equals And Neighbors..." _Apprendi_, 530 U.S. at 477 [emphasis supplied. [internal citations omitted]. In these cases the _Supreme Court's_ interpretation of the _Sixth Amendment_, And specifically its jury trial guarantee, has primarily focused on two things: (1) the text of the

Footnote (5)

5. _Jones + United States_, 526 U.S. 227 [1999].
6. _Apprendi + New Jersey_, 530 U.S. 466 [2000].
7. _Ring + Arizona_, 536 U.S. 584 [2002].
8. _Blakely + Washington_, 124 S.ct. 2531 [2004] and _United States + Booker_, 125 S.ct. 738 [2005].

9.

75.

Amendment; and (2) the Framer's understanding of the right at the time of the adoption. The notion of an evolving conception of Sixth Amendment rights has been rejected. See Apprendi, 530 U.S. at 476-85 [reviewing the history of the right to trial by jury from the early 18th century to determine the Framers' understanding of the right]; Jones, 526 U.S. at 244-48 [same]. See Also Crawford + Washington, 541 U.S. 36 [2004].

To permit a conviction obtained in violation of Ramos to be used against a person either to support guilt or enhance punishment for another offense... is to erode the principle of this case ... worse yet, since the defect in the prior conviction was denial of defendant Lay's Sixth And Fourteenth Amendments to the United States Constitution insofar as Article 1, Section 17 of the Louisiana Constitution 1974 And Article 782(A) of the Louisiana Code Criminal Procedure allowed defendant Lay to be convicted by less than a unanimous verdict, defendant Lay in effects suffers anew from the deprivation of those rights.[9] See Burgett + Texas, 389 U.S. 109, 88 S.Ct. 258, 19 L.Ed. 2d 319 [1967];

Footnote(s)
9. See Also Article 1, Section 2 And 3 of the Louisiana Constitution 1974; And Childress + Johnson, 103 F. 3d 1221 [5th Cir. 1997] [cases cited:
10.

76.

The fact that one convicted of a crime has served his sentence does not render a subsequent attack on a constitutionally invalid conviction moot where the conviction is attended with collateral consequences, such as vulnerability to a multiple offender proceeding and a possible enhanced sentence. Whether the person may or may not be resentence if convicted following a new trial is immaterial to this determination. State ex rel Beenel v. Blackburn, 410 So.2d 1015 [La.1982] citing with approval Eiswick v. United States, 329 U.S. 211, 67 S.Ct. 224, 91 L.Ed.196 [1946]; Sinclair v. Blackburn, 599 F.2d 673 [5th Cir.1979], Cert. denied, 444 U.S. 1023 100 S.Ct. 684, 62 L.Ed. 2d 656 [1980]; Scott v District Attorney of Jefferson Parish, 309 F.Supp. 833 [E.D. La.1970], Aff'd. 437 F.2d 500 [5th Cir.1971]; State ex rel Bishop v. Blackburn, 384 So.2d 406 [La.1980].[10]

Defendant Lay was found guilty in State v Lay No. 215530-C         -22nd Judicial District Court by less than a unanimous verdict pursuant to Article 1, Section 17 of the Louisiana Constitution 1974 And Article 782 (A) of the Louisiana Code Criminal Procedure in direct violation of Ramos And Article 1, Section 2 And 3 of the Louisiana Constitution 1974 which was used to enhance my present Sentence under La. R.S. 15:529.1.



77.

Wherefore defendant Lay prays the following relief to issue:

1). Ramos be held prospectively and retroactively

2). Article 1, Section 17 of the Louisiana Constitution 1974 and Article 782(A) of the La. C.Cr.P. be held unconstitutional under Article 1, Section 2 and 3 of the Louisiana Constitution 1974 under the same rationale of Ramos and be applied prospectively and retroactively under Article 6, of the Louisiana Civil Code Procedure; And

3). order my conviction and sentence under LA. R.S. 15:529.1 vacated and set aside.

Respectfully submitted this 18TH day of May, 2020 under the penalty of perjury and good-faith.

Richard B. Lay #110315
R.L.C.C.~Cajun 2- A1
1630 Prison Road
Cottonport, LA. 71327.

Foot Note (s)

10. See State v. Smith, 700 So.2d 493 [La. 1997] reaffirming the validity of State ex rel Becnel v Blackburn, Supra.

<u>Certificate of Service</u>

I state a copy of this Motion To Vacate And Set Aside Conviction And Sentence has been mailed to all interested parties this 18th day of May, 2020 with postage Affixed:

1. Warren Montgomery - District Attorney
Parish of St. Tammany / Washington
701 N. Columbia Street
Covington, LA. 70433

2. Matthew Caplan - Asst. District Attorney
Parish of St. Tammany / Washington
701 N. Columbia Street
Covington, LA. 70433

3. Jeff Landry - Louisiana Attorney General
Office of Attorney General
Livingston Building
1885 N. 3rd Street
Baton Rouge, LA. 70802

4. Brian G. Messner - Attorney
Court Appointed
434 N. Columbia St.
Covington, LA. 70433
985-590-4428 - Tel.
985-871-8674 - Fax



Richard B. Lay #10315
R.L.C.C. - Cajun 2 - Al #14
1630 Prison Road
Cottonport, LA. 71327

13.

79.

## Order

BASED on the ~~aforesaid~~ aforesaid Motion And Memorandum OF law In Support:

It's ordered the District Attorney For the Parish of St. Tammany file a written response withine ___ days of Service, thereafter a hearing on the merits be held For oral Arguments on the ___ day of _____ 2020 at _____ O'Clock ___ m.

It's ordered Attorney Messiner is still appointed to represent defendant Lay in this matter.

It's order Acting Warden Slay produce the body of Richard B. Lay # 110315 before this Court on the ___ day of _____ 2020 at _____ o'Clock ___ m.

Clerk to Serve all Parties a copy of both the motion To Vacate And Set Aside the Conviction And Sentence; and the Memorandum OF law In Support along with this Order.

Said And done this ___ day of _____ 2020.

Please serve

1. Warren Montgomery    Judge Ad Hoc J. Winsberg
   District Attorney
   701 N. Columbia St.
   Covington, La. 70433

80.

2. Matthew Caplan
Asst. District Attorney
701 N. Columbia St.
Covington, La. 70433

3. Jeff Landry - La. Attorney General
Office of Attorney General
Livingston Building
1885 N. 3rd Street
Baton Rouge, La. 70802

4. Acting Warden Slay
Raymond Laborde Correctional Center
1630 Prison Road
Cottonport, La. 71327

5. Richard B. Lay #110315
R.L.C.C.- Cajun 2-All #14
1630 Prison Road
Cottonport, La. 71327

6. Brian G. Messiner
Attorney At Law
434 N. Columbia St.
Covington, La. 70433

81.

State of Louisiana

Versus

Richard B. Lay

Filed: __SEP - 9 2022__

No: 383759-F

22nd Judicial Court

Parish of St. Tammany

*Tara D. Cooper*

Deputy Clerk:

Tara D. Cooper, Deputy Clerk

## MOTION FOR A PRELIMINARY AND PERMANENT INJUNCTION

**NOW INTO THE COURT** comes defendant Richard B. Lay who moves this Court to issue a "Preliminary and Permanent Injunction" preventing the State of Louisiana from using this 10-2 jury verdict for impeachment and sentencing purposes in light of said conviction was obtained pursuant to state procedures that are unconstitutional under the "Equal Protection Clauses".

### JURISDICTION

Jurisdiction of this Court is invoked pursuant to Article 5, Section 2 and 16A of the Louisiana Constitution 1974; Article 3601, of the Louisiana Code Civil Procedure.

### STATEMENT OF CASE

1.    On the 20TH day of September,1995, I was found guilty of violating LSA-R.S. 40:967C by a 10-2 Jury Verdict.

2.    On the 31st day of May,2007 I was found guilty of violating LSA-R.S. 14:27/40:967C and was sentenced to 20-years hard labor under LSA-R.S. 15:529.1 in which State v. Lay #215530 was named in the Multiple Bill of Information.[1]

3.    On the 15th day of December, 2011, I was found guilty of violating LSA-R.S.14:35(B) and was sentence to 22-years under LSA-R.S. 15:529.1 in which State v. Lay #215530[2] was named in the Multiple Bill of Information.

4.    On April 20,2020 the United States Supreme Court ruled in Ramos v. Louisiana, 590 US ____, 140 S. Ct. 1390[3] that a felony conviction by a non-unanimous jury verdict violates of the Sixth and Fourteenth Amendment of the United States Constitution.

In the concurring opinion by Justice(s) Soto Mayor, Kavanaugh and Thomas it was said…

The majority vividly describes the legacy of racism that generated Louisiana's and Oregon's laws. *Ante*, at 1-2, 13-14, and n. 44. Although Ramos does not bring an equal protection challenge, the history is worthy of this Court's attention. That is not simply because that legacy existed in the first place-unfortunately, many laws and policies in this country have had some history of racial animus-but

---

1    State v. Lay #383759-F-22nd JDC/St. Tammany
2    State of Louisiana v. Lay #11-CR5-112033-22nd JDC/Washington
3    Article 1, Section 17, of the La. Constitutional. 1974; and 782 A, of LSA-C.r. P.



also because the States' legislatures never truly grappled with the laws' sordid history in reenacting them. See generally *United States v. Fordice*, 505 U. S. 717, 729, 112 S. Ct. 2727, 120 L. Ed. 2d 575 (1992) [policies that are ``traceable'' to a State's *de jure* racial segregation and that still ``have discriminatory effects'' offend the Equal Protection Clause]. Where a law otherwise is untethered to racial bias-and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it-the new law may well be free of discriminatory taint. That cannot be said of the laws at issue here[4]. While the dissent points to the ``legitimate'' reasons for Louisiana's reenactment, *post*, at 3-4, Louisiana's perhaps only effort to contend with the law's discriminatory purpose and effects came recently, when the law was repealed altogether.

Today, Louisiana's and Oregon's laws are fully-and rightly-relegated to the dustbin of history. And so, too, is *Apodaca*. While overruling precedent must be rare, this Court should not shy away from correcting its errors where the right to avoid imprisonment pursuant to unconstitutional procedures hangs in the balance.

5.    Petitioner Lay based his "Equal Protection" challenges to Article 1, Section 17 of the La. Const. 1974; and Article 782A, of LSA-C Cr. P. in which State v. Lay #215530 is per se and for interruption of 10-year prescription period[5] to allow usage of State of Louisiana v. Lay #197086; #130, 364, and #131/275 which was not known to him or his counsel and did not become known to him until Ramos, supra.

Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(A) of the Louisiana Code of Criminal Procedure violates defendant Lay's right to a unanimous jury verdict under both the USCA Amendment 14; and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974 in light of the fact they were adopted for the sole purpose to deprive African Americans of the equal protection of rights guaranteed by the United States Constitution in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Lay is an African-American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." *State v. Petrovich*, 396 So.2d 1318, 1322 (La. 1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. *See id. See also Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles*, 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or

---

4    See Senate Bill of Information #221 amending La. R.S. 15:529.1 effective November 1, 2017 reducing the cleansing period from 10 to 5-years for non-violent offense is applicable upon re-sentencing.
5    See Marshal v. United States, 414 US 417, 94 S. Ct. 700, 38 L. Ed. 2d 618 (1974)

83.

political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

In *Sibley*, this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis,  it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. *Sibley* at 1107. Under the first level of scrutiny enumerated in *Sibley*, the law creating the classification completely falls. *See  Moore v. RLCC Technologies, Inc.* p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal protection and the proponent of the law carries the burden of proving that the classification substantially furthers an important government interest. *See id.* p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. *See id.* p. 11, 668 So.2d 1141. *See also Soloco*, *supra*; *Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359; *Manuel v. State*, 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution and Article 782. (A) of the Louisiana  code of Criminal Procedure to be Amended to require unanimity verdicts on or after effective assistance of counsel date.

## LAW AND ARGUMENT 1

The opening address at the 1898 Louisiana Constitutional Convention made clear that the point of the entire Convention was to limit African-American participation in the democratic process and to "perpetuate the supremacy of the Anglo-Saxon race in Louisiana." Official Journal of the Proceedings



of the Constitutional Convention of the State of Louisiana, 8-9 (1898) [hereinafter "Journal"]. Closing the Convention, Honorable Thomas J. Semmes celebrated the putatively succession "mission" of the delegates "to establish the supremacy of the white race in this state." Id. at 374.

When discussing the provisions adopted to prevent African-American suffrage, a likeminded delegate explained:

The Supreme Court of the United States in the Wilson case, referring to that, said that they had swept the filed of expedients, but they were permissible expedients, and that is what we have done in order to keep the negro from exercising suffrage. What care I whether the test we have put be a new one or an old one? what care I whether it be more or less ridiculous or not? doesn't it meet the case? Doesn't it let the white man vote, and doesn't it stop the negro from voting, and isn't that what we came here for? [Applause] Constitutional Convention of the State of Louisiana, supra at 380.

In his closing remarks, President Kruttschnit bemoaned that the delegates had been constrained by the Fifteenth Amendment such that they could not provide what they would have wished. Universal White manhood suffrage and the exclusion from the suffrage of every man with a trace of African blood in his veins: Id. at 380. He went on to proclaim:

I say to you, that we can appeal to the conscience of the nation, both judicial and legislative and I don't believe that they will take the responsibility of striking down the system that we have reared in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon case in Louisiana. Id. at 381.

The proponents of those rules sometimes tried to justify then under the guise of cost saving devices, but commentators have directly linked the diminution of the jury trial right to the Convention's larger effort "to consolidate Democratic power in the hands of the 'right pp.,' thereby passing the poorer sorts, just as the suffrage provision did." W. Billings & E. Haas, In Search of Fundamental law: Louisiana's Constitutions, 1812-1874, The Center for Louisiana Studies (1993), pp. 93-109. See also Thomas Aiello, Jim Crow's Last stand, non-unanimous Criminal Jury Verdicts in Louisiana, LSU Press, 2015; Angela A. Allen-Bell, These Jury System are Vestiges of White Supremacy, Washington Post, 9/22/2017. The 1898 Convention substantially diminished the Sixth Amendment jury trial guarantee through non-unanimity rules, the elimination of misdemeanor juries, and the reduction of jury size for lesser felonies.

In recent debates in the Louisiana Legislature John DeRossier, district attorney in Calcasieu Parish, told the panel that the law's roots in White Supremacy are not sufficient enough to change those



historical racists provisions: I've heard a lot about the system being adopted as a vestige of slavery. I have no reason to doubt that. I'm not proud of that, that's the way it started, but it is what it is…" Associated Press, Rid to Strike Louisiana's Jim Crow-era Jury law advances in State House – NOLA. come (2018), http://www.nola.come/crime/index/ssp/2018/04/bid_to_strike_louisiana_jim_c.html [last visited May 23, 2018).

The Louisiana Supreme Court has previously confronted the uncorrected problems of the 1898 Constitutional Convention. It held:

The need to eradicate past evil effects and to prevent the continuation or repetition in the future of the discriminatory practices shown to be so deeply engrained in the laws, policies, and traditions of the State of Louisiana, completely justified the District Court in entering the decree it did and in retaining jurisdiction of the entire case to hear any evidence of discrimination in other parishes and to enter such orders as justice from time to time might require. Louisiana v. United States, 380 US 145, 156, 85 S. Ct. 817, 823 (1965). See also Robert J. Smith, Bidish J. Sarma, How and Why Race Continues to Influence the Administration of Criminal Justice, Vol. 72 No. 2 La. Law Rev. 361, 375 (2012) (The "Delegate achieved these anti-participation goals not only by restricting access to the ballot box but also by diluting the voice of members of racial minority groups by allowing non-unanimous jury verdicts in criminal cases." Id. at 376 (noting commentators at the time of constitutional Convention's concern that African Americans presence on juries would prevent convictions, and result in hijacking sentencing outcomes]; Thomas Aiello, Jim Crow's Last stand, non-unanimous Criminal Jury Verdicts in Louisiana, LSU Press, 2015; Aliza Kaplan, Amy Saack overturning Apodaca v. Oregon should be easy: non-unanimous verdicts in criminal cases undermine the credibility of our justice system, vol. 95 Oregon Law Review No. 1, 3 (February 2017); Angela A. Allen-Bell, These Jury System are Vestiges of White Supremacy, Washington Post, 9/22/2017.

Ultimately, Petitioner Lay does not take on the responsibility to prove that the non-unanimous jury verdicts proceed on an unbroken line of racism from 1898 to 2020, or even that the rule imposed a racist silencing of jurors in his own case. Instead, Petitioner Lay must simply demonstrate that Article 1, Section 17 of the Louisiana Constitution 1974 and La. C.Cr.P. Art. 782.A – non-unanimous jury verdicts were enacted for the sole purpose to retain White Supremacy insofar to deprive African Americans and other minority (non-Anglo-Saxon) of their rights to vote and fear that their presence on juries would prevent convictions and result in hijacking sentencing outcomes.



Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(A) of the Louisiana Code of Criminal Procedure violates defendant Lay's right to a unanimous jury verdict under both the USCA Amend 6 & 14[6] as held by the United States Supreme Court in <u>Ramos v. Louisiana</u>, 590 U.S. ___, 140 S. Ct. 1390, 206 L. Ed. 2d 583 (2020); and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974[7] in light of the fact they were adopted for the sole purpose to deprive African Americans of the equal protection of rights guaranteed by the United States Constitution in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Lay is an African-American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." <u>State v. Petrovich</u>, 396 So.2d 1318, 1322 (La. 1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. <u>See id. See also</u> <u>Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles</u>, 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

In <u>Sibley</u>, this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth, age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. <u>Sibley</u> at 1107. Under the first level of scrutiny enumerated in <u>Sibley</u>, the law creating the classification completely falls. <u>See</u> <u>Moore v. RLCC Technologies, Inc.</u> p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal

---

6   See Marshal v. United States, 414 US 417, 94 S. ct. 700, 38 L. Ed. 2d 618 (1974)
7   State v. Brown, 648 So. 2D 872 (La. 1995)

6



protection and the proponent of the law carries the burden of proving that the classification substantially furthers an important government interest. *See id.* p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. *See id.* p. 11, 668 So.2d 1141. *See also Soloco, supra; Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury,* 96-0543 (La. 11/25/96), 684 So.2d 359; *Manuel v. State,* 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution of 1974 and Article 782(A) of the Louisiana Code of Criminal Procedure to be amended to require unanimity verdicts but did not make this requirement retroactive. On the 20th day of April 2020, the United States Supreme Court in <u>Ramos</u>, supra, held the State of Louisiana non-unanimous verdict system violated Amendment 5 and 6 applicable to the states through the Fourteenth Amendment but did not decide it violated the equal protection clause[8].

## LAW AND ARGUMENT 2

On April 20, 2020 the United States Supreme Court ruled in Ramos v. Louisiana, 2020 US Lexis 2407 held: "Ramos felony conviction by a non- unanimous jury is unconstitutional because the Sixth Amendments protection against non-unanimous felony guilty verdicts applies against the States through Due Process Clause of the Fourteenth Amendment"

In the concurring opinion by Justice(s) Soto Mayor, Kavanaugh and Thomas it was said...

The majority vividly describes the legacy of racism that generated <u>Louisiana's</u> and <u>Oregon's</u> laws. *Ante,* at 1-2, 13-14, and n. 44. Although <u>Ramos does not bring an equal protection challenge</u>, the history is worthy of this <u>Court's</u> attention. That is not simply because that legacy existed in the first place-unfortunately, many laws and policies in this country have had some history of racial animus-but also because the States' legislatures never truly grappled with the laws' sordid history in reenacting them. See generally *United States v. Fordice*, 505 U. S. 717, 729, 112 S. Ct. 2727, <u>120 L. Ed. 2d 575</u> (1992) [policies that are ``traceable" to a State's *de jure* racial segregation and that still ``have discriminatory effects" offend the <u>Equal Protection Clause</u>]. Where a law otherwise is untethered to

---

8    See generally United States v. Fordice, 505 US 717, 729, 112 S. ct. 2727, 120 La. R.S. Ed. 2d 575 [1992][policies that are "traceable" to a state's de jure racial segregation and still "have discriminatory effects" offend the Equal Protection Clause].

racial bias-and perhaps also where a legislature actually confronts a law's tawdry past in reenacting it-the new law may well be free of discriminatory taint. That cannot be said of the laws at issue here[9]. While the dissent points to the ``legitimate'' reasons for Louisiana's reenactment, *post,* at 3-4, Louisiana's perhaps only effort to contend with the law's discriminatory purpose and effects came recently, when the law was repealed altogether.

Today, Louisiana's and Oregon's laws are fully-and rightly-relegated to the dustbin of history. And so, too, is *Apodaca.* While overruling precedent must be rare, this Court should not shy away from correcting its errors where the right to avoid imprisonment pursuant to unconstitutional procedures hangs in the balance.

Article 1, Section 17 of the Louisiana Constitution 1974; Article 782(A) of the Louisiana Code of Criminal Procedure violates defendant Lay's right to a unanimous jury verdict under both the USCA Amendment 14; and Article 1, Section 2 and 3 of the Louisiana Constitution of 1974 in light of the fact they were adopted for the sole purpose to deprive African Americans of the equal protection of rights guaranteed by the United States Constitution in order to protect the purity of the ballot and to perpetuate the Supremacy of the Anglo-Saxon race in Louisiana. Defendant Lay is an African-American citizen.

"Generally, the guarantee of equal protection requires that state laws affect alike all persons and interests similarly situated." *State v. Petrovich,* 396 So.2d 1318, 1322 (La. 1981). The legislature has great latitude in making laws and in creating classifications under those laws, so long as those classifications can withstand constitutional muster. *See id. See also  Burmaster v. Gravity Drainage Dist. No. 2 of the Parish of St. Charles,* 366 So.2d 1381, 1388 (La. 1978). La. Const. art. I, 3 provides:

No person shall be denied the equal protection of the laws. No law shall discriminate against a person because of race or religious ideas, beliefs, or affiliations. No law shall arbitrarily, capriciously, or unreasonably discriminate against a person because of birth, age, sex, culture, physical condition, or political ideas or affiliations. Slavery and involuntary servitude are prohibited, except in the latter case as punishment for crime.

In *Sibley,* this court set forth the analysis required by La. Const. art. I, 3 in the face of a legislative classification:

Article I, Section 3 commands the courts to decline enforcement of a legislative classification of individuals in three different situations: (1) When the law classifies individuals by race or religious beliefs, it shall be repudiated completely; (2) When the statute classifies persons on the basis of birth,

---

9    Article 1, Section 17, of the La. Constitutional 1974; and 782 A, of LaC.Cr.P.

age, sex, culture, physical condition, or political ideas or affiliations, its enforcement shall be refused unless the state or other advocate of the classification shows that the classification has a reasonable basis; (3) When the law classifies individuals on any other basis, it shall be rejected whenever a member of a disadvantaged class shows that it does not suitably further any appropriate state interest. *Sibley* at 1107. Under the first level of scrutiny enumerated in *Sibley*, the law creating the classification completely falls. *See Moore v. RLCC Technologies, Inc.* p. 9, 668 So.2d at 1140. Under the second level of scrutiny, the law creating the classification [Pg 7] is prima facie proof of a denial of equal protection and the proponent of the law carries the burden of proving that the classification substantially furthers an important government interest. *See id.* p. 9-10, 668 So.2d at 1140-1141. Under the third level of scrutiny, the law creating the classification is presumed to be constitutional and the party challenging the constitutionality of the law has the burden of proving it unconstitutional by showing the classification does not suitably further any appropriate state interest. *See id.* p. 11, 668 So.2d 1141. *See also Soloco*, *supra*; *Med Exp. Ambulance Service, Inc. v. Evangeline Parish Police Jury*, 96-0543 (La. 11/25/96), 684 So.2d 359; *Manuel v. State*, 95-2189 (La. 7/2/96), 677 So.2d 116.

The Louisiana provisions authorizing non-unanimous jury verdicts were introduced into our law by the Constitutional Convention of 1898 for the purpose of discrimination against African-Americans; the provision(s) had, and continue to have, the desired discriminatory effect. On the 6th day of November, 2018, the Louisiana's Legislature caused Article 1, Section 17 of the Louisiana Constitution and Article 782. (A) of the Louisiana code of Criminal Procedure to be Amended to require unanimity verdicts on or after effective date.

## DISCUSSION

Louisiana Code of Civil Procedure article 3601A provides that [a] injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law; "The writ of injunction is a harsh, drastic, and extraordinary remedy. It should only issue in those instances where the moving party is threatened with irreparable loss or injury and is without an adequate remedy at law. Irreparable injury has been *4 interpreted to mean a loss that cannot be adequately compensated in money damages or measured by a pecuniary standard. Morris v. Trust Technologies, LLC, 18-0831 (La. App. 1st Cir. 2/28/19), 274 S. 3d 15, 18-19.

Generally, plaintiff's seeking issuance of a preliminary injunction bear the burden of establishing by a preponderance of the evidence a prima facie showing that they will prevail on the merits and that irreparable injury or loss will result without the preliminary injunction. LSA-C.C.P. art.



3601; Hill v. Jindal, 14-1757 (La. App. 1 Cir. 6/17/15), 175 So. 3d 988, 1002, **writ denied**, 15-1394 (La. 10/23/15), 179 So. 3d 600. However, a threat of irreparable injury need not be shown when the deprivation of a constitutional right is at issue or when the act sought to be enjoined is unlawful. **Hill**, 175 So. 3d at 1002. The only issue to be considered at a hearing on a preliminary injunction is whether the moving party has met its burden of proving that it is entitled to the relief sought as a matter of law and the likelihood that it will likely prevail on the merits of the case. **Louisiana Ass'n of Self-Insured Employers v. Louisiana Workforce Com'n**, 11-1892 (La. App. 1 Cir. 3/28/12), 92 So.3d 397, 400.

## RELIEF

Hold State v. Lay #215530-C a 10-2 verdict violates the "Equal Protection Clause" of the United States and the State of Louisiana entitling Petitioner Lay to an Injunction prohibiting its use for impeachment and or sentencing purposes in State v. Lay #383759-F-22nd JDC/St. Tammany and State v. Lay #11-CR5-112033-22nd JDC/Washington.

Respectfully submitted this ___ day of September, 2022 under the penalty of perjury and good-faith.

Richard B. Lay #110315
Raymond Laborde Correctional Center
Cajun 2 C2
1630 Prison Road
Cottonport Louisiana 71327

10

91.

State of Louisiana

Versus

Richard B. Lay

SEP - 9 2022
Filed:

No: 383759-F

22ⁿᵈ Judicial District Court

Parish of St. Tammany

*Tara D. Cooper*
Deputy Clerk:
Tara D. Cooper, Deputy Clerk

## ORDER

It's ordered Warren Montgomery-District Attorney show cause before this Court on the ___day

of _____, 2022 at ____O' Clock ____m., why the Preliminary and Permanent

Injunction restraining the use of State v. Lay #215530 for impeachment and or sentencing purposes in

any Louisiana Court with Criminal Jurisdiction for violating the "Equal Protection Clause".

It's ordered Marcus Myers-Warden produce the body of Richard B. Lay DOC #110315 for this

hearing.

Clerk of Court to serve all parties a copy of this "Motion" and "Order".

Said and done this ____day of _____, 2022.

_____
Judge

**PLEASE SERVE:**

- **Warren Montgomery**
  District Attorney
  701 N. Columbia Street
  Covington LA 70433

- **Richard B. Lay #110315**
  Raymond Laborde Correctional Center
  Cajun 2 C2
  1630 Prison Road
  Cottonport Louisiana 71327

- **Marcus Myers-Warden**
  Raymond Laborde Correctional Center
  1630 Prison Road
  Cottonport Louisiana 71327

- **Jeff Landry-Attorney General**
  State of Louisiana
  1885 N. 3ʳᵈ Street
  Baton Rouge, LA 70804-9304

*Denied*
*Jerome M. Winsberg*
*Judge*
*September 30, 2022*

11

# The Supreme Court of the State of Louisiana

STATE EX REL. RICHARD B. LAY

VS.                                              NO.  2014-KH-2549

STATE OF LOUISIANA


– – – – –

IN RE:  Richard B. Lay; – Plaintiff; Applying For Reconsideration of
this court's action dated October 2, 2015, Parish of St. Tammany,
22nd Judicial District Court Div. J, No. 383,759; to the Court of
Appeal, First Circuit, Nos. 2014 KW 1074, 2014 KW 1212;

– – – – –


**November 6, 2015**


Reconsideration denied. See per curiam.

                          GGG

                          JTK

                          MRC

                          JDH

                          SJC


    WEIMER, J.,  recused.


Supreme Court of Louisiana
November 6, 2015

*Carmen B. You*

Deputy    Clerk of Court
          For the Court



TWENTY-SECOND JUDICIAL DISTRICT COURT
FOR THE PARISH OF ST. TAMMANY
STATE OF LOUISIANA

NO. 383759

DIVISION "F"

STATE OF LOUISIANA

VERSUS

RICHARD LAY

St. Tammany
Melissa R. Henry - Clerk of Court
Brandi Abadie - Deputy Clerk
Case 383759
E-Filed on: 7/27/23 10:13 AM
Filed on: 7/27/23 10:16 AM

FILED: _____      _____
                                              DEPUTY CLERK

### NOTICE OF EX PARTE COMMUNICATION WITH THE COURT

MAY IT PLEASE THE COURT:

The State submits this pleading so that the record reflects an *ex parte* communication between the prosecution and the trial court.

1. Defendant Richard Lay submitted a letter on or about June 20, 2023 to District Attorney Warren Montgomery requesting a sentence reduction pursuant to Article 930.10 of the Code of Criminal Procedure.

2. The Court (The Hon. Jerome Winsberg, Judge ad hoc) wrote a note to the clerk's office directing that Mr. Lay's letter be brought to the attention of the undersigned counsel, stating: "Matt, I would like you to review this and see if your office can comply with Mr. Lay's request. I would like to grant it. Please contact me when you have considered this."

3. The undersigned received Judge Winsberg's note on or about July 18, 2023.

4. The undersigned contacted Judge Winsberg by telephone on the morning of July 21, 2023, and discussed Mr. Lay's letter.

5. The undersigned informed Judge Winsberg as follows:

   a. Mr. Lay correctly noted the existence of a case in which a defendant's murder conviction and life sentence were reduced to manslaughter and term of thirty-five years (see defendant's letter, footnote 1) pursuant to Article 930.10 of the Code of Criminal Procedure.

   b. The Louisiana Attorney General has challenged the constitutionality of Article 930.10, arguing that it usurps the governor's constitutional prerogative to grant clemency.

   c. The Louisiana Supreme Court has agreed to hear the Attorney General's challenge to the constitutionality of Article 930.10 of the Code of Criminal Procedure. (The news article attached to the defendant's letter is a report on the oral argument held in that case.)

- 1 of 2 -



d. The Louisiana Supreme Court has not yet issued its judgment concerning the constitutionality of Article 930.10.

e. The district attorney is awaiting a decision from the Louisiana Supreme Court before entertaining requests for reduction of sentence under Article 930.10 of the Code of Criminal Procedure. (The news article attached to the defendant's letter reports that "prosecutors statewide have halted its use pending the high court's decision." That is true at least as to St. Tammany and Washington Parishes.)

f. The district attorney will consider the defendant's request in the event that the Louisiana Supreme Court upholds the constitutional validity of Article 930.10 of the Code of Criminal Procedure.

6. Judge Winsberg indicated that he understood the district attorney's position.

7. Judge Winsberg also requested that the undersigned let the record reflect that the above-summarized conversation occurred.

8. Aside from the exchange of customary pleasantries, this is the sum total of the undersigned's conversation with the Court about the case.

Respectfully submitted,

*[/s] Matthew Caplan*
Matthew Caplan, LSBA #31650
Assistant District Attorney

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the foregoing pleading to the petitioner by mailing a copy, postage pre-paid, to:

Richard Lay, # 110315
Elayn Hunt Correctional Center
6925 Highway 74
St. Gabriel, LA 70776

This the 27th day of July, 2023, at Covington, Louisiana

*[/s] Matthew Caplan*
Matthew Caplan, LSBA #31650
Assistant District Attorney

- 2 of 2 -



Exhibits

To: Matthew Caplain - Asst. DA
701 N. Columbia St.
Covington, La 70434

Dear Sir,

As I understand your response to my Quest for a reduction of 2 years of the 22 years imposed by Judge Ad Hoc Jerome Winsberg in #11-CRS-112033-22nd JDC/WASH. I believe the Attorney General was waiting for the right type of case to challenge the Statute.

Enclosed is a Application For Post Conviction; Application For Habeas Corpus were, originally denied ruled on Appeal. But vacated at my request since no issue was heard on appeal due to appointed Counsel filed a non-merit Brief. This petition provides a remedy to my sentence and conviction but I want my two years taken off the 22-year sentence for dismissal of all Post Conviction and Sentencing relief.

I'm forwarding a copy of the outstanding criminal Petitions

Sincerely I Remain

CC                           Richard B. Coy 110315
Jerome Winsberg - Judge

3.                    95.

EHCC- Fox 2 B
P.O Box 174
St. Gabriel, LA
90776

89. 96.

PX716-4-4

# New trial awarded in 2015 murder case

## Split jury convicted man in vigilante-style killing in Zachary

**BY JOE GYAN JR.**
Staff writer

A Walker man serving a life sentence in the 2015 vigilante-style slaying of his girlfriend's 2-month-old son in Zachary was granted a new trial Thursday.

A state appellate court threw out Jace Crehan's nonunanimous second-degree murder conviction and resulting mandatory life prison term and sent the case back to the 19th Judicial District Court, to be tried again.

The 1st Circuit Court of Appeal in Baton Rouge cited the U.S. Supreme Court's April ruling outlawing split-jury verdicts in criminal cases.

An East Baton Rouge Parish jury voted 11-1 in 2017 to find Crehan, now 26, guilty of second-degree murder in the Crehan's case back to the 1st Circuit a week after the high court issued its decision in Ramos.

The 1st Circuit noted that Crehan claimed in a motion for a new trial before his appeal that Louisiana's nonunanimous jury verdict provisions were unconstitutional.

The Supreme Court's April ruling, in the case of Evangelisto Ramos out of New Orleans, held that the right to a jury trial under the U.S. Constitution's Sixth Amendment requires a unanimous verdict to convict a defendant of a serious crime.

The Ramos Court further noted that its ruling applied to those whose cases are still pending on direct appeal.

"We plan to talk to our client and the East Baton Rouge district attorney and move forward from there," he said. "It is always a good feeling when a life sentence is vacated and a new trial is ordered."

East Baton Rouge District Attorney Hillar Moore III said his office respects the opinions from the U.S. Supreme Court and the 1st Circuit and "will move forward accordingly to ensure that our prosecution of this case is aligned with the opinions of those courts."

Crehan's girlfriend, Britta ny Monk, 22, pleaded guilty to

The Supreme Court had sent to plead guilty to the same charge before his trial, but prosecutors turned him in direction.

Noce, who two weeks before his death had been put on probation after pleading "No contest to mistreating Monk as a child, was stabbed, strangled and stuffed inside a 55-gallon barrel that sat beside him 10 to 15 times while Crehan held him down.

At the time of Crehan's conviction, split-jury verdicts were legal in Louisiana. In fall 2018, state voters approved a constitutional amendment doing away with Louisiana's Jim Crow-era nonunanimous jury law. The new state law applies only to crimes that occurred only on or after Jan 1, 2019.

The Supreme Court's April ruling applies to all future trials, and to inmates who were convicted by divided juries and haven't exhausted their appeals.

**Email Joe Gyan Jr. at at** jgyan@theadvocate.com.

manslaughter in the killing of Noce and was sentenced to 35 years in prison, Crehan was retrieved from Noce's kitchen by Monk, at Crehan's direction.

Monk testified at Crehan's trial that she sprayed Noce in the face with a man's body spray while Crehan wrestled with him. She denied stabbing Noce but admitted punching



Monk

Monk said his boyfriend of Crehan was a former Monk's mother and raised Monk for about 10 years after her mother abandoned her. He denied abusing Monk.

Noce used to make wine.

Monk was 17 and seven months pregnant with Crehan's child when she and Crehan's child broke into Noce's trailer the night of July 4, 2015.

Monk is now trying to have her sentence reduced.

Exhibit 1    PCR

# Convicted killer granted new hearing

By Dan Copp
Staff Writer



Verdin Jr.

A Dulac man convicted by a split jury five years ago in the shooting death of a shrimp boat captain has been granted a new hearing.

On a 10-2 verdict, Richard Verdin Jr., 36, was convicted on Oct. 15, 2015 of second-degree murder of 49-year-old shrimp boat captain Hun Vo. According to authorities, Verdin was arguing with other men over a drug transaction, but the victim was not involved in the dispute.

The Terrebonne Parish Sheriff's Office responded to a 911 call on June 24, 2012, regarding a man who was shot to death on a docked shrimp boat at Jensen's Seafood in Dulac. The victim, identified as Vo, died from a single gunshot wound to the chest, the Sheriff's Office said.

Police developed Verdin as a suspect and arrested him on the morning of June 26, 2012, at his girlfriend's house.

As a result of the conviction, District Judge Randy Bethancourt sentenced Verdin to life in prison without parole, probation or suspension of sentence.

Following a series of unsuccessful appeals, Verdin filed a petition for post-conviction relief in District Court. Bethancourt denied that petition on

Sept. 11, prompting the defendant to take the matter to the 1st Circuit Court of Appeal in Baton Rouge.

Verdin contended in court papers that his constitutional rights were violated when his right to testify during his trial was taken from him. He also argued that he was denied effective assistance of counsel, and the court abused its discretion when it allowed him to be convicted by a split jury.

The defendant also contends a recording of a 911 call which was played during the trial contained hearsay testimony. Lastly, Verdin said there was insufficient evidence to warrant a conviction.

"Mr. Verdin is not disputing that there was a murder; he is merely disputing the fact that he was perpetrator," the defendant said in court papers. "The state has completely failed to present any evidence as to the actual identity of the perpetrator in this matter. In fact, the only witness to the argument which allegedly led up to the shooting was unable to identify the person arguing with the victim."

In a March 22 decision, the appeals court vacated

Bethancourt's ruling in part for the sole purpose of remanding the case to the District Court for a hearing regarding Verdin's conviction by a non-unanimous jury verdict. In all other respects, Verdin's appeal was denied.

In April, the U.S. Supreme Court ruled that jury verdicts must be unanimous. The ruling in that case overturned the conviction of Evangelisto Ramos, who was convicted of the second-degree murder of a prostitute in New Orleans on a 10-2 vote.

Assistant District Attorney Ellen Doskey, who handles appeals for Terrebonne, said cases like Verdin's will be decided in the courts.

"The U.S. Supreme Court in Ramos did not address whether the decision and the new rule of law applies to those defendants who have pending post-conviction relief proceedings," Doskey said. "The Ramos decision only applies to those defendants who have a pending appeal. This issue of whether new rule of law applies to those defendants who have pending PCR applications will have to be litigated in the courts."

Verdin is serving his life sentence at the Louisiana State Penitentiary in Angola.

*Staff Writer Dan Copp*

can be reached at 448-7639 or at dan.copp@







Exhibit #2

*Exhibit*

The Advocate ● theadvocate.com ● Friday, June 5, 2020 ● 3B

# Convicted BR killer may get new trial

## Split-jury verdict issue leads to motion in 2016 case

BY JOE GYAN JR.
Staff writer

A Baton Rouge man, who was 17 when he randomly fired into a crowd on LaMarque Avenue in 2014 and killed another man, may be on the verge of getting a new trial, his attorney said Thursday.

Brandon Boyd, 24, was convicted of second-degree murder by a split-jury verdict in 2016 and sentenced to life in prison without parole.

Boyd, who claims his penalty is unconstitutional excessive, had an appeal pending on that issue at the Louisiana Supreme Court when the U.S. Supreme Court in April used the New Orleans murder case of Evangelisto Ramos to outlaw nonunanimous jury verdicts in criminal cases.

Boyd's lawyer, Michael Fiser, then filed a motion in May asking the state Supreme Court to send his case back to an appellate court to an appellate court "in light of the Ramos decision."

Boyd's sentencing arguments were supposed to be heard by the state high court next week, but on Wednesday, the justices in unanimous fashion sent his case back to the state 1st Circuit Court of Appeal to determine whether he should be retried.

Fiser said Thursday he's optimistic that the appeals court "will do the right thing" and throw out Boyd's conviction.

"It's clear after Ramos, Boyd had a right to a unanimous concurrence of all 12 jurors for the criminal offense of which he was convicted, and the state Supreme Court to send his case back an email.

"His conviction, yet another product of Jim Crow-era non-unanimous jury law ... we will continue to ... by Louisiana's latest Supreme Court's decision to remand this case and seek to resolve any questions regarding the scope of the Ramos decision with respect to Boyd ...," Fiser wrote.

Fiser acknowledged the issue of unanimity was not raised at the trial because Louisiana at the time did not require unanimous jury verdicts.

Boyd had one of 12 jurors who agreed in December to convict him of second-degree murder.

The state Supreme Court firmed Boyd's sentence last year, Chief Judge Vanessa Whipple said the fact that April ruling in Ramos applies to all future trials, and to inmates who were convicted by Judge Mike McDonald called "does little to mitigate the atrocity of the crime." Circuit

East Baton Rouge Parish District Attorney Hillar Moore III said the state ...

Higginbotham found Boyd, who fired a gun several times into a street brawl in which he was not involved, to be "the worst of the worst type of person."

Boyd and Myles were among those who had gathered in a parking lot to watch four people fight, police have said. At some point during the fight, Boyd — who knew two of the people involved in the fight — pulled out a gun and fired multiple shots.

For juvenile killers found not to be beyond rehabilitation, Louisiana law allows them a chance at a parole hearing after they've spent 25 years in jail.

When the 1st Circuit affirmed Boyd's sentence last year, Chief Judge Vanessa Whipple said the fact that Boyd was a first-time offender "does little to mitigate the atrocity of the crime." Circuit Judge Mike McDonald called Boyd a "threat to society" who "deserved" his sentence.

The U.S. Supreme Court's April ruling in Ramos applies to all future trials, and to inmates who were convicted by divided juries and haven't exhausted their appeals.

The ruling to scratch four-pronged constitutional amendment approved by Louisiana voters in 2018 did away with nonunanimous jury verdicts but applies only to crimes that occurred on or after Jan. 1, 2019.

Higginbotham found Boyd, Myles, 24, of Baton Rouge, was killed in the shooting. Another man who was 19 at the time was shot in the arm.

Email Joe Gyan Jr. at
jgyan@theadvocate.com.

99.

# The Supreme Court of the State of Louisiana

STATE OF LOUISIANA

VS.

No.2019-KO-01611

BRANDON R. LAURANT

– – – – – –

IN RE: Brandon R. Laurant - Applicant Defendant; Applying For Writ Of Certiorari, Parish of Orleans Criminal, Criminal District Court Number(s) 530,169, Court of Appeal, Fourth Circuit, Number(s) 2019-KA-0292;

– – – – – –

June 03, 2020

Writ application granted. See per curiam.

JTG

BJJ

JLW

JDH

SJC

WJC

JHB

Supreme Court of Louisiana
June 03, 2020

_Kate Marianowic_

Chief Deputy   Clerk of Court
For the Court

3.   100.

*Exhibit 3*

## SUPREME COURT OF LOUISIANA

No. 2019-KO-01611

JUN 0 3 2020

STATE OF LOUISIANA

v.

BRANDON R. LAURENT

ON WRIT OF CERTIORARI TO THE FOURTH CIRCUIT,
COURT OF APPEAL, PARISH OF ORLEANS

PER CURIAM:

Writ granted. The matter is remanded to the court of appeal for further proceedings and to conduct a new error patent review in light of *Ramos v. Louisiana*, 590 U.S. —, 140 S.Ct. 1390, — L.Ed.2d — (2020). If the non-unanimous jury claim was not preserved for review in the trial court or was abandoned during any stage of the proceedings, the court of appeal should nonetheless consider the issue as part of its error patent review. *See* La.C.Cr.P. art. 920(2).

The present matter was pending on direct review when *Ramos v. Louisiana* was decided, and therefore the holding of *Ramos* applies. *See Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987). Nothing herein should be construed as a determination as to whether that ruling will apply retroactively on state collateral review to those convictions and sentences that were final when *Ramos* was decided.



101.

*Exhibit 4*

*Exhibit 4*

# New trial awarded in 2015 murder case

## Split jury convicted man in vigilante-style killing in Zachary

**BY JOE GYAN JR.**
Staff writer



Crehan

A Walker man serving a life sentence in the 2015 vigilante-style slaying of his girlfriend's convicted molester in Zachary was granted a new trial Thursday.

A state appellate court threw out Aace Crehan's nonunanimous second-degree murder conviction and resulting mandatory life prison term and sent the case back to the 19th Judicial District Court to be tried again.

The 1st Circuit Court of Appeal in Baton Rouge cited the U.S. Supreme Court's April ruling outlawing split-jury verdicts in criminal cases.

An East Baton Rouge Parish jury voted 11-1 in 2017 to

find Crehan, now 26, guilty of second-degree murder in the stabbing and strangling death of Robert Noce Jr. in Zachary.

The 1st Circuit noted that Crehan's case back to the 1st Crehan claimed in a motion for a new trial and in his appeal that Louisiana's nonunanimous jury verdict provisions were unconstitutional.

The Supreme Court's April ruling in the case of Evangelisto Ramos out of New Orleans held that the right to a jury trial under the U.S. Constitution's Sixth Amendment requires a unanimous verdict to convict a defendant of a serious crime.

"The Ramos Court further noted that its ruling applied to those defendants convicted of felonies by nonunanimous verdicts whose cases are still pending on direct appeal," the 1st Circuit said Thursday in setting aside Crehan's conviction and sentence, and ordering a new trial.

Crehan's girlfriend, Britany Monk, 24, pleaded guilty to

The Supreme Court had sent Crehan's case back to the 1st Circuit a week after the high court issued its decision in Ramos.

One of Crehan's lawyers, Franz Borghardt, said the appeals court made "the right decision" based on the Supreme Court ruling.

"We plan to talk to our client and the East Baton Rouge district attorney and move forward from there," he said. "It is always a good feeling when a life sentence is vacated and a new trial is ordered."

East Baton Rouge Parish District Attorney Hillar Moore III said his office respects the opinions from the U.S. Supreme Court and state 1st Circuit and "will move forward accordingly to ensure that our prosecution of this case is aligned with" the opinions of those courts.



Monk

Monk was 17 and seven months pregnant with Crehan's child when she and Crehan broke into Noce's trailer the night of July 4, 2015.

manslaughter in the killing of Noce and was sentenced to 35 years in prison. Crehan tried to plead guilty to the same charge but turned him down.

Noce, who two weeks before his death had been put on probation after pleading "no contest" to molesting Monk as a child, was stabbed, strangled and stuffed inside a 55-gallon barrel that Noce used to make wine.

No ce, 47, was a former boyfriend of Monk's mother and raised Monk for about 10 years after her mother abandoned her. He denied abusing Monk.

Crehan told detectives that the knife he used to stab Noce was retrieved from Noce's kitchen by Monk, at Crehan's direction.

Monk testified at Crehan's trial that she sprayed Noce in the face with a chemical spray while Crehan wrestled his death and punching him 10 to 15 times while Crehan held him down.

At the time of Crehan's conviction, split-jury verdicts were legal in Louisiana. In fall 2018, state voters approved a constitutional amendment doing away with Louisiana's Jim Crow-era nonunanimous jury law. The new state law applies only to crimes that occurred on or after the Supreme Court's April ruling applies to all future trials, and to inmates who were convicted by divided juries and haven't exhausted their appeals.

*Email Joe Gyan Jr. at jgyan@theadvocate.com.*



*102.*

# AG: Man convicted of killing ex-Saints star should get new trial

**BY MATT SLEDGE**
Staff writer

Cardell Hayes, convicted of killing former New Orleans Saints star Will Smith, must receive a new trial because the guilty verdict was returned by a nonunanimous jury, the Louisiana Attorney General's Office concedes.

The prosecutors acknowledged in a filing with the U.S. Supreme Court on Monday that Hayes' conviction must be tossed because it was rendered by a split jury and his case remains on appeal. The brief, which also listed Orleans Parish District Attorney Leon Cannizzaro's office as one of the submitting agencies, will lead to the reversal of Hayes' conviction on counts of manslaughter and attempted manslaughter for killing Smith and attempted manslaughter for shooting and wounding the defensive lineman's wife, Racquel Smith.


Hayes

Smith's death on a Lower Garden District street on the night of April 9, 2016, cast a pall over New Orleans and led to a high-profile trial where Hayes argued that he shot the Saints player in self-defense after a traffic dispute. Most jurors didn't buy the tow truck driver's assertion, convicting him 10-2 of manslaughter and attempted manslaughter.

Criminal District Court Judge Camille Buras sentenced Hayes to 25 years in prison.

But in April, the Supreme Court ruled that Louisiana and Oregon's unusual laws allowing split jury convictions were unconstitutional. Detractors of the law in Louisiana had pointed to its origins in a White supremacist state Constitutional convention in 1898.

Hayes' attorney, a representative for the Smith family and the Orleans District Attorney's Office didn't immediately return requests for comment Wednesday night.

Earlier this year, the District Attorney's Office had argued that Hayes' conviction should remain "undisturbed" because the Louisiana Supreme Court had already rejected his appeal. However, the U.S. Supreme Court decision applied to any convictions that weren't fully final — and Hayes was still within the window where he could file a petition to the country's highest court.

Left unaddressed in the April ruling, known as Ramos v. Louisiana, was the question of what should happen to convictions that have gone through all of their appeals.

Advocates said this week that more than 1,500 state inmates were convicted by divided juries. The U.S. Supreme Court is set to hear arguments next month on whether they, too, deserve new trials.

It will likely be up to Cannizzaro's successor, to be elected in a Dec. 5 runoff, to decide whether to retry Hayes and on which charges. Cannizzaro decided not to run for reelection, and City Council President Jason Williams and former judge Keva Landrum are vying to succeed him. Their campaigns didn't immediately return requests for comment.

To subscribe
225-388-0200

THE ADVOCATE

103.



## Supreme Court
### STATE OF LOUISIANA
### New Orleans

CHIEF JUSTICE
  JOHN L. WEIMER         Sixth District
JUSTICES
  WILLIAM J. CRAIN       First District
  SCOTT J. CRICHTON     Second District
  JAMES T. GENOVESE    Third District
  JAY B. MCCALLUM      Fourth District
  JEFFERSON D. HUGHES III  Fifth District
  PIPER D. GRIFFIN      Seventh District

JOHN TARLTON OLIVIER
CLERK OF COURT

400 Royal St., Suite 4200
NEW ORLEANS, LA 70130-8102

TELEPHONE (504) 310-2300
HOME PAGE http://www.lasc.org

December 29, 2021

Richard B. Lay
RLCC - Cajun 2 - C2 #48
1630 Prison Road
Cottonport, LA 71327

               Re:  STATE OF LOUISIANA VS.
                    RICHARD B. LAY
                    2021-KH-01954

Dear Counsel:

This is to advise that the pleadings in the above entitled matter were filed on December 29, 2021. The filing was Postal Metered on December 14, 2021. The case bears the above number on the Docket of this Court.

By copy of this letter, all counsel are advised that in cases not involving a request for a stay or priority treatment an opposition or response may be filed without leave of court within fifteen days of the date of this letter.

With kindest regards, I remain,

                    Very truly yours,

                    John Tarlton Olivier
                    Clerk of Court

JTO: KC

104.